## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| LISA JONES, HORACIO TORRES BONILLA, and KRISTOFFER YEE, on behalf of themselves and all others similarly situated,<br><br>                  Plaintiffs,<br>    v.<br><br>MONSANTO COMPANY and SCOTTS MIRACLE-GRO PRODUCTS, INC.,<br><br>              Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY DEMAND |

## INTRODUCTION

1.     This lawsuit involves the unlawful promotion, marketing, and sale of various Roundup Products, manufactured and marketed by Defendant Monsanto Company ("Monsanto") and distributed by Scotts Miracle-Gro Products, Inc. ("Scotts") (collectively, "Defendants").

2.     Defendants label, advertise, and promote their retail Roundup® products, including but not limited to their Roundup® "Garden Weeds" Weed & Grass Killer products ("Roundup" or "Roundup Products"),[1] with the false statement that Roundup's active ingredient, glyphosate, targets an enzyme that is ***not*** found "in people or pets."

3.     This statement is false, misleading, and deceptive, because the enzyme that glyphosate targets ***is*** found in people and pets. Glyphosate targets the EPSP synthase enzyme,[2] which is utilized by beneficial bacteria present, including in the gut biome, in humans and other

---

[1] Plaintiffs reserve the right to add any additional Roundup® products labeled with the false statement as may be identified through discovery. Defendants should take notice that this putative class targets all Roundup® with glyphosate that Defendants marketed as targeting enzyme(s) not found in people or pets.

[2] The full scientific name of this enzyme is 5-enolpyruvylshikimate-3-phosphate ("EPSP") synthase, as outlined further *infra*.

COMPLAINT
- 1 -

mammals, such as household pets. This enzyme, in beneficial bacteria, is critical to the health and wellbeing of humans and other mammals, including their immune system, digestion, allergies, metabolism, and brain function.[3]

4.    Defendants' false statements and omissions regarding glyphosate and the enzyme it targets are material. There is widespread controversy and concern around glyphosate and its effects on humans and animals. For example, EPSP synthase is directly linked to our general health, and the interference with the gut flora (including EPSP synthase) can have serious effects on humans and pets.[4]

5.    Instead of being open and honest with consumers, Defendants have chosen to use a false statement to market their Roundup® products. In addition to making the false statement, as further outlined herein, Defendants omit material, contrary information that might clarify that statement, namely, that bacteria present in humans and animals produce and utilize the enzyme targeted by Roundup.

6.    Because of the false statement and material omissions, Defendants have been able to sell more Roundup Products and to charge more for Roundup than they otherwise would have been.

7.    Defendants' actions violate the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.010 *et seq.* (2011); New York General Business Law ("N.Y. GBL") §§ 349 and 350; California's Unfair Competition Law, Cal. Bus. and Prof. Code § 17200 *et seq.* (the "UCL"), False Advertising Law, Cal. Bus. and Prof. Code § 17500 (the "FAL"), and Consumers

---

[3] Beneficial bacteria that produce and utilize the enzyme EPSP synthase are also in other parts of human bodies, such as the reproductive tracts.
[4] *See generally* Austin Wilson, et al., "Roundup Revealed: Glyphosate in Our Food System," As You Sow (2017), available at http://www.asyousow.org/ays_report/roundup-revealed/.

Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* (the "CLRA"); as well as state common law.

8.      Defendants breached an express warranty that their product targets an enzyme not found in people or pets.

9.      Defendants were unjustly enriched through utilizing the false statement and omitting material contrary information.

10.     Plaintiffs and other Class Members who purchased the Roundup Products suffered economic damages in a similar manner because they purchased more Roundup Products and/or paid more for Roundup Products than they would have had they not been deceived.[5]

11.     Accordingly, Plaintiffs seek, in addition to any applicable equitable relief, compensation for themselves and Class Members equal to the amount of money they paid for Roundup Products that they would not have purchased had they known the truth, or in the alternative, the amount of money they paid based on the false statement.

## JURISDICTION AND VENUE

12.     This Court has subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act ("CAFA"). CAFA grants federal courts original jurisdiction over any class action in which the proposed class has at least 100 members, any member of the proposed class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5 million, exclusive of interest and costs. A least one putative Class member is a citizen of a state different from Defendants. On information and belief, the amount in controversy exceeds $5 million.

13.     This Court has personal jurisdiction over Monsanto because Monsanto's principal place of business is in the state of Missouri and because Monsanto transacts business throughout

---

[5] Plaintiffs are not seeking damages for any personal injuries in this Complaint.

the United States, including in Missouri and in this judicial district.

14.    This Court has personal jurisdiction over Scotts because Scotts transacts business in the State of Missouri, including by distributing the Roundup Products in Missouri, including in this judicial district.

