# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

LISA JONES, *et al*.,                    )
                                         )
                          Plaintiffs,    )
        v.                               )        No. 19-0102-CV-W-BP
                                         )
MONSANTO COMPANY,                        )
                                         )
                          Defendant.     )

## ORDER AND OPINION DENYING DEFENDANT'S MOTION TO DISMISS

Plaintiffs Lisa Jones, Horacio Bonilla, and Kristoffer Yee bring this suit against Monsanto Company, generally alleging that the label on some of its herbicides is deceptive. Pending is Monsanto's Motion to Dismiss. As discussed more fully below, the motion, (Doc. 21), is **DENIED**.

## I. BACKGROUND

Defendant manufactures various weed and grass killers under the name "Roundup." (Doc. 1, ¶ 2.) The active ingredient in these Roundup products is glyphosate, and the products contain a label, ("the Label"), stating that "[g]lyphosate targets an enzyme found in plants but not in people or pets." (Doc. 1, ¶¶ 2, 28.) The parties agree that the Label has been approved by the Environmental Protection Agency, ("the EPA"), pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act, ("FIFRA"), 7 U.S.C. § 136 *et seq*.[1]

Glyphosate targets the EPSP synthase enzyme. This enzyme is used as part of the "shikimate pathway," which plants and some bacteria use to process certain amino acids. (Doc. 1,

---

[1] While Roundup is an herbicide, FIFRA includes weeds and plants in the definition of "pests" and all products that kill or control "pests" are defined as "pesticides." 7 U.S.C. §§ 136(t), (u). Thus, herbicides are regarded as pesticides under FIFRA, and the fact that some of the cases refer to "pesticides" does not mean that those authorities are inapplicable to this case.

¶¶ 3, 23.)  Some of the bacteria using this enzyme can be found in the digestive system of humans and pets; this bacterium is referred to by the parties as "gut bacteria," and it is allegedly beneficial to humans and pets.  (Doc. 1, ¶¶ 3, 24-25.)  Thus, while the EPSP synthase enzyme is not used by humans and pets, it is used by beneficial bacteria found in the human body.  The Label omits these facts and allegedly creates the impression that glyphosate has no effect on humans, even though it targets enzymes used by beneficial bacteria in the human body.  In addition, "even exposure to low doses of glyphosate can have effects on humans and animals," (Doc. 1, ¶ 26), although Plaintiffs do not assert any personal injury claims.

Plaintiffs assert claims on behalf of (1) themselves, (2) a class of everyone in the country who purchased a Roundup product, (Doc. 1, ¶ 48), and (3) a subclass of everyone in the country who purchased Roundup products in the same states that they did.  (Doc. 1, ¶ 49.)[2]  More specifically, the Complaint asserts the following claims:

- Count I – A claim under the Missouri Merchandising Practices Act, ("the MMPA")

- Count II – A claim under § 349 of the New York General Business Law, ("the GBL")

- Count III – A claim under § 350 of the GBL

- Count IV – A claim under California's Consumers Legal Remedies Act, ("the CLRA")

- Count V – A claim under California's False Advertising Law, ("the FAL")

- Count VI – A claim under California's Unfair Competition Law, ("the UCL")

- Count VII – A claim for breach of express warranty

- Count VIII – A claim for unjust enrichment

---

[2] Jones purchased in Missouri, Bonilla purchased in New York, and Yee purchased in California.  Bonilla and Yee are citizens of New York and California, respectively; Jones is a citizen of Kansas.

2

Defendant presents multiple arguments for dismissal that target various aspects of the Complaint. These arguments will be discussed in greater detail below, but as indicated earlier Defendant's motion is denied.

## II. DISCUSSION

The Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008). In making this evaluation, the Court is limited to a review of the Complaint, exhibits attached to the Complaint, and materials necessarily embraced by the Complaint. *E.g., Mattes v. ABC Plastics, Inc.,* 323 F.3d 695, 697 n.4 (8th Cir. 2003). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A claim is facially plausible if it allows the reasonable inference that the defendant is liable for the conduct alleged. *E.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Horras v. American Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013). While "[t]he plausibility standard is not akin to a probability requirement, . . . it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quotations).

## A. Likelihood of Deceiving Consumers

Defendant first argues that Plaintiffs have not alleged that the Label is likely to deceive consumers (as required for their statutory and warranty claims). While conceding that "the issue of consumer deception is often a factual question," Defendant argues that this is a case in which

3

the issue can be decided as a matter of law. (Doc. 22, p. 16.)[3] In presenting its argument, Defendant addresses the claims collectively and relies primarily on the UCL's standard. Under the UCL, "'[l]ikely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. Rather, the phrase indicates that the ad is such that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.,* 105 Cal. App. 4th 496, 508 (2003). Accepting for the sake of argument that this standard governs all of Plaintiffs' claims, the Court concludes that it cannot rule as a matter of law that the Label is not likely to deceive consumers.