15.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of the false statement, occurred within this district.

**PARTIES**

16.    Defendant Monsanto Company was and is a Delaware corporation headquartered in St. Louis, Missouri, and a leading marketer of biocides nationwide. Monsanto is and was, at all relevant times, engaged in commercial transactions throughout the United States, including in the states of Missouri, New York, and California.

17.    Monsanto manufactures, and/or causes the manufacture of, Roundup Products and markets and distributes, and/or causes the marketing and distribution of, Roundup Products in retail stores throughout the United States, including in the states of Missouri, New York, and California, and through the Internet nationwide.

18.    Defendant Scotts Miracle-Gro Products, Inc. is an Ohio corporation headquartered in Marysville, Ohio. Scotts is and was, at all relevant times, engaged in commercial transactions, including the distribution of Roundup Products, throughout the United States, including in the states of Missouri, New York, California, and through the Internet nationwide. Scotts is registered to do business in the State of Missouri.

19.    Plaintiff Lisa Jones is a citizen of the state of Kansas and a resident of Overland Park, Kansas. She purchased the Roundup Products on multiple occasions from various retail

locations in Kansas City, Missouri. The Roundup Products she purchased bore labels falsely stating, "Glyphosate targets an enzyme not found in humans."

20.     Plaintiff Horacio Torres Bonilla is a citizen of the state of New York and a resident of Bronx, New York. He purchased the Roundup Products on multiple occasions from the Ace Hardware store located at 5782 Broadway, Bronx, New York. The Roundup Products he purchased bore labels falsely stating, "Glyphosate targets an enzyme not found in humans."

21.     Plaintiff Kristoffer Yee is a citizen of the state of California and a resident of San Francisco, California. He purchased the Roundup Products on multiple occasions from an Ace Hardware retail location in San Francisco and a Home Depot retail location in Daly City, California. The Roundup Products he purchased bore labels falsely stating, "Glyphosate targets an enzyme not found in humans." Plaintiff Yee relied on this representation in deciding to purchase those Roundup Products.

## FACTUAL ALLEGATIONS

### I.     Glyphosate and the Enzyme It Targets

22.     Glyphosate, the active ingredient in Roundup, is a non-selective biocide, meaning that it will kill most plants and many simple organisms. Unlike selective biocides, glyphosate cannot be used on most conventional lawns, as it would kill grass that has not been genetically modified.

23.     Glyphosate kills plants by inhibiting the enzyme 5-enolpyruvylshikimate-3-phosphate ("EPSP") synthase, disrupting the fifth of six enzymatic steps in the shikimate pathway, which processes aromatic amino acids.[6]

---

[6] *See, e.g.*, Klaus M. Hermann, *The Shikimate Pathway as an Entry to Aromatic Secondary Metabolism*, 107 Plant Physiology 7 (1995), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC161158/pdf/1070007.pdf; Herke Hollander &

24. The same enzyme—the EPSP synthase that glyphosate "targets"—is present in many beneficial bacteria that are present in humans and other mammals, including bacteria that inhabit the guts of humans and other mammals.[7] Hence, contrary to Defendants' representation that the enzyme targeted by Roundup's glyphosate is **not** found in people or pets, that enzyme **is** found in people and pets.

25. Studies show that the health of beneficial gut bacteria is essential to the overall health of humans and other mammals.[8] Microorganisms that populate the human body outnumber human cells 10 to one.[9]

26. Studies have also demonstrated that even exposure to low doses of glyphosate can have effects in humans and animals.[10]

## II. False Statements and Material Omissions on the Roundup Labeling

27. Defendants include a false statement on the labels of the Roundup Products, stating,

Nikolaus Amrhein, *The Site of the Inhibition of the Shikimate Pathway by Glyphosate*, 66 Plant Physiology 823 (1980), http://www.plantphysiol.org/content/66/5/823.full.pdf.

[7] *See, e.g.*, John P. Myers, et al., *Concerns over use of glyphosate-based herbicides and risks associated with exposures: a consensus statement*, 15 Environ. Health 9 (2016), https://ehjournal.biomedcentral.com/articles/10.1186/s12940-016-0117-0.

[8] *See, e.g.*, Sai Manasa Jandhyala, et al., *Role of the Normal Gut Microbiota*, 21 World J. of Gastroenterology 8787 (2015), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4528021/.

[9] *See, e.g.*, Andrea G. Braundmeier, et al., *Individualized Medicine and the Microbiome in Reproductive Tract*, 6 Frontiers in Physiology 97 (2015), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4381647/.