Defendant first argues that there is no likelihood of deception because (1) the Label does not say anything about gut bacteria and (2) consumers would not understand the Label to be addressing the product's effect on gut bacteria. The Court believes Defendant is construing Plaintiffs' claims too narrowly by suggesting Plaintiffs must allege that consumers are thinking specifically about helpful bacteria in their bodies (and have beliefs or concerns on the subject) when they read the Label. Based on the Complaint's allegations, it is plausible to believe that a reasonable consumer may read the Label and conclude that Roundup products target an enzyme that (1) is not found anywhere in the human body and thus (2) Roundup products have no effect on the human body. And in reality, the enzyme targeted by Roundup products is allegedly (1) found in bacteria that exists in the human body and (2) the bacteria's presence provides benefits

---

[3] All page numbers are those generated by the Court's CM/ECF system and may not correspond to the document's page number.

such that exposure to glyphosate affects the human body. Thus, the Complaint alleges facts that plausibly demonstrate that consumers can be deceived.[4]

Defendant next argues that Plaintiffs have failed to state a claim because they do not allege that all scientists agree that Defendant's representations are false. (Doc. 22, p. 18.) Defendant relies on the Fourth Circuit's decision in *In re GNC Corp.,* 789 F.3d 505 (4th Cir. 2015). That case arose from a multidistrict litigation in which consumers alleged that certain products were marketed as promoting joint health even though the products were no more effective than placebos. *GNC Corp.,* 789 F.3d at 508. The Fourth Circuit affirmed dismissal of the case, "hold[ing] that in order to state a false advertising claim on a theory that representations have been proven to be false, plaintiffs must allege that all reasonable experts in the field agree that the representations are false. If plaintiffs cannot do so because the scientific evidence is equivocal, they have failed to plead that the representations based on this disputed scientific evidence are false." *Id.* at 516. The Court does not find *GNC Corp.* to be controlling. Given the nature of the plaintiffs' claims and the wording of the Fourth Circuit's rationale, the holding applies when a plaintiff relies on scientific studies to establish that the manufacturer's claim is false. Thus, *GNC Corp.* might apply if Plaintiffs were alleging that scientific studies now prove that the Label is false because

---

[4] Each case turns on its facts, so comparisons to complaints asserting different claims and theories about different products and their labels or advertising are rarely determinative. Nonetheless, the Court has little difficulty concluding that the likelihood of deception in this case is obviously greater than what existed in cases cited by Defendant. *See In re General Mills Glyphosate Litig.,* 2017 WL 2983877, at *5 (D. Minn. 2017) (holding that consumers are not likely to be deceived by advertising stating that a product is "100% Natural" even though it "contain[s] a trace amount of glyphosate that is far below the amount permitted for organic products."); *Kelly v. Cape Cod Potato Chip Co.,* 81 F. Supp. 3d 754, 759-60 (W.D. Mo. 2015) (consumers not likely to be deceived by advertisement indicating that potato chips are "all natural" given that potato chips "are processed foods, which of course do not exist or occur in nature."); *McKinnis v. Kellogg USA,* 2007 WL 4766060, at *4 (C.D. Cal. 2007) (consumers would not be deceived into believing that "Froot Loops" contains fruit, given that the name "Froot Loops" does not contain the word "fruit" and the ingredients are listed on the side of the box.).

5

glyphosate targets an enzyme used by the human body – but that is not the nature of Plaintiffs' claims.

As the Fourth Circuit observed, statutes forbidding "false or misleading" statements "creat[e] two different theories of recovery in a false advertising claim: A plaintiff must allege either (i) that the challenged representation is literally false or (ii) that it is literally true but nevertheless misleading." *Id.* at 514. The plaintiffs in that case argued that the defendants' claims were "literally false," and the Fourth Circuit's discussion focused on that theory. Defendant follows suit here, repeatedly insisting that Plaintiffs are asserting claims of literal falsehood – but the Court is not convinced that this is an accurate characterization of Plaintiffs' claims. Plaintiffs do not dispute the literal truth of the Label's representation – that the human body itself does not use the enzyme targeted by glyphosate and the enzyme is not found in the human body. Instead, they claim that the Label is misleading because the enzyme is found in gut bacteria that is in the human body, and the net effect is to imply that glyphosate cannot affect humans. Regardless, Defendant's argument invites the Court to read and interpret the studies referenced in the Complaint's footnotes, and in doing so insists that those studies confirm that the shikimate pathway does not exist in vertebrate cells. (Doc. 22, p. 18.) This may be; however, Plaintiffs are not alleging that the shikimate pathway exists in vertebrate cells; they are alleging that the shikimate pathway exists in gut bacteria, which is found in the human digestive system.[5] At this stage of the proceedings, the Court must accept the facts alleged by Plaintiffs, including the fact that the shikimate pathway exists in bacteria that is found in the human body and is beneficial to human health.