[10] *See, e.g.*, Myers, *supra* note 7; Robin Mesnage, et al., *Transcriptome profile analysis reflects rat liver and kidney damage following chronic ultra-low dose Roundup exposure*, 14 Environ. Health 70 (2015), http://www.ncbi.nlm.nih.gov/pmc/articles/PMC4549093; Gilles-Eric Seralini, et al., *Republished study: long-term toxicity of a Roundup herbicide and a Roundup-tolerant genetically modified maize*, 26 Environ. Sci. Europe 14 (2014), http://enveurope.springeropen.com/articles/10.1186/s12302-014-0014-5; K. Larsen, et al., *Effects of Sublethal Exposure to a Glyphosate-Based Herbicide Formulation on Metabolic Activities of Different Xenobiotic-Metabolizing Enzymes in Rats*, 33(4) Int. J. Toxicol. 307-18 (July 2014), http://www.ncbi.nlm.nih.gov/pubmed/24985121; A.L. Benedetti, et al., *The effects of sub-chronic exposure of Wistar rats to the herbicide Glyphosate-Biocarb*, 153(2) Toxicol. Lett. 227-32 (2004), http://www.ncbi.nlm.nih.gov/pubmed/15451553.

"Glyphosate targets an enzyme found in plants but not people or pets."

28.    This misrepresentation is presented on certain Roundup product labels under the phrase "DID YOU KNOW?" As shown below, for the Roundup Weed & Grass Killer III and Roundup Weed & Grass Killer Concentrate Plus, the label states, "Glyphosate targets an enzyme found in plants but not people or pets":





29.     Defendants know[11] that consumers are becoming increasingly concerned about the potential effects of biocides on people and animals[12] and that consumers are more likely to buy—and will pay more for—Roundup if they believe it targets an enzyme that is not found in people

---

[11] *See, e.g.*, Eric Sachs, *Conversation Questions Regarding Glyphosate*, Monsanto, http://discover.monsanto.com/posts/conversation-questions-regarding-glyphosate/ (last visited June 19, 2017).

[12] *See, e.g.*, *Two-Thirds of Europeans Support Glyphosate Ban, Says Yougov Poll*, The Guardian (Apr. 11, 2016), https://www.theguardian.com/environment/2016/apr/11/two-thirds-of-europeans-support-ban-on-glyphosate-says-yougov-poll; *Fears Over Roundup Herbicide Residues Prompt Private Testing*, Washington Post (Apr. 13, 2015), https://www.washingtonpost.com/national/health-science/worries-about-an-ingredient-in-widely-used-lawn-herbicide-after-who-report/2015/04/13/f6b0a418-df8a-11e4-a1b8-2ed88bc190d2_story.html.

or animals.

30.     Defendants include these false statements to induce members of the public to purchase (or to purchase more of) the Roundup Products and/or to pay more for them.

31.     Defendants omit material information from the label of Roundup Products to induce members of the public to purchase (or to purchase more of) the Products and/or to pay more for them.

### III.     Monsanto's Knowledge That Its Representations Are False

32.     Glyphosate was invented by Monsanto, an agrochemical and agricultural biotechnology corporation, which began marketing the chemical in 1974 under the trade name Roundup.

33.     In 2003, Monsanto sought a patent for the antimicrobial properties of glyphosate, and in its application specifically cited glyphosate's effect on the shikimate pathway; this United States patent was granted in 2010.[13] Monsanto is therefore well aware of how glyphosate works on the shikimate pathway in bacteria,[14] and upon information and belief is aware of studies showing that the shikimate pathway is present in bacteria integral to the digestive systems of people and pets.

34.     Monsanto therefore knows that glyphosate targets an enzyme present not only in plants, but also in people and pets.

35.     Despite this knowledge, Defendants willfully advertise these Roundup Products using the material false statement that "Glyphosate targets an enzyme present in plants but not in people or pets."

---

[13] U.S. Patent No. 7,771,736 (filed Aug. 29, 2003).
[14] *Id.*

36.     Defendants do not qualify this statement with any disclaimer concerning the presence of the targeted enzyme in the beneficial bacteria in people and pets, which because of the false statement is a material omission.

37.     Through the false statement, Defendants conceal the truth about Roundup Products. Defendants' concealment tolls the applicable statute of limitations.

38.     To this day, Defendants continue to conceal, suppress, and misrepresent the true nature of Roundup and its active ingredient, glyphosate.

## IV.     Reasonable Consumers Deceived by the False Statements

39.     The statement "Glyphosate targets an enzyme found in plants but not in people or pets" was on the label of the Roundup Products that Plaintiffs and Class Members purchased.

40.     Consumers have been deceived by these false statements and material omissions.

41.     Consumers cannot discover the falsity of the statement from reading the label. Nor can they discover the falsity of the statement from visiting Roundup's website.

42.     Discovery of the true nature of Roundup requires scientific knowledge and research that the average reasonable consumer would or could not undertake. Thus, a reasonable consumer is likely to be deceived by these false statements and material omissions.