---

[5] And, to the extent that Plaintiffs are alleging that the Label is literally false because the enzyme is in the human body (because it is found in bacteria that is in the human body), the Court notes that Defendants do not contend that there is scientific doubt that gut bacteria using the enzyme is in the human body.

Defendant's final argument is that consumers cannot be deceived because the Label advises that glyphosate "targets" – that is, is aimed or directed at – plants. Thus, "[r]egardless of whether EPSP synthase is present in certain gut bacteria, the Complaint does not show that glyphosate is 'aimed' or 'directed' at such gut-bacteria enzymes." (Doc. 22, pp. 18-19.) But Plaintiffs' theory is not that Defendant is "targeting" the bacteria in human bodies; indeed, the fact that Defendant intends that its product will not harm gut bacteria (or humans) is irrelevant. Plaintiffs' theory is that the Label creates the impression that glyphosate affects only plants (which are not found in the human body) and thus has no effect on human physiology – and this impression is contrary to fact.

The arguments Defendant has raised are largely factual in nature, and thus are not well-suited for resolution on a Motion to Dismiss. Defendant may reassert these arguments once a factual record is developed, but at present its arguments must be rejected.

## B. Availability of Adequate Remedies at Law

Defendant argues that Plaintiffs' claims under the UCL, FAL and for unjust enrichment must be dismissed because these claims are not viable unless a plaintiff lacks an adequate remedy at law. Plaintiffs do not dispute that these claims are not viable if they have an adequate remedy at law but argue that they can assert alternative claims until it is determined whether they have an adequate remedy at law. The Court agrees with Plaintiffs. "A party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). "For this reason, courts routinely decline to dismiss unjust-enrichment claims when pled in the alternative." *Mono Advertising, LLC v. Vera Bradley Designs, Inc.,* 285 F. Supp. 3d 1087, 1091 (D. Minn. 2018) (citing cases); *see also In re Vizio, Inc. Consumer Privacy Litig.,* 238 F. Supp. 3d 1204, 1233-34 (C.D. Cal. 2017) (California causes of action); *JTH Tax, Inc. v. Gouneh,* 721 F. Supp. 2d 132, 139

(N.D.N.Y. 2010) (New York causes of action); *Thornton v. Pinnacle Foods Group LLC,* 2016 WL 4073713, at *4 (E.D. Mo. 2016) (Missouri causes of action).  With Plaintiffs' acknowledgment that these claims are alternative theories of recovery, the Court declines to dismiss the equitable claims at this time.

### C.  Bonilla's Claims Under the GBL

The GBL provides a safe harbor for actions that comply with federal law.  According to Defendant, the safe harbor applies because the EPA's approval of the Label demonstrates that Defendant complied with FIFRA.  The Court disagrees.

Section 349(a) of the GBL prohibits "[d]eceptive acts or practices" but section 349(d) provides a "complete defense" with respect to any "act or practice [that] is, . . . subject to and complies with the rules and regulations of, and the statutes administered by, the federal trade commission or any official department, division, commission or agency of the United States . . . ."  Similarly, § 350 prohibits "[f]alse advertising," but § 350-c provides a defense for advertisements that "compl[y] with the rules and regulations of, and the statutes administered by, the Federal Trade Commission . . . ."  While § 350-c appears limited to rules and regulations of the FTC, New York Courts have construed it as applying to statutes and regulations of other federal agencies. *See American Home Products Corp. v. Johnson & Johnson,* 672 F. Supp. 135, 144 (S.D.N.Y. 1987) (citing cases).  Thus, in practice, the two provisions are the same.

Defendant argues that the EPA is required to review labels to insure compliance with FIFRA, so the EPA's approval of the Label means that the Label complies with FIFRA and therefore the safe harbor applies.  The Eastern District of New York rejected this argument in a different case involving the Label (albeit with different legal theories advanced by the plaintiffs).  In that case the court observed that FIFRA specifically states that the EPA's approval of a label is

not a defense to any alleged violation of FIFRA. *Carias v. Monsanto Co.*, 2016 WL 6803780, at *3 (S.D.N.Y. 2016) (citing 7 U.S.C. § 136a(f)(2)).[6] Registration and approval by the EPA is "prima facie evidence" of compliance with FIFRA, but it is not determinative of the issue. *Id.* Therefore, the EPA's approval does not establish that the Label complies with FIFRA, so the EPA's approval does not trigger the safe harbor. The Court finds this reasoning persuasive, given that New York courts (both state and federal) apply the GBL's safe harbor only if compliance with the federal statute or regulation can be conclusively established in some manner, or if the defendant's actions were required by a federal statute or regulation.[7]

Defendant contends that *Carias* suffers from an analytical flaw and should not be deemed persuasive. It points to *American Home Products*, where the Southern District of New York held that the FDA's approval of a label was sufficient to satisfy the GBL's safe harbor. Defendant claims that this is significant because the FDA's statutory scheme is (according to Defendant) identical to FIFRA. Defendant reasons that because the FDA's approval of a label qualifies for the GBL's safe harbor, so too should the EPA's approval of a label. It concludes that *Carias* is

---

[6] "In no event shall registration of an article be construed as a defense for the commission of any offense under this subchapter. As long as no cancellation proceedings are in effect registration of a pesticide shall be prima facie evidence that the pesticide, its labeling and packaging comply with the registration provisions of the subchapter." 7 U.S.C.A. § 136a(f)(2).