43.     These deceptive representations and omissions are material in that an ordinary reasonable person would attach importance to such information and would be induced to act upon such information in making purchasing decisions.

## V.     Injury to Plaintiffs and the Class From Defendants' False Statements and Omissions

44.     As an immediate, direct, and proximate result of Defendants' misrepresentation and omissions, Defendants injured Plaintiffs and Class Members, in that Plaintiffs and Class Members:

(i)     paid more for Roundup Products that were falsely represented than they

would have had the Roundup Product not been falsely represented;

(ii)    purchased Roundup Products that they otherwise would not have purchased, had they not been deceived;

(iii)   purchased Roundup Products that they otherwise would not have purchased, had they known the truth about glyphosate;

(iv)   were deprived of the benefit of the bargain because the Roundup Products they purchased were different from what Defendant promised and/or had less value that what was represented; and/or

(v)    did not receive Roundup Products that measured up to their expectations as created by Defendants.

45.    Plaintiffs and the Class Members purchased, purchased more of, and/or paid more for Roundup Products than they would have had they not been deceived by the representations and omissions. Had Defendants not made the false statements and omitted material information, Plaintiffs and the Class Members would not have been injured as listed above.

## CLASS ALLEGATIONS

46.    All of the foregoing paragraphs are re-alleged as if fully set forth herein.

47.    This action is maintainable as a class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

48.    Plaintiffs bring this action on behalf of a Class defined as follows:

Class: All consumers who purchased Roundup Products containing the statement "Glyphosate targets an enzyme found in plants but not in people or pets" on the labeling in the United States within the applicable statute of limitations.

49.    Plaintiffs also bring this action on behalf of Missouri, New York, and California Sub-Classes, defined as follows:

Missouri Sub-Class: All consumers who purchased Roundup Products containing the statement "Glyphosate targets an enzyme found in plants but not in people or pets" on the labeling in the State of Missouri within the applicable statute of limitations.

New York Sub-Class: All consumers who purchased Roundup Products containing the statement "Glyphosate targets an enzyme found in plants but not in people or pets" on the labeling in the State of New York within the applicable statute of limitations.

California Sub-Class: All consumers who purchased Roundup Products containing the statement "Glyphosate targets an enzyme found in plants but not in people or pets" on the labeling in the State of California within the applicable statute of limitations.

50.     All members of the Classes and Sub-Classes were similarly affected by the misrepresentation on the Roundup Products, and by Defendants' omissions, and the relief sought herein is for the benefit of Plaintiffs and members of the Classes and Sub-Classes.

## I.     Numerosity

51.     On information and belief, Roundup Products are the best-selling residential herbicides in the United States.

52.     Based on the sales and popularity of the Roundup Products, the number of consumers in the Class and each Sub-Class is so large as to make joinder impracticable, if not impossible. Class and Sub-Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

## II.     Commonality

53.     There are numerous questions of law and fact common to Plaintiffs and the other Class and Sub-Class Members that predominate over questions affecting only individual members, including:

        a.      Whether Defendants' representation that "Glyphosate targets an enzyme

found in plants but not in people or pets" is false, misleading, or deceptive;

b.     Whether Defendants, given the representation, omitted material information from the labels of the Roundup Products;

c.     Whether practices related to the marketing, labeling, and sales of the Roundup Products were unfair, deceptive, fraudulent, and/or unlawful;

d.     Whether Defendants' representation that "Glyphosate targets an enzyme found in plants but not in people or pets" created an express warranty on the Roundup Products, and if so, whether Defendants breached that warranty;

e.     Whether Defendants were unjustly enriched through the use of the misrepresentation and/or omission;

f.     Whether (and in what amount) Defendants' conduct economically injured Plaintiffs and Class and Sub-Class Members; and,

g.     Whether Plaintiffs and the Class Members are entitled to the recovery of punitive damages (and in what amount).

## III.   Typicality

54.     The claims asserted by Plaintiffs in this action are typical of the claims of the Class and respective Sub-Classes, as they arise from the same course of conduct by Defendants, and the relief sought within the Class and Sub-Classes is common to the Class and Sub-Class Members. There are no defenses available to Defendants that are unique to Plaintiffs.

## IV.   Adequacy

55.     Plaintiffs will fairly and adequately represent and protect the interests of the Class and Sub-Classes. Plaintiffs are adequate representatives of the Class and Sub-Classes because their interests do not conflict with the interests of the Class or Sub-Class Members they seek to represent

and they have retained counsel competent and experienced in a wide variety of actions seeking to protect consumers from fraudulent and deceptive practices, as well as in class action litigation generally. Plaintiffs and Plaintiffs' counsel will fairly and adequately protect the interests of the members of the Class and Sub-Classes.