[7] *Compare Mendelson v. Trans World Airlines, Inc.*, 466 N.Y.S. 2d 423, 425 (N.Y. Sup. Ct. 1983) (GBL claim could not be asserted against airline using language prescribed in regulation to explain practice of overbooking); *Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A.*, 481 F. App'x. 622, 626 (2d Cir. 2012) (plaintiff's complaint alleged that bank made funds available within seven days as required by Electronic Funds Availability Act, so compliance with federal law was established and GBL's safe harbor applied) *with People ex rel. Spitzer v. General Elec. Co.*, 756 N.Y.S. 2d 520, 524 (N.Y. App. Div. 2003) (language used in notice of recall was not approved by Consumer Product Safety Commission, so GBL's safe harbor does not apply); *Geffner v. Coca-Cola Co.*, 343 F. Supp. 3d 246, 252 (S.D.N.Y. 2018) (Food Drug and Cosmetic Act permits use of the word "Diet" on products but "does not affirmatively approve or require it" and mere authorization is insufficient to demonstrate that its use was not deceptive); *Singleton v. Fifth Generation, Inc.*, 2016 WL 406295, at *8 (N.D.N.Y. 2016) (application for approval of label by the United States Alcohol and Tobacco Tax and Trade Bureau advised that "issuance of certificate does not relieve [the applicant] from liability for violations of" other laws prohibiting false and misleading labeling, so safe harbor does not apply).

not persuasive because it does not adequately address this point.  The Court does not agree with Defendant.

For support, Defendant cites *Colacicco v. Aptoex Inc.,* 521 F.3d 253, 268 (3d Cir. 2008), *judgment vacated on other grounds,* 556 US. 1101 (2009), for the proposition that "[e]ven after a drug has been approved, a drug will be deemed misbranded if the 'labeling is false or misleading in any particular' and the FDA may withdraw approval of that drug and prosecute the manufacturer." (Doc. 22, p. 22 n.10.)  Defendant relies on this *dicta* to contend that the FDA (like the EPA) can prosecute a manufacturer for misbranding even if the label had been previously approved and thus, the two statutory schemes are identical.

The Court concludes that this is an oversimplification of the FDA's powers.  The statute cited in *Colacicco,* 21 U.S.C. § 355(e)(3), permits the FDA to withdraw approval of a label if "new information . . . evaluated together with the [information and data originally submitted demonstrates that] the labeling . . . is false or misleading in any particular *and was not corrected within a reasonable time* after receipt of written notice from the [FDA] specifying the matter complained of." (emphasis supplied).  In such a circumstance, the failure to *change* the label as directed by the FDA may constitute misbranding.  None of the statutes cited by the Third Circuit indicate that a drug manufacturer using a label approved by the FDA can be prosecuted for misbranding.  Further, FIFRA specifically provides that registration of the label is simply evidence that the label complies with FIFRA and the EPA's approval provides no defense to a claim of misbranding.  *See* 7 U.S.C. § 136a(f)(2).  And as noted in *Carias,* in contrast to FIFRA there is no statute (or at least none has been identified to the Court) stating that approval by the FDA constitutes only prima facie evidence of compliance.

Case 4:19-cv-00102-BP   Document 41   Filed 06/13/19   Page 10 of 21

It is also worth observing that *American Home Products* involved warning labels on aspirin. The court noted that after years of debate and multiple hearings, the FDA adopted a regulation that (1) specified the warning that must be placed on aspirin and (2) "expressly displace[d] all non-identical state labeling requirements." *American Home Products,* 672 F. Supp. at 141 (citing 51 Fed. Reg. 8181 (1986)). Thus, *American Home Products* is consistent with those cases (some of which are cited in footnote 6, *supra*) where the label contained language expressly required by a regulation – in which case, the fact that the label complied with the regulation was readily ascertainable. [8]

For these reasons, the Court is persuaded by the reasoning in *Carias*. The EPA's approval of the Label is evidence that it complies with FIFRA, but it does not conclusively establish that it complies. Therefore, the Court cannot conclude that Plaintiffs have failed to state a claim under the GBL.

### D. Reliance

Defendant argues that Bonilla's claims under the GBL and Bonilla's and Jones's warranty claims must be dismissed because they did not plead that they relied on the Label. Plaintiffs contend that when construed in their favor the Complaint alleges that Bonilla and Jones relied on the Label when they made their purchases. The Court agrees with Plaintiffs.[9]

---

[8] The Court need not consider whether *American Home Products* applies to FDA approved labels generally (as opposed to labels employing language specifically required by an FDA regulation, as was the case in *American Home Products*), especially given FIFRA's clear statement that EPA approval is only evidence of compliance and does not establish compliance.