## V.      Rule 23(b)(3) Allegations

56.      A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of the Class and Sub-Class Members is not practicable, and questions of law and fact common to the Class and each Sub-Class predominate over any questions affecting only individual Class or Sub-Class Members. Each Class and Sub-Class Member has been damaged and is entitled to recovery because of the violations alleged herein.

57.      Moreover, because the damages suffered by individual Class and Sub-Class Members may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual Class or Sub-Class Members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

58.      Plaintiffs are unaware of any difficulties in managing this case that preclude class action treatment.

59.      Common issues of law and fact predominate over any questions affecting only individual members of the Class or Sub-Classes. Defendants deliberately made a false and misleading statement regarding the presence of the enzyme targeted by glyphosate in humans and pets. That statement was material and caused injury to Class and Sub-Class members. The common

issues, which drive these claims, can be established with common evidence, untethered to individual issues. To the extent individual issues do exist, they do not predominate over the numerous common issues raised in this Complaint, including whether glyphosate does, in fact, target an enzyme found in humans and pets and whether Defendants falsely represented otherwise.

## COUNT I
### Violation of Missouri Merchandising Practices Act
### (On Behalf of Plaintiff Jones and the Missouri Sub-Class)

60. All of the foregoing paragraphs are re-alleged as if fully set forth herein.

61. Plaintiff Jones brings this cause of action on behalf of members of the Missouri Sub-Class.

62. This cause of action is brought pursuant to the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 *et seq*. ("MMPA").

63. The MMPA provides that: "The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . in or from the state of Missouri, is declared to be an unlawful practice." Mo. Rev. Stat. § 407.020(1).

64. Pursuant to 15 C.S.R. § 60-7.020, "A seller shall not make a representation or statement of fact in an advertisement that is false or has the capacity to mislead prospective purchasers."

65. Pursuant to 15 C.S.R. § 60-9.040, Fraud in General, "Fraud includes any acts, omissions or artifices which involve falsehood, deception, trickery, breach of legal or equitable duty, trust, or confidence, and are injurious to another or by which an undue or unconscientious advantage over another is obtained."

66. Pursuant to 15 C.S.R. § 60-7.030, "A seller shall not omit any material fact in an advertisement."

67. Pursuant to 15 C.S.R. § 60-9.110(1), "Concealment of a material fact is any method, act, use or practice which operates to hide or keep material facts from consumers."

68. Pursuant to 15 C.S.R. § 60-9.110(2), "Suppression of a material fact is any method, act, use or practice which is likely to curtail or reduce the ability of consumers to take notice of material facts which are stated."

69. Pursuant to 15 C.S.R. § 60-9.110(3), "Omission of a material fact is any failure by a person to disclose material facts known to him/her, or upon reasonable inquiry would be known to him/her."

70. Pursuant to 15 C.S.R. § 60-7.010(1)(A), "Advertisement[s]" include "oral, written, graphic or pictographic statement[s] made … in any manner in the course of solicitation of business" and also includes such statements that are "printed on or contained in any tag or label which is attached to or accompanies any produce offered for sale."

71. Accordingly, Defendants' conduct, specifically their false representation that Glyphosate targets an enzyme which is ***not*** found in people or pets, violates the MMPA even if the only manner of dissemination was printing it on the tag/label of the Roundup products.

72. Defendants knowingly sold their Roundup Products with the use of, *inter alia*, deception, misrepresentations, false promises, unfair practices, and omissions of material fact.

73. Defendants' actions led to direct, foreseeable, and proximate injury to Plaintiff Jones and the Missouri Sub-Class.

74. As a consequence of Monsanto's deceptive marketing scheme, Plaintiff Jones and the other members of the Missouri Sub-Class suffered an ascertainable loss, insofar as they (i)

would not have purchased the Roundup Products had the truth been known, or (ii) would have purchased the Roundup Products on different terms, or would otherwise purchase a competing product, or (iii) paid a premium price for Roundup Products, and as a result of Defendants' conduct, received a product of less value than what they paid for.

75.     Plaintiff Jones and the Missouri Sub-Class Members are entitled to:

    a.      Actual damages;

    b.      Punitive damages; and

    c.      Reasonable attorney's fees.

Mo. Rev. Stat. § 407.025(1).

<u>**COUNT II**</u>
**Violation of New York General Business Law § 349**
**(On Behalf of Plaintiff Bonilla and the New York Sub-Class)**

76.     All of the foregoing paragraphs are re-alleged as if fully set forth herein.

77.     Plaintiff Bonilla brings this cause of action on behalf of members of the New York Sub-Class.

78.     This cause of action is brought pursuant to New York General Business Law § 349.

79.     Defendants, in selling Roundup Products in the State of New York, have engaged in a consumer-oriented business practice or act.