[9] Plaintiffs also allege that a claim under GBL § 350 does not require reliance, (Doc. 27, p. 17), to which Defendant argues that there is a difference between "actual reliance" and "justifiable reliance," and GBL § 350 requires actual reliance. (Doc. 36, p. 15.) The Court's conclusions about the inferences to be drawn from the Complaint makes it unnecessary to consider these nuances at this time.

The Complaint alleges that all three Plaintiffs (as well as all class members) would have changed their behavior (by not paying as much for, or not purchasing, Roundup products) had the truth been disclosed. (Doc. 1, ¶¶ 44-45.) This allegation is repeated with respect to Jones and Bonilla. (Doc. 1, ¶¶ 74, 97.) The Complaint also alleges that "Plaintiffs . . . purchased Roundup Products believing them to conform to the express warranties." (Doc. 1, ¶ 132.) From these allegations, it may be inferred that Jones and Bonilla relied on the Label's accuracy when they made their purchasing decisions. Accordingly, the Court denies Defendant's request to dismiss their GBL and warranty claims.[10]

### E. The CLRA's Requirement For a Venue Affidavit

An action under the CLRA must "be commenced in the county in which the person against whom it is brought resides, has his principal place of business, or is doing business, or in the county where the transaction or any substantial portion thereof occurred." Cal. Civ. Code § 1780(d). That same provision also requires the plaintiff to "file an affidavit stating the facts showing that the action has been commenced in a county described in this section . . . . If a plaintiff fails to file the affidavit required by this section, the court shall . . . dismiss the action without prejudice." Defendant contends that the Court must dismiss the CLRA claims because Plaintiffs did not file the venue affidavit. The Court declines to dismiss the CLRA claims on this basis.

District courts in California have reached varying results on this issue,[11] and neither party provides the Court with any reason to prefer one line of cases over the other. However, this case

---

[10] The Complaint specifically alleges that "Yee relied on [the Label's] representation in deciding to purchase those Roundup Products," (Doc. 1, ¶ 21), but there is no such specific allegation regarding Jones or Bonilla. This difference is (apparently) why Defendant did not ask the Court to dismiss Yee's claims on this ground. (*See* Doc. 36, pp. 14-15.) If Plaintiffs deem it prudent to file an Amended Complaint adding a similar sentence regarding Jones or Bonilla, the Court would likely grant a request for leave to do so.

[11] Cases holding that the requirement does not apply in federal court include *Sandoval v. PharmaCare US, Inc.,* 145 F. Supp. 3d 986, 999 (S.D. Cal. 2015). Cases applying the requirement include *In re Nexus 6P Products Liab. Litig.,*

was filed in federal court; therefore, venue is governed by the federal venue statutes and not § 1780(d) or any other provision of state law. Moreover, venue is a procedural matter, so an affidavit confirming the facts necessary to establish venue would also appear to be a procedural matter – and federal law governs procedural matters in this case. On this point, the Court is greatly persuaded by the analysis set forth in *Evans v. Linden Research, Inc.,* 763 F. Supp. 2d 735, 738 n.1 (E.D. Pa. 2011), explaining why California's venue affidavit requirement is procedural and not a substantive requirement applicable in federal court. Therefore, the Court holds that § 1780(d)'s venue affidavit requirement is not applicable to cases in federal court. *Evans,* 763 F. Supp. 2d at 738 n.1; *see also Sandoval v. PharmaCare US, Inc.,* 145 F. Supp. 3d 986, 999 (S.D. Cal. 2015); *Villa Lara v. LG Elecs. U.S.A., Inc.,* 2018 WL 3748177, at \*6 (D. Minn. 2018).[12]

## F.  Breach of Warranty and Unjust Enrichment Claims

Defendant argues that Count VII (breach of warranty) and Count VIII (unjust enrichment) must be dismissed because the Complaint does not specify the law governing those claims. Defendant does not contend that these legal theories do not exist or that Plaintiffs' pleading is insufficient to state such claims; it merely argues that the Complaint's failure to specify the governing law is fatal to the claims. (*E.g.,* Doc. 22, p. 23.)

The Court disagrees. Defendant cites no authority for the proposition that a complaint must set forth legal authority for the claims asserted. The sole authority that Defendant cites – *In re: Dollar General Corp. Motor Oil Marketing & Sales Practices Litig.,* 2017 WL 3863866 (W.D. Mo. 2017) – involved a Consolidated Amended Class Action Complaint filed as part of Multi-

---

293 F. Supp. 3d 888, 928-29 (C.D. Cal. 2018) and *McVicar v. Goodman Global, Inc.,* 1 F. Supp. 3d 1044, 1055-56 (C.D. Cal. 2014).