80.     Defendants' labeling and advertising of Roundup Products with the statement that "Glyphosate targets an enzyme found in plants but not in people or pets" misrepresents, tends to mislead, and omits material facts regarding the nature of Roundup.

81.     The statement omits the truth about Roundup, namely, that its active ingredient, glyphosate, targets an enzyme found in humans and animals, upon which they depend for their overall health.

82. Roundup lacks the characteristics, benefits, styles and standards that Defendants state and imply in their labeling and advertisements.

83. These misstatement, innuendo, and omission are material and have the tendency to mislead.

84. Defendants knowingly sold their Roundup Products not as advertised.

85. Plaintiff Bonilla and members of the New York Sub-Class were in fact deceived and mislead. Defendants knew or should have known that because of their misrepresentation, reasonable consumers would believe that Roundup Products do not target an enzyme found in humans and animals, upon which they depend for their overall health.

86. Because Defendants misrepresent the characteristics, ingredients, and benefits of Roundup; misrepresent the standard, quality, and grade of Roundup; misrepresent, fail to state, and use innuendo and ambiguity in ways that tend to mislead and deceive reasonable consumers with regard to material facts about Roundup; and advertise Roundup without the intent to sell it as advertised, Defendants' labeling and marketing of Roundup violate New York General Business Law § 349.

87. Plaintiff Bonilla and the New York Sub-Class Members are entitled to:

        a.      Actual damages and/or statutory damages;

        b.      Punitive damages; and

        c.      Reasonable attorney's fees.

New York GBL § 349(h).

## COUNT III
### Violations of New York' General Business Law § 350
### (On Behalf of Plaintiff Bonilla and the New York Sub-Class)

88. All of the foregoing paragraphs are re-alleged as if fully set forth herein.

89. Plaintiff Bonilla brings this cause of action on behalf of members of the New York Sub-Class.

90. This cause of action is brought pursuant to New York General Business Law § 350.

91. New York General Business Law § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

92. GBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

93. As a seller of goods to the consuming public, Defendants are engaged in the conduct of business, trade, or commerce within the intended ambit of GBL § 350.

94. Defendants' representation made by statement, word, design, device, sound, or any combination thereof, and the extent to which Defendants' advertising fails to reveal material facts with respect to the Roundup Products, as described above, constitute false advertising in violation of the New York General Business Law.

95. Defendants' false advertising was knowing and intentional.

96. Defendants' actions led to direct, foreseeable and proximate injury to Plaintiff Bonilla and the New York Sub-Class.

97. As a consequence of Defendants' deceptive marketing scheme, Plaintiff Bonilla and the other members of the New York Sub-Class suffered an ascertainable loss, insofar as they (i) would not have purchased the Roundup Products had the truth been known, or (ii) would have purchased the Roundup Products on different terms, or would otherwise purchase a competing product, or (iii) paid a premium price for Roundup Products, and as a result of Defendants' conduct, received a product of less value than what they paid for.

98.     Plaintiff Bonilla and the New York Sub-Class Members are entitled to:

    a.     Actual damages and/or statutory damages;

    b.     Punitive damages; and

    c.     Reasonable attorney's fees.

New York GBL § 350-e(3).

## COUNT IV
### Violations of California's Consumers Legal Remedies Act
### (On Behalf of Plaintiff Yee and the California Sub-Class)

99.     All of the foregoing paragraphs are re-alleged as if fully set forth herein.

100.     Plaintiff Yee brings this cause of action against Defendants on behalf of members of the California Sub-Class.

101.     This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

102.     Plaintiff Yee and the California Sub-Class Members are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the falsely labeled Roundup Products for personal, family, or household purposes.

103.     Defendants violated Cal. Civ. Code § 1770 by:

    a.     "Representing that goods . . . have . . . characteristics [or] benefits . . . which they do not have," Cal. Civ. Code § 1770(a)(5);

    b.     "Representing that goods . . . are of a particular standard, quality, or grade . . . if they are of another," Cal. Civ. Code § 1770(a)(7); and

    c.     "Advertising goods or services with intent not to sell them as advertised." Cal. Civ. Code § 1770(a)(9).

104.     Plaintiff Yee and the California Sub-Class Members suffered damage as a result of

Defendants' violation of Section 1770.

105.    Pursuant to Cal. Civ. Code § 1782, Plaintiff Yee, via letter dated December 21, 2018, provided notice to Monsanto of its violation of Section 1770 and of his intention to file this action if Monsanto did not agree to rectify said violation within 30 days. Monsanto responded via letter dated January 22, 2019, and declined to take any steps remedying the violation.