[12] The failure to file a venue affidavit can be cured by filing it after the case is filed. *E.g.,* ); *Ladore v. Sony Computer Entm't Am., LLC,* 75 F. Supp. 3d 1065, 1074 (N.D. Cal. 2014); *Hoey v. Sony Elec. Inc.,* 515 F. Supp. 2d 1099, 1105 (N.D. Cal. 2007). Plaintiffs should consider taking advantage of that opportunity.

13

District Litigation and it does not support Defendant's argument. The pleading in that case asserted a claim for unjust enrichment on behalf of a nationwide class but did not specify the law that would govern the nationwide class's claim. The district court noted that there is no federal common law, so "to the extent Plaintiffs advance[d] a claim of unjust enrichment based on federal common law, the Court dismisse[d] the cause of action for failure to state a claim upon which relief can be granted." *Dollar General,* 2017 WL 3863866, at *5. The Court then turned to the plaintiffs' theory that "the laws of unjust enrichment in the many home states of the various plaintiffs are substantially similar so as to allow a nationwide class to proceed, despite any variance between those states' substantive laws." *Id.* The court recognized that Plaintiffs' theory was best resolved in the context of a motion seeking to certify the nationwide class and denied the motion to dismiss the unjust enrichment claim based on various state laws. *Id.* at *5-*6. Thus, the only claim dismissed was any claim predicated on federal common law.

Like the plaintiffs in *Dollar General*, Plaintiffs here seek to assert a claim on behalf of a nationwide class, (*see* Doc. 27, p. 18), but they do not suggest that they may base their claims on federal law. As stated above, Defendant does not argue that Plaintiffs' allegations fail to state a claim for unjust enrichment or breach of warranty under the laws of Missouri, New York, or California. For these reasons, as in *Dollar General,* there is no basis for dismissing Plaintiffs' unjust enrichment or breach of warranty claims.

### G. Preemption

Defendant contends that Plaintiffs' claims are preempted by FIFRA. Plaintiffs argue that the majority of courts to address the issue have held that state claims similar to those advanced in this case are not preempted. The Court is not persuaded by Defendant's argument and holds that

14

Plaintiffs' claims are not preempted. Critical to the Court's analysis is the Supreme Court's decision in *Bates v. Dow Agrosciences LLC,* 544 U.S. 431 (2005).

As the Supreme Court explained in *Bates,* until 1910 the states were primarily (if not exclusively) responsible for regulating pesticides. In 1910, the federal government began regulating pesticides, and FIFRA was adopted in 1947 to regulate licensing and labeling. In 1972, Congress expanded FIFRA from a labeling provision into a comprehensive regulatory scheme. *Bates,* 544 U.S. at 437-38. Congress reaffirmed that the states "may regulate the sale or use of any federal registered pesticide . . . but only if and to the extent the regulation does not permit any sale or use prohibited by" FIFRA. 7 U.S.C. § 136v(a). Congress also limited the States' authority, providing that the states "shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter." 7 U.S.C. § 136v(b). This latter provision gives rise to Defendant's preemption arguments.

In *Bates,* the Supreme Court held that § 136v(b) does not eliminate the States' "supplementary role" in regulating pesticide labels. "States have ample authority to review pesticide labels to ensure that they comply with both federal and state labeling requirements. Nothing would prevent a State from making the violation of a federal labeling or packaging requirement a state offense, thereby imposing its own sanctions on pesticide manufacturers who violate federal law. The imposition of state sanctions for violating state rules that merely duplicate federal requirements is equally consistent with" the statute. *Bates,* 544 U.S. at 442. Moreover, § 136v(b) only prohibits "requirements" for labels and packaging, which is significant because "[a]n occurrence that merely motivates an optional decision does not qualify as a requirement." *Id.* at 443. This point is significant because a jury verdict that might induce or persuade a manufacturer to change its label is not a "requirement" prohibited by § 136v(b). "[A]n event, such as a jury

verdict, that merely motivates an optional decision is not a requirement.  The proper inquiry calls for an examination of the elements of the common-law duty at issue; it does not call for speculation as to whether a jury verdict will prompt the manufacturer to take any particular action . . . ." *Id.* at 445 (internal citation omitted).

With this backdrop, *Bates* described two conditions that must be satisfied for a state rule to be pre-empted.  First, the state rule "must be a requirement for '*labeling or packaging*'; rules governing the design of a product . . . are not pre-empted." *Id.* at 444.  Second, even if the rule is a requirement for labeling or packaging, it is only preempted if it imposes a requirement that is "in addition to or different from" FIFRA's requirements; any state rule that imposes the same requirements as FIFRA (or its attendant regulations) would not be preempted.  *Id.*  In this case, some of Plaintiffs' claims are not requirements for labeling or packaging, and those that are requirements for labeling or packaging have not been demonstrated to impose requirements contrary to FIFRA.  Thus, none of Plaintiffs' claims are preempted.