106.    Plaintiff Yee and the California Sub-Class relied upon Defendants' deceptive and unlawful marketing practices, including, *inter alia*, the representation that glyphosate targets an enzyme not found in people or pets, in deciding to purchase Roundup.

107.    Plaintiff Yee and the California Sub-Class Members are entitled to:

    a.    Actual damages;

    b.    Punitive damages; and

    c.    Reasonable attorney's fees."

Cal. Civ. Code § 1780(e).

## COUNT V
### Violations of California's False Advertising Law (FAL)
### (On Behalf of Plaintiff Yee and the California Sub-Class)

108.    All of the foregoing paragraphs are re-alleged as if fully set forth herein.

109.    Plaintiff Yee brings this cause of action on behalf of members of the California Sub-Class.

110.    This cause of action is brought pursuant to California's False Advertising Law (the "FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*

111.    The FAL prohibits any "firm, corporation or association . . . with intent directly or indirectly to dispose of real or personal property . . . to make or disseminate . . . before the public in [California] . . . in . . . any advertising device . . . including over the Internet, any statement,

concerning that real or personal property . . . or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

112. The misrepresentations by Defendants of the material facts detailed herein constitute false and misleading advertising, and therefore constitute a violation of FAL.

113. The above acts of Defendants were likely to deceive reasonable consumers.

114. The business practices alleged above are unlawful under the FAL, which forbids misleading and deceptive advertising.

115. Plaintiff Yee and the California Sub-Class relied upon Defendants' deceptive and unlawful marketing practices, including, *inter alia*, the representation that glyphosate targets an enzyme not found in people or pets, in deciding to purchase Roundup.

116. Plaintiff Yee and the other members of the California Sub-Class have suffered injury in fact and have lost money or property as a result of Defendants violations of the FAL.

117. As a result, Defendants have been unjustly enriched at the expense of Plaintiff Yee and the other members of the California Sub-Class. Plaintiff Yee and members of the California Sub-Class, pursuant to California Business and Professions Code § 17535, are entitled to such orders and judgments that may be necessary to disgorge Defendants' ill-gotten gains and restore to any person in interest any money paid for the falsely labeled Products as a result of Defendants' wrongful conduct.

### COUNT VI
**Violations of California's Unfair Competition Law**
**(On Behalf of Plaintiff Yee and the California Sub-Class)**

118. All of the foregoing paragraphs are re-alleged as if fully set forth herein.

119.    Plaintiff Yee brings this cause of action on behalf of members of the California Sub-Class.

120.    This cause of action is brought pursuant to California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*

121.    By committing the acts and practices alleged herein, Defendants have engaged in deceptive, unfair, and unlawful business practices in violation of the UCL.

122.    Defendants have violated the UCL's proscription against engaging in unlawful conduct in that their conduct violates 21 U.S.C. § 331; Cal. Civ. Code § 1709; Cal. Civ. Code § 1750 et seq.; Cal. Com. Code § 2313; and Cal. Bus. & Prof. Code § 17500 *et seq.*

123.    There is no benefit to consumers or competition from Defendants deceptively marketing and labeling their Roundup Products. Indeed, the harm to consumers and competition from this conduct is substantial. Plaintiff Yee and the other members of the California Sub-Class who purchased the Roundup Products suffered a substantial injury as alleged herein.

124.    Plaintiff Yee and the other members of the California Sub-Class who purchased the Roundup Products had no way of reasonably avoiding the injury each of them suffered.

125.    Defendants' acts constitute unfair business practices under Cal. Bus. & Prof. Code § 17200 because the gravity of the consequences of Defendants' conduct outweighs any legitimate reasons, justifications, and/or motives for engaging in such conduct, if any, particularly considering the available legal alternatives which exist in the marketplace.

126.    Defendants' conduct is immoral, unethical, and unscrupulous, offends established public policy, and is substantially injurious to Plaintiff Yee and the other members of the California Sub-Class.

127. Plaintiff Yee and the California Sub-Class relied upon Defendants' deceptive and unlawful marketing practices, including, *inter alia*, the representation that glyphosate targets an enzyme not found in people or pets, in deciding to purchase Roundup.

128. Defendants' violations continue to this day. Pursuant to California Business and Professions Code § 17203, Plaintiff Yee and the other members of the California Sub-Class seek such orders and judgments that may be necessary to disgorge Defendants' ill-gotten gains and to restore to any person in interest any money paid for the Roundup Products as a result of Defendants' wrongful conduct.

<u>**COUNT VII**</u>
**Breach of Express Warranty**
**(On Behalf of Plaintiffs and the Class)**

129. All of the foregoing paragraphs are re-alleged as if fully set forth herein.

130. Plaintiffs bring this claim on behalf of the Class and the various state Sub-Classes set forth herein.

131. Defendants provided Plaintiffs and members of the Class with written express warranties including, but not limited to, warranties that the glyphosate present in Roundup "targets an enzyme found in plants but not in people or pets."