First, the Supreme Court explicitly held that claims based on express warranty are not labeling or packaging requirements.  "[A] cause of action [based] on an express warranty asks only that a manufacturer make good on the contractual commitment that it voluntarily undertook by placing that warranty on its product.  Because this common-law rule does not require the manufacturer to make an express warranty, or . . . to say anything in particular in that warranty, the rule does not impose a requirement 'for labeling or packaging.'" *Id.* at 444-45.  More generally, "[r]ules that require manufacturers . . . to honor their express warranties or other contractual commitments plainly do not qualify as requirements for 'labeling or packaging.'" *Id.* at 444; *see also Wuebker v. Wilbur-Ellis Co.,* 418 F.3d 883, 886-87 (8th Cir. 2005).  Therefore, Plaintiffs' express warranty claim (Count VII) is not preempted.

16

Second, claims of fraud "are premised on common-law rules that qualify as 'requirements for labeling or packaging.'" *Id.* at 446. Based on that reasoning, Plaintiffs' statutory claims (all of which are substantially similar to common-law fraud) also impose requirements for labeling or packaging.[13] Under *Bates,* the critical question then becomes: do Plaintiffs' statutory claims impose requirements for labeling or packaging that are "in addition to or different from" FIFRA's requirements? Defendant does not address this question; its analysis essentially stops after it contends that Plaintiffs' claims impose labeling requirements. However, these are clearly separate inquiries, as demonstrated by the Supreme Court's actions in *Bates*. After observing that the plaintiffs' fraud claims imposed labeling requirements, the Supreme Court held that the claims were not preempted if they imposed requirements that are "equivalent to, and fully consistent with, FIFRA's misbranding provisions." *Id.* at 447. The Court did not simply hold that the plaintiffs' fraud claims were preempted; instead, it remanded the case to the Court of Appeals "to decide in the first instance whether these particular common-law duties are equivalent to FIFRA's misbranding standards." *Bates,* 544 U.S. at 447. In this case, the Court is inclined to believe that Plaintiffs' claims do not impose additional or different requirements. FIFRA already bars labels that "bear[ ] any statement . . . relative thereto or to its ingredients which is false or misleading in any particular." 7 U.S.C. § 136(q)(1)(A). Plaintiffs' claims similarly assert that the label bears false and misleading statements, (*e.g.,* Doc. 1, ¶¶ 3-6, 27-31); thus understood, Plaintiffs' claims do not impose additional or different requirements.

---

[13] It is not clear whether Plaintiffs' unjust enrichment claims impose labeling requirements. Defendant does not analyze the matter, and instead simply concludes that all of Plaintiffs' claims impose labeling requirements, (*e.g.,* Doc. 36, p. 16), despite the Supreme Court's holding that express warranty claims do not. Ultimately it does not matter; even if the unjust enrichment claims impose labeling requirements, for the reasons discussed in the text there is no indication that those requirements are different than those already imposed by FIFRA.

Defendant essentially relies on the EPA's approval of the Label, contending that the EPA's approval means that the Label complies with FIFRA, so any inadequacies Plaintiffs assert would necessarily be "different from or in addition to" FIFRA's requirements. (Doc. 22, p. 26.) There are several related flaws with Defendant's argument. First, this reasoning was not adopted in *Bates*. Second, Defendant's argument was viable when *Bates* was decided; that is, when *Bates* was decided FIFRA required the EPA to approve labels. Thus, *Bates* could have attached importance (if not preemptive effect) to the EPA's approval, but it did not do so. That being the case, the Court declines to depart from *Bates*. Finally, as noted earlier the EPA's approval is not a determination that a manufacturer has complied with FIFRA; the EPA's approval is prima facie evidence of compliance, but it is not conclusive and it is not a defense. Given that the EPA's approval is only prima facie evidence of compliance, it cannot be said that requiring something more on the Label would automatically be something other than what FIFRA already requires.[14]

Defendant also relies on district court decisions that have dismissed claims for injunctive relief. For instance, in *Mirzaie v. Monsanto Co.,* 2016 WL 146421 (C.D. Cal. 2016), the court reasoned (based on prior Ninth Circuit decisions) that an order requiring a manufacturer to change its label would directly impose an additional or different labeling requirement because only the EPA can approve label changes, so a state rule directly prescribing the label's contents is preempted. *Mirzaie,* 2016 WL 146421, at *2. However, *Mirzaie* did not involve a claim for damages,[15] which as discussed above the Supreme Court held might encourage, but would not

---

[14] The Court notes that the Supreme Court made the same point about the effect of the EPA's approval. *Bates,* 544 U.S. at 438-39.

[15] Defendant argues that *Mirzaie* applies to cases seeking damages as well as injunctive relief because the plaintiff in that case sought damages. (Doc. 22, p. 25.) However, the court's opinion focuses exclusively on plaintiff's request for injunctive relief – except in a footnote, where the court noted that the statutory cause of action asserted by the plaintiff did not permit damages. *Mirzaie,* 2016 WL 146421, at *2 n.2. Thus, *Mirzaie* applied *Bates* only to the plaintiff's request for injunctive relief.