132. Plaintiffs and members of the Class purchased Roundup Products believing them to conform to the express warranties.

133. Defendants breached these warranties.

134. As a proximate result of the breach of warranties by Monsanto, Plaintiffs and the members of the Class did not receive goods as warranted and did not receive the benefit of the bargain. They have, therefore, been injured and have suffered damages in an amount to be proven at trial.

## COUNT VIII
## Unjust Enrichment
## (On Behalf of Plaintiffs and the Class)

135.    All of the foregoing paragraphs are re-alleged as if fully set forth herein.

136.    Plaintiffs bring this claim on behalf of the Class and the State Sub-Classes set forth herein.

137.    This cause of action is pleaded in the alternative to Plaintiffs' contract-based claims.

138.    As the intended, direct, and proximate result of Defendants' conduct, Defendants have been unjustly enriched through sales of Roundup Products at the expense of Plaintiffs and the Class Members.

139.    Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiffs and the Class Members, in light of the fact that the Roundup Products they purchased were not what Defendants purported them to be.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment on behalf of themselves and the proposed Classes, providing such relief as follows:

A.    Certification of the Class proposed herein under Federal Rule of Civil Procedure 23(a) and (b)(3); appointment of Plaintiffs as representatives of the Class; and appointment of the undersigned counsel as counsel for the Class;

B.    Certification of Missouri, New York, and California Sub-Classes under Federal Rule of Civil Procedure 23(a) and (b)(3); appointment of Plaintiff Jones as representative of the Missouri Sub-Class; appointment of Plaintiff Bonilla as representative of the New York Sub-Class; appointment of Plaintiff Yee as representative of the California Sub-Class; and appointment of the

undersigned counsel as counsel for each Sub-Class;

C.      An order declaring that Defendants are financially responsible for notifying members of the Classes and each Sub-Class of the pendency of this suit in the event the putative classes are certified;

D.      An order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendants as a result of the unfair, misleading, fraudulent, and unlawful conduct alleged herein;

E.      An order declaring Defendants' conduct to be in violation of applicable law;

F.      An order awarding restitution, disgorgement, punitive damages, and/or monetary damages in an amount to be determined at trial, together with costs and disbursements, including reasonable attorneys' fees and costs as allowed by law;

G.      Prejudgment interest at the maximum rate allowable by law; and

H.      Such further relief as this Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiffs hereby demand a trial by jury on all issues so triable.

Plaintiffs designate Kansas City, Missouri as the place for trial

Respectfully submitted,

**BELL LAW, LLC**

*/s/ Bryce B. Bell*
Bryce B. Bell      MO#66841
Mark W. Schmitz     MO#69329
2600 Grand Blvd., Suite 580
Kansas City, MO 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
MS@BellLawKC.com

**RICHMAN LAW GROUP**
Kim E. Richman (pro hac vice forthcoming)
Clark A. Binkley (pro hac vice forthcoming)
81 Prospect Street
Brooklyn, NY 11201
T: 718-705-4579
F: 212-687-8292
krichman@richmanlawgroup.com
cbinkley@richmanlawgroup.com

**BAUM, HEDLUND, ARISTEI &
GOLDMAN, P.C.**
Michael L. Baum (pro hac vice forthcoming)
R. Brent Wisner (pro hac vice forthcoming)
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
T: (310) 207-3233
mbaum@baumhedlund.com
bwisner@baumhedlund.com

**KENNEDY & MADONNA, LLP**
Robert F. Kennedy (pro hac vice forthcoming)
48 Dewitt Mills Road
Hurley, NY 12443
T: (845) 481-2622

**TURKE & STRAUSS LLP**
Mary C. Turke
Samuel J. Strauss
613 Williamson Street #209
Madison, WI 53703
T: (608) 237-1775
mary@turkestrauss.com
sam@turkestrauss.com

**GABRIELLI LEVITT LLP**
Michael J. Gabrielli
2426 Eastchester Rd., Ste. 103
Bronx, NY 10469
T: (718) 708-5322
michael@gabriellilaw.com

**ANDRUS WAGSTAFF LLP**
Aimee H. Wagstaff
7171 West Alaska Drive
Lakewood, CO 80226

T: (720) 208-9414
aimee.wagstaff@andruswagstaff.com

**MILLER FIRM LLC**
Nancy G. Miller
108 Railroad Avenue
Orange, VA 22960
T: (540) 672-4224
nmiller@millerfirmllc.com

**WEITZ & LUXENBERG P.C.**
Robin L. Greenwald
700 Broadway
New York, NY 10003
T: (212) 558-5500
rgreenwald@weitzlux.com