Case 4:19-cv-00102-BP   Document 41   Filed 06/13/19   Page 18 of 21

compel, a labeling change.  This distinction between claims for injunctive relief and damages has been utilized by most (if not all) courts analyzing *Bates*.  *E.g., Blitz v. Monsanto Co.,* 317 F. Supp. 3d 1042, 1049 (W.D. Wis. 2018) (citing cases); *Beyond Pesticides v. Monsanto Co.,* 311 F. Supp. 3d 82, 92 (D.D.C. 2018).[16]

Plaintiffs' warranty claim is not preempted because that claim does not impose labeling requirements.  Plaintiffs' other claims are also not preempted because they do not appear to impose requirements different from or in addition to FIFRA's requirements.  Therefore, Defendant's preemption argument is rejected.

### H.  Class-Related Allegations

Defendant presents three related arguments, all of which relate to Plaintiffs' effort to seek certification of a nationwide class.  It argues that (1) Plaintiffs lack standing to assert claims for Roundup products that they did not purchase, (2) Plaintiffs lack standing to assert claims based on the laws of other states, and (3) a nationwide class would be "nearly impossible" to certify so all allegations related to such a class should be struck.  The Court will address these arguments together (and in a slightly different order).

The Court starts with Defendant's request to strike Plaintiffs' allegations related to a nationwide class.  "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim," *General Tele. Co. of SW v. Falcon,* 457 U.S. 147, 160 (1982), in which case the district court can determine whether or not a class should be certified at the pleading stage without the benefit of a motion to certify.  *E.g., Kennedy v. Unumprovident Corp.,* 50 Fed. App'x 354, 355 (9th Cir. 2002);

---

[16] Defendant distinguishes one of these cases – *Carias v. Monsanto Co.,* 2016 WL 6803780 (E.D.N.Y. 2016) – because the claims in that case included claims for personal injury.  (Doc. 22, p. 25 n. 11.)  However, nothing in *Bates* makes this fact relevant to the preemption analysis; to the contrary, none of the claims in *Bates* involved personal injuries.

*Nobles v. State Farm Mut. Auto. Ins. Co.,* 2012 WL 4090347, at *2 (W.D. Mo. 2012). Defendant justifies resolving the issue at this stage by contending that it will be "nearly impossible for a plaintiff to meet the requirements of Rule 23 for a national class premised on unjust enrichment or breach of warranty claims." (Doc. 22, p. 30.) For support, Defendants cite several decisions discussing the legal difficulties certifying a nationwide class (and declining to certify such a class). Most (if not all) of those cases, however, were ruling on a motion to certify, and thus had the benefit of not only a specific class definition and the plaintiff's factual and legal arguments, but also the benefit of the parties' analysis of Rule 23. The Court has none of this information: Plaintiffs have presented a class definition, (Doc. 1, ¶ 48), but they are not bound to it and may present something different in a formal motion. Plaintiffs also have not presented legal or factual arguments in favor of certification. Defendant has provided only an anecdotal account of other court decisions and has not conducted a Rule 23 analysis specific to *this* case. While the Court recognizes the difficulties in justifying certification of a nationwide class, the Court cannot determine from the pleadings alone that a nationwide class cannot be certified. For these reasons the Court will not resolve the issue at this time and instead will consider the issues after Plaintiffs file a Motion for Class Certification.

The Court next turns to Defendant's request to dismiss claims based on other states' laws. The Court's decision not to dismiss Plaintiffs' allegations regarding a nationwide class means that this request should be denied as well. Whether Plaintiffs can assert claims based on other states' laws will depend on the nature of the class that Plaintiffs seek to have certified and the Court's ultimate conclusion regarding certification. If the Court certifies a nationwide or multistate class, it would have likely determined that the legal issues under the various state laws permit certification – and in that case, Plaintiffs would have standing to assert those claims.

Plaintiffs' request for certification will also affect whether they can represent a class consisting of people who bought other Roundup products containing glyphosate. Defendant insists that Plaintiffs can only represent people who bought the product that they bought; however, Plaintiffs are entitled to an opportunity to persuade the Court that this is not the case. For instance, Plaintiffs have indicated (at least preliminarily) that the class they wish to certify consists of individuals who bought products from Defendant that (1) contains glyphosate and (2) bears the Label. (*E.g.,* Doc. 1, p. 1, n.1; Doc. 1, ¶ 48.) The Court presently has no basis for concluding that such a class could not be certified. These observations further demonstrate the wisdom of waiting and addressing the issue once Plaintiffs file their Motion for Class Certification.

### III. CONCLUSION

For these reasons, Defendant's Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
DATE: June 13, 2019                    UNITED STATES DISTRICT COURT