**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

LISA JONES, *et al*.,

               Plaintiffs,

    v.

MONSANTO COMPANY,

               Defendant.

Case No. 19-0102-CV-W-BP

Hon. Beth Phillips


<u>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,**
**CERTIFICATION OF CLASS FOR THE PURPOSES OF SETTLEMENT**
**AND APPROVAL OF FORM AND MATTER OF NOTICE**</u>

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTS ............................................................................................................................... 2

I.    Background and Procedural History ..................................................................... 2

    A.    The *Blitz* Action ....................................................................................... 3

    B.    The Instant Class Action ........................................................................... 5

    C.    Mediation ................................................................................................... 7

II.    The Settlement's Terms ....................................................................................... 9

    A.    The Settlement's Benefits for the Class ..................................................... 9

        1.    Monetary Relief: $39.55 Million Non-Reversionary Common Fund ...................... 9

            a.    Class Notice and Administration Costs ........................................ 9

            b.    Incentive Awards and Attorneys' Fees and Costs ....................... 10

            c.    Payment of Class Members' Claims .......................................... 10

            d.    Labeling Changes ....................................................................... 14

    B.    The Settlement's Class Release ............................................................... 14

    C.    Procedures for Opting Out or Objecting .................................................. 15

ARGUMENT ................................................................................................................... 15

I.    The Nationwide Settlement Class Should Be Certified. ..................................... 15

    A.    The Numerosity Requirement of Rule 23(a)(1) Is Satisfied. .................... 16

    B.    The Commonality Requirement of Rule 23(a)(2) Is Satisfied. .................. 16

    C.    The Typicality Requirement of Rule 23(a)(2) Is Satisfied. ...................... 17

    D.    The Adequacy Requirement of Rule 23(a)(4) Is Satisfied. ...................... 17

    E.    Common Questions of Law or Fact Predominate. .................................... 18

    F.    A Class Action Is the Superior Method for Adjudicating This Controversy ........... 19

II.    The Settlement Should Be Preliminarily Approved ........................................... 20

    A.    Class Representatives and Class Counsel Have Adequately Represented the Class 22

    B.    The Settlement Is the Product of Arms'-Length, Informed Negotiations ................. 22

    C.    The Relief Provided in the Settlement Is Adequate .................................. 23

    D.    The Settlement Treats Class Members Equally ........................................ 27

    E.    Defendant's Financial Condition Favors Approval of the Settlement. ....................... 28

III.    The Notice and Notice Plan Should Be Approved .............................................. 28

CONCLUSION ................................................................................................................ 28

# TABLE OF AUTHORITIES

## CASES

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................................ 17

*Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023 (8th Cir. 2010) ................................................ 18

*Beyond Pesticides v. Monsanto Co.*, No. 1:17-cv-00941 (D.D.C. 2017) ...................................... 3

*Bezdek v. Vibram USA, Inc.*, 809 F.3d 78 (1st Cir. 2015) ............................................................ 26

*Blades v. Monsanto Co.*, 400 F.3d 562 (8th Cir. 2005) ................................................................ 18

*Blair v. Monsanto Co.*, No. 3:17-cv-50123 (N.D. Ill. Apr. 24, 2017) ............................................ 2

*Blitz v. Monsanto Co.*, 317 F. Supp. 3d 1042 (W.D. Wis. 2018)................................................... 4

*Blitz v. Monsanto Co.*, No. 17-cv-473, 2019 U.S. Dist. LEXIS 498 (W.D. Wis. Jan. 2, 2019) 5, 24

*Blitz v. Monsanto Co.*, No. 3:17-cv-00473 (W.D. Wis. June 20, 2017) ............................... passim

*Bristol-Myers Squibb v. Superior Court*, 137 S. Ct. 1773 (2017) ................................................. 4

*Brown v. Precythe*, No. 2:17-cv-04082-NKL, 2018 U.S. Dist. LEXIS 105534 (W.D. Mo. June
    25, 2018) (Laughrey, J.)..................................................................................... 16, 17, 18

*Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017) ........................................................ 27

*Carias v. Monsanto Co.*, No. 15-CV-3677, 2016 U.S. Dist. LEXIS 139883 (E.D.N.Y. Sept. 30,
    2016) .......................................................................................................................... 2, 26

*Claxton v. Kum & Go, L.C.*, No. 6:14-cv-03385-MDH, 2015 U.S. Dist. LEXIS 75605 (W.D. Mo.
    June 11, 2015) (Harpool, J.)........................................................................... 17, 19, 20

*Cooper v. Integrity Home Care, Inc.*, No. 4:16-CV-1293-DGK, 2018 U.S. Dist. LEXIS 119748
    (W.D. Mo. July 18, 2018) (Kays, J.). ...................................................................... 16

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) ...................................................... 25

*Ebert v. General Mills, Inc.*, 823 F.3d 472 (8th Cir. 2016) ........................................................ 16

*Fath v. Am. Honda Motor Co.*, No. 18-1549, 2019 U.S. Dist. LEXIS 215090 (D. Minn. Dec. 13,
    2019) ...................................................................................................................... 20, 21

*Heldt v. Payday Fin., LLC*, No. 3:13-CV-03023, 2016 U.S. Dist. LEXIS 2646 (D.S.D. Jan. 8,
    2016) ............................................................................................................................ 23

*Hopkins v. Kan. Teachers Cmty. Credit Union*, 265 F.R.D. 483 (W.D. Mo. 2010) (Fenner, J.) . 16

*Huyer v. Njema*, 847 F.3d 934 (8th Cir. 2017) .......................................................................... 26

*Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621 (S.D. Iowa 2016)................................................. 26

*In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694 (E.D. Mo. 2002) ............................... 22, 26

*In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088 (5th Cir. 1977). ................................. 28

*In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057 (8th Cir. 2013).
    ............................................................................................................................. 21, 28

*Keil v. Lopez*, 862 F.3d 685 (8th Cir. 2017) .......................................................................... 25, 26

*Komoroski v. Serv. Partners Private Label, Inc.*, No. 4:16-CV-00294-DGK, 2017 U.S. Dist.
    LEXIS 119292 (W.D. Mo. July 31, 2017) (Kays, J.) ........................................... 2, 18, 20

*Marshall v. Nat'l Football League*, 787 F.3d 502 (8th Cir. 2015) ........................................ 27, 28

*McClean v. Health Sys., Inc.*, No. 6:11-CV-03037-DGK, 2015 U.S. Dist. LEXIS 181040 (W.D.
    Mo. June 1, 2015) (Kays, J) ...................................................................................... 23

*Mirzaie v. Monsanto Co.*, No. CV 15-04361, 2016 U.S. Dist. LEXIS 3816 (C.D. Cal. Jan. 12,
    2016) .......................................................................................................................... 2, 26

iii

*Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198 (W.D. Mo. 2017) (Smith, J.)................. 20

*Rawa v. Monsanto Co.*, Nos. 4:17CV01252 & 4:17CV02300, 2018 U.S. Dist. LEXIS 88401 (E.D. Mo. May 25, 2018)................................................................................ 17, 19, 20

*Risch v. Natoli Eng'g Co., LLC*, No. 4:11CV1621, 2012 U.S. Dist. LEXIS 110080 (E.D. Mo. Aug. 7, 2012) ..................................................................................................... 24

*Schoenbaum v. E.I. Dupont De Nemours & Co.*, No. 4:05CV01108, 2009 U.S. Dist. LEXIS 114080 (E.D. Mo. Dec. 8, 2009)...................................................................... 22

*Schumacher v. SC Data Ctr., Inc.*, No. 2:16-cv-04078-NKL, 2017 U.S. Dist. LEXIS 216359 (W.D. Mo. Apr. 24, 2017) (Laughrey, J.) ...................................................... 15

*Scott v. Boyd Bros. Transp.*, No. 13-00579-CV-W-BP, 2014 U.S. Dist. LEXIS 189686 (W.D. Mo. Sep. 5, 2014) (Phillips, J.) ......................................................................... 23

*Simmons v. Enter. Holdings, Inc.*, No. 4:10CV00625, 2012 LEXIS 29366 (E.D. Mo. Mar. 6, 2012) ....................................................................................................... 15, 20, 28

*Swinton v. SquareTrade, Inc.*, No. 4:18-CV-00144, 2019 U.S. Dist. LEXIS 25458 (D. Iowa Feb. 14, 2019) ................................................................................................ 21, 27, 28

*Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988)............................................................ 21

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, (2011) ........................................... 16, 18

*Washington v. Monsanto Co.*, No. 2:17-cv-02216 (E.D.N.Y. Apr. 12, 2017)............................... 2

## STATUTES

California's Consumers Legal Remedies Act ...................................................... 3, 6
California's False Advertising Law ...................................................................... 3, 6
California's Unfair Competition Law ................................................................... 3, 6
Florida's Deceptive and Unfair Trade Practices Act ............................................... 3
Illinois Consumer Fraud and Deceptive Business Practices Act ............................. 3
Missouri Merchandising Practices Act .................................................................... 6
New Jersey Consumer Fraud Act ............................................................................. 3
New York General Business Law § 349 ............................................................ 3, 6
New York General Business Law § 350 ............................................................ 3, 6
Wisconsin's Deceptive Trade Practices Act ................................................... 3, 4, 5

## OTHER AUTHORITIES

Advisory Committee's Notes on 2018 Amendments to Fed. R. Civ. P. 23, 324 F.R.D. 904....... 21

## RULES

Fed. R. Civ. P. 23(3)(1)............................................................................................. 15
Fed. R. Civ. P. 23(a)(1)............................................................................................. 16
Fed. R. Civ. P. 23(a)(2)....................................................................................... 16, 17
Fed. R. Civ. P. 23(a)(3)............................................................................................. 17
Fed. R. Civ. P. 23(a)(4)............................................................................................. 17
Fed. R. Civ. P. 23(b)(3)....................................................................................... 18, 19
Fed. R. Civ. P. 23(b)(3)(C) ...................................................................................... 20
Fed. R. Civ. P. 23(c)(2)(B) ....................................................................................... 28
Fed. R. Civ. P. 23(e) .................................................................... 15, 20, 21, 23
Fed. R. Civ. P. 30(b)(6).......................................................................................... 4, 6
Fed. R. Civ. P. 45(a)(4)............................................................................................... 4

iv

Fed. R. Evid. 408 ............................................................................................................ 7, 22

**TREATISES**

W. Rubenstein, *Newberg on Class Actions* (5th ed. 2011) ................................................. 2, 15, 16

With Defendant Monsanto Company's consent, Plaintiffs move for preliminary approval of a proposed nationwide Settlement Agreement.[1]

## **INTRODUCTION**

This is a consumer-fraud class action in which Plaintiffs allege that Monsanto advertised its Roundup® Weed & Grass Killer products ("Roundup® Products") with a misleading label representation, namely, that Roundup® Products' active ingredient, glyphosate, targets an enzyme found in plants but not in people or pets (the "Challenged Statement").

The proposed nationwide Settlement follows more than two years of litigation concerning the Challenged Statement in several federal district courts. Following court-ordered mediation in this matter and extensive arms'-length negotiations, the parties settled on a nationwide basis, with Monsanto agreeing to establish a $39.55-million Common Fund, against which Claimant Class Members can receive standardized payments of 10% of the weighted average retail price with either (1) proof of purchase or (2) a declaration under the penalty of perjury of the identity and quantity of products purchased.[2]

This is a fair settlement for the Class, allowing for robust Class Notice and permitting Class Members to claim monetary refunds—$0.37 to $10.63 per unit, depending on the size of the bottle—for as much product as they are reasonably likely to have purchased. No portion of the

---

[1] The Settlement Agreement is attached to the Declaration of Kim E. Richman ("Richman Decl.") as Exhibit 1. All capitalized terms herein have the meaning specified in the Settlement Agreement.

[2] Claims that are based only upon a declaration signed under penalty of perjury (*i.e.*, do not include reasonable proof of purchase) shall be limited to a Maximum Allowance of one (1) Product for each year of the Class Period with the exception of claims for 1-gallon packages of Roundup® Weed and Grass Killer Super Concentrate. For 1-gallon packages of Roundup® Weed and Grass Killer Super Concentrate, claims that are based only upon a declaration signed under penalty of perjury shall be limited to a Maximum Allowance of one (1) Product for every two (2) years of the Class Period. Claims based on a reasonable proof of purchase are not subject to the Maximum Allowance, but the Claims Administrator may require a declaration signed under penalty of perjury that provides additional information, including that the purchases were for personal use at a specific location.

1

fund will revert to Monsanto. In light of lawsuits brought by Class Counsel, particularly the instant

case and the related action *Blitz v. Monsanto Co.*, No. 17-cv-473 (W.D. Wis.) (the "*Blitz* Action"),

Monsanto has also agreed in the proposed Settlement to remove the representation that glyphosate

"targets an enzyme found in plants but not in people or pets" from the label of the Roundup®

Products. Thus, the lawsuits and settlement, if approved, will benefit not only Class Members, but

the general public as well. Accordingly, preliminary approval is appropriate because the proposed

settlement falls well "'within the range of possible approval.'" *Komoroski v. Serv. Partners Private*

*Label, Inc.*, No. 4:16-CV-00294-DGK, 2017 U.S. Dist. LEXIS 119292, at *2 (W.D. Mo. July 31,

2017) (Kays, J.) (quoting W. Rubenstein, *Newberg on Class Actions* (5th ed. 2011) §13:12).

## FACTS

### I.     Background and Procedural History

Plaintiffs' Complaint, filed on February 13, 2019 (Dkt. No. 1), alleged claims arising from

the same Challenged Statement at issue in several actions litigated in federal courts (collectively,

the "Related Actions").[3] In April 2017, various attorneys, including some of Class Counsel, filed

class actions on behalf of consumers in the Eastern District of New York, *Washington v. Monsanto*

*Co.*, No. 2:17-cv-02216 (E.D.N.Y. Apr. 12, 2017), and the Northern District of Illinois, *Blair v.*

*Monsanto Co.*, No. 3:17-cv-50123 (N.D. Ill. Apr. 24, 2017), which were subsequently voluntarily

dismissed and refiled in June 2017 in the Western District of Wisconsin under the caption *Blitz v.*

---

[3] Unrelated actions concerning the Challenged Statement were brought in April and June of 2015, not by Class Counsel or Plaintiffs here. *See Mirzaie v. Monsanto Co.*, No. CV 15-04361, 2016 U.S. Dist. LEXIS 3816 (C.D. Cal. Jan. 12, 2016) (alleging violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500); *Carias v. Monsanto Co.*, No. 15-CV-3677, 2016 U.S. Dist. LEXIS 139883 (E.D.N.Y. Sept. 30, 2016) (alleging violation of New York General Business Law ("GBL") §§ 349, 350). In those actions, Monsanto argued that the plaintiffs' state-law claims were preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136 *et seq.* The *Mirzaie* and *Carias* courts agreed in part and dismissed the plaintiffs' claims for injunctive relief under the California and New York statutes as preempted by FIFRA. *See Mirzaie*, 2016 U.S. Dist. LEXIS 3816, at **6-7; *Carias*, 2016 U.S. Dist. LEXIS 139883, at **19-20. The *Carias* court concluded, however, that FIFRA does **not** preempt claims for damages. *See id.* at **18-19.

2

*Monsanto Co.*, No. 3:17-cv-00473 (W.D. Wis. June 20, 2017). In May 2017, Kim Richman, one of the attorneys designated as Class Counsel in this action, also filed an action on behalf of two non-profit organizations in the Superior Court of the District of Columbia, which Monsanto removed to federal court. *See Beyond Pesticides v. Monsanto Co.*, No. 1:17-cv-00941 (D.D.C., removed May 18, 2017).

The litigation in the Related Actions—and particularly the *Blitz* Action—contributed significantly to bringing about the proposed Settlement in this matter.

### A.    The *Blitz* Action

On June 20, 2017, Thomas Blitz of Wisconsin and five out-of-state plaintiffs, representing a putative nationwide class and six putative state sub-classes, filed a complaint against Monsanto[4] in the United States District Court for the Western District of Wisconsin. The *Blitz* complaint alleges that, contrary to the Challenged Statement, the enzyme targeted by glyphosate (5-enolpyruvylshikimate-3-phosphate synthase, or "EPSP synthase") is found in people and their pets. Specifically, the complaint alleges that EPSP synthase is in the bacteria in the gut microbiome and is "critical to the health and wellbeing of humans and other mammals, including their immune system, digestion, allergies, metabolism, and brain function." (*Blitz* Compl. ¶ 3.) The complaint originally sought damages and declaratory and equitable relief from violations of six states' deceptive trade practices laws,[5] breach of express warranty, and unjust enrichment. In light of the Supreme Court's decision in *Bristol-Myers*

---

[4] The complaint also named Scotts Miracle-Gro Company ("Scotts") as a defendant. On November 6, 2017, Plaintiff Thomas Blitz, on behalf of a putative Wisconsin-only class, voluntarily dismissed all claims, without prejudice, as to defendant Scotts. This voluntary dismissal followed the execution of a tolling agreement with Scotts and was based upon representations made by Scotts as to its lack of liability for the claims at issue.

[5] The statutes named were Wisconsin's Deceptive Trade Practices Act (the "WDTPA"), the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA"), California's Consumers Legal Remedies Act (the "CLRA"), California's False Advertising Law ("FAL"), California's Unfair Competition Law (the "UCL"), New York General Business Law § 349 ("GBL § 349"), New York General Business Law § 350 ("GBL § 350"), the New Jersey Consumer Fraud Act ("NJCFA"), and Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). (*Blitz* Compl. ¶ 60.)

*Squibb v. Superior Court*, 137 S. Ct. 1773, 1780 (2017), however, the five non-resident plaintiffs voluntarily dismissed their claims on October 2, 2017, leaving only Plaintiff Blitz's claims for violation of the Wisconsin Deceptive Trade Practices Act ("WDTPA"), breach of express warranty, and unjust enrichment.

Monsanto moved to dismiss the *Blitz* complaint on October 9, 2017, arguing that (1) FIFRA expressly preempted Plaintiff Blitz's claims; (2) the Challenged Statement is not false or misleading as a matter of law; (3) Plaintiff Blitz's claim for breach of express warranty failed for want of proper notice; and (4) Plaintiff Blitz's unjust enrichment claim failed because Plaintiff Blitz purchased Roundup® Products from a retailer and not directly from Monsanto. On April 13, 2018, the Wisconsin federal court rejected Monsanto's arguments that the claims are preempted and that the Challenged Statement on the label is not false or misleading as a matter of law. *See Blitz v. Monsanto Co.*, 317 F. Supp. 3d 1042, 1056 (W.D. Wis. 2018). The court accepted Monsanto's arguments concerning breach of express warranty and unjust enrichment claims, and those claims were dismissed. *See id.*

Class Counsel conducted discovery in the *Blitz* Action, and by agreement of the parties, that discovery also applies to this action. Class Counsel served third-party subpoenas on The Scotts Miracle-Gro Company ("Scotts"), including a Subpoena to Produce Documents pursuant to Rule 45(a)(4) on May 17, 2018. Scotts served written responses, and Monsanto produced documents obtained from Scotts in response to Plaintiff Blitz's Requests for Production. Class Counsel also served on Scotts a Notice of Subpoena for Testimony pursuant to Rule 30(b)(6) on September 17, 2018. Meanwhile, between March 19, 2018 and June 11, 2018, Monsanto produced tens of thousands of documents, which Class Counsel reviewed in full in order to prepare for class certification briefing and depositions, and to provide background for an expert report commissioned by Class Counsel, which was produced to Monsanto on June 15, 2018. On July 13,

2018, Monsanto took the deposition of Plaintiff Blitz's expert on class-wide damages, University of Chicago Booth School of Business Professor Jean-Pierre Dubé. Class Counsel took the deposition of Monsanto's rebuttal expert Dr. Peter Rossi on August 2, 2018, and of Monsanto's survey expert Sarah Butler on August 9, 2018. Class Counsel defended Monsanto's deposition of Plaintiff Blitz on July 17, 2018.

On April 6, 2018, Plaintiff Blitz moved to certify the class of Wisconsin purchasers of Roundup® Products. After extensive briefing—which included expert reports filed on behalf of both Plaintiff Blitz and Monsanto, a hearing, and supplemental briefing—the court denied class certification on January 2, 2019, on the sole ground that, based on individualized issues of reliance, the WDTPA did not allow for class actions. *See Blitz v. Monsanto Co.*, No. 17-cv-473, 2019 U.S. Dist. LEXIS 498, at *17 (W.D. Wis. Jan. 2, 2019). Plaintiff Blitz filed a petition for interlocutory appeal to the United States Court of Appeals for the Seventh Circuit, which was denied on February 4, 2019. Plaintiff Blitz then opted to continue his action on an individual basis, and to continue to seek relief, including a declaration that Monsanto's marketing practices violate the WDTPA. The Wisconsin district court accepted the parties' joint proposal to schedule the close of discovery for September 23, 2019; the deadline for dispositive motions and responses thereto for September 30 and October 30, 2019; and the trial date for March 30, 2020.

**B.    The Instant Class Action**

On February 13, 2019, the Class Plaintiffs filed this suit against Monsanto,[6] on behalf of a putative nationwide class and Missouri, New York, and California sub-classes. Like the Related Actions, this class action alleges that, contrary to the Challenged Statement, glyphosate—the active ingredient in Roundup® Products—***does*** target an enzyme found in people and pets. The

---

[6] Like the *Blitz* Plaintiff, the Class Plaintiffs initially named Scotts Miracle-Gro Products, Inc. as a defendant. Plaintiffs voluntarily dismissed their claims against this entity on March 7, 2019. (Dkt. No. 9.)

Complaint alleges violations of the Missouri Merchandising Practices Act ("MMPA"), New York GBL § 349, New York GBL § 350, California's CLRA, California's False Advertising Law ("FAL"), and California's Unfair Competition Law ("UCL"), as well as breach of express warranty and unjust enrichment. Plaintiffs demand damages, along with declaratory and equitable relief. (Compl., Dkt. No. 1.)

On April 1, 2019, Monsanto moved to dismiss Plaintiffs' Complaint, presenting arguments targeting nearly every aspect of the Complaint. On June 13, 2019, following extensive briefing, the Court denied Monsanto's motion to dismiss. (June 13 Order Denying Motion to Dismiss, Dkt. No. 41 ("June 13 Order").)

While Monsanto's motion to dismiss was pending, the parties began discovery in this matter. On or about April 23 and 24, 2019, the parties exchanged initial disclosures. The parties negotiated and filed, on May 7, 2019, a Joint Proposed Scheduling Order and Discovery Plan. (Dkt. No. 28.) The Proposed Discovery Plan estimated that trial in this matter would range from five to 15, or more, days and requested a February 1, 2021 trial date. This Court entered a Scheduling and Trial Order the following day, under which Plaintiffs' class certification expert report was due October 14, 2019; Defendant's class certification expert report was due December 16, 2019; Plaintiffs' merit expert report would be due June 15, 2020; Defendant's merit expert report would be due August 10, 2020; and all discovery would be complete by August 31, 2020. Consistent with that schedule, Class Counsel served Plaintiffs' First Set of Requests for Admissions on August 9, 2019. That same day, Class Counsel sent Monsanto a notice of deposition pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. Since then, discovery for this case has been paused in light of settlement discussions, with the exception of confirmatory

discovery necessary to ensure the fairness and appropriateness of class settlement.[7]

## C. Mediation

Shortly after the Court denied Monsanto's motion to dismiss, on June 24, 2019, the parties notified this Court that, pursuant to the Court's mandatory Mediation and Assessment Program, they had jointly designated Professor Eric D. Green of Resolutions, LLC, an experienced mediator, to conduct private mediation. Over the summer, Plaintiffs and Defendant Monsanto separately assembled lengthy mediation statements with exhibits, including reference to the evidence developed through the coordinated multi-case discovery process. Richman Decl. ¶ 5.

Each side provided its mediation materials to Professor Green, and also sent an abridged mediation packet to the other side, protected by Federal Rule of Evidence 408, setting forth its (1) view of most important facts and evidence; (2) theory of the claims and case going forward; and (3) asserted range of damages and calculations therefor. Richman Decl. ¶ 10.

As part of the mediation efforts, Counsel for Monsanto commissioned a survey that it contends was designed to replicate the conjoint methodology offered by the *Blitz* Plaintiff's damages expert. Monsanto intended this survey to assess what a rigorous damages analysis would show, assuming *arguendo* that Class Plaintiffs could certify the nationwide class and measure damages on a class-wide basis (which Monsanto did not concede during settlement negotiations). Monsanto's expert, Dr. Kristina Shampanier, designed a choice-based "conjoint" survey of potential and actual customers of herbicides to assess the potential price premium associated with the Challenged Statement. Declaration of Dr. Kristina Shampanier ("Analysis Group Decl.") ¶¶ 4-5]. Respondents were shown images of products with and without the Challenged Statement and other advertising claims under circumstances

---

[7] On November 14, 2019, Plaintiffs served requests for production upon Monsanto, seeking documents confirming state-by-state sales of the products and demographic information on putative class members. Richman Decl. ¶ 14. Monsanto produced responsive documents on December 20, 2019 and February 10, 2020.

designed to replicate a real-world shopping experience. *Id.* ¶¶ 9-10. Dr. Shampanier concluded that there was *no* statistically significant price difference between a Roundup® Product with the Challenged Statement and one without the Challenged Statement. The survey did find that, on average, a Roundup® Product that does not contain the Challenged Statement would be priced 2.5% lower than one with the Challenged Statement, but this result was not statistically significant. *Id.* ¶ 12. In other words, the survey concluded that, even if statistical significance were not required, the maximum potential damages would be equal to just 2.5% of consumers' purchase price.

Class Plaintiffs, in order to guide negotiations during mediation, commissioned a marketing survey designed to assess respondents' views of falsity and to estimate how much less, if any, respondents would expect to pay for Roundup® Products if told that the Challenged Statement was false. This marketing survey was not intended to replicate the detailed methodology proposed for the assessment of damages in *Blitz*, but to provide a measure and range of potential recovery in order to inform Class Plaintiffs in their negotiations. This survey, conducted by Dr. Thomas Maronick, DBA, JD, resulted in an estimated range of 7.9% to 15.9% value on the Challenged Statement. Richman Decl. ¶ 7.

An all-day mediation took place August 14, 2019 in New York. Class Plaintiffs were represented at the mediation by Kim E. Richman, P. Renée Wicklund, and Clark Binkley of Richman Law Group, and by Michael L. Baum of Baum Hedlund Aristei Goldman, P.C. Defendant Monsanto was represented by John J. Rosenthal and Jeff Wilkerson of Winston & Strawn, Robyn Buck of Bayer USA (Defendant Monsanto's parent company), and Scott Partridge of Bayer AG. Professor Green, as mediator, was assisted by Michael S. Robertson, also of Resolutions, LLC. Declaration of Eric D. Green ("Green Decl.") ¶ 8. Following multiple rounds of shuttle diplomacy, as well as face-to-face negotiations among counsel, which closed a

significant gap in settlement-value expectations, the parties agreed to a settlement in principle. Richman Decl.¶ 12; Green Decl. ¶ 9. Since the mediation, the parties have further refined that agreement in principle to arrive at the proposed settlement as presented to the Court for approval. Richman Decl. ¶ 13.

## II.    The Settlement's Terms

The Settlement is entered on behalf of all persons in the United States, who during the Class Period[8] purchased in the United States, for personal or household use and not for resale or distribution, Roundup® Products in packaging whose label contained the statement "targets an enzyme found in plants but not in people or pets" or a substantially similar statement. (Settlement Agreement, Ex. A (listing all varieties of Products with Challenged Statement).) Any person who previously received a full refund is excluded from the Class definition. (*Id*. ¶ 11.)

### A.    The Settlement's Benefits for the Class

#### 1.    Monetary Relief: $39.55 Million Non-Reversionary Common Fund

Monsanto will place into a Qualified Settlement Fund $39,550,000 to cover all expenses associated with the Settlement (the "Common Fund"). (*Id*. ¶ 18.) The Common Fund will be used to pay Class Member Claims, Class Notice costs, Claims Administration Expenses, Class Representative Incentive awards, and Class Counsel's Fees. (*Id.* ¶ E.2.). Interest on the fund will inure to the benefit of the Class. (*Id.*)

##### a.    Class Notice and Administration Costs

The parties have agreed, and seek the Court's approval, to hire Postlethwaite & Netterville ("P&N") as the Claims Administrator. (*Id.* ¶ H.) P&N will design the Notice Plan to reach at least

---

[8] The "Class Period" refers to the applicable statute of limitations for false advertising or breach of warranty claims (whichever is longer) in the state where each Claimant is domiciled, triggered by the date the Complaint was filed in *Jones*, February 13, 2019. (See Settlement Agreement ¶ 15 & Ex. B.)

9

Case 4:19-cv-00102-BP   Document 50   Filed 03/23/20   Page 14 of 34

80% of the Class at a 2.28x frequency and estimates that notice and administration expenses will range from $760,000 to $1.3 million. (Declaration of Brandon Schwartz ("Schwartz Decl.") ¶ 32) Notice will include nationwide print and digital publication. (*Id*. ¶ 12.)

### b. Incentive Awards and Attorneys' Fees and Costs

Class Counsel and Class Representatives will apply for an order awarding attorneys' fees and costs, and incentive payments, to be paid from the Common Fund. Monsanto will not contest a request for Class Counsel's Fees that does not exceed 25% of the full amount available to the class, or reasonable incentive payments for the Class Representatives.

The Parties recognize that Class Counsel's Fees reflect the novel and complex nature of this matter, including the untested legal theory, as well as the risk assumed by Class Counsel in investing months of labor into gaining relief for the Class without guarantee of return. The Parties recognize also that litigation pursued in the *Blitz* Action contributed significantly to bringing about the mediation in this matter and this Agreement and agree that Class Counsel's Fees shall reflect work performed in the *Blitz* Action as well as in this Action.

### c. Payment of Class Members' Claims

Class members will be able to claim refunds by submitting a Claim Form that includes (i) contact information; (ii) identification of the quantity and type of Product(s) that were purchased; (iii) proof of purchase or a declaration under penalty of perjury of the identity and quantity of products purchased; (iv) the retail location (city and state) of the purchase(s); and (v) the approximate date of the purchase(s). (Settlement Agreement ¶¶ J.2 & J.4.)

If the Common Fund is sufficient to allow payments as set forth above, considering the number of claims made, for each unit of the Roundup® Product purchased during the Class Period, Claimants will receive a standardized payment of 10% the weighted average retail price (after rounding). The weighted average retail price per unit and the payment per unit are set forth below:

10

| Roundup® Product | Weighted Average Retail Price | Payment Per Unit |
|---|---|---|
| 24 oz. Roundup® Ready-to-Use Weed and Grass Killer | $5.01 | $0.50 |
| 30 oz. Roundup® Ready-to-Use Weed and Grass Killer | $3.73 | $0.37 |
| 0.5 gal. Roundup® Ready-to-Use Weed and Grass Killer | $5.29 | $0.53 |
| 1 gal. Roundup® Ready-to-Use Weed and Grass Killer (all non-refill varieties) | $10.17 | $1.02 |
| 1 gal. Roundup® Ready-to-Use Weed and Grass Killer Refill | $5.78 | $0.58 |
| 1.1 gal. Roundup® Ready-to-Use Weed and Grass Killer | $15.96 | $1.60 |
| 1.25 gal. Roundup® Ready-to-Use Weed and Grass Killer Refill | $12.15 | $1.22 |
| 1.33 gal. Roundup® Ready-to-Use Weed and Grass Killer | $18.78 | $1.88 |

| | | |
|---|---|---|
| 16 oz. Roundup® Weed and Grass Killer Concentrate Plus | $13.24 | $1.32 |
| 32 oz. Roundup® Weed and Grass Killer Concentrate Plus | $19.54 | $1.95 |
| 35.2 oz. Roundup® Weed and Grass Killer Concentrate Plus | $20.54 | $2.05 |
| 36.8 oz. Roundup® Weed and Grass Killer Concentrate Plus | $18.38 | $1.84 |
| 40 oz. Roundup® Weed and Grass Killer Concentrate Plus | $18.83 | $1.88 |
| 64 oz. Roundup® Weed and Grass Killer Concentrate Plus | $38.52 | $3.85 |
| 80 oz. Roundup® Weed and Grass Killer Concentrate Plus | $46.34 | $4.63 |
| 3-pack 6 oz. Roundup® Weed and Grass Killer Concentrate Plus | $19.51 | $1.95 |

| | | |
|---|---|---|
| 32 oz. Roundup® Weed and Grass Killer Super Concentrate | $22.44 | $2.24 |
| 35.2 oz. Roundup® Weed and Grass Killer Super Concentrate | $43.03 | $4.30 |
| 0.42 gal. Roundup® Weed and Grass Killer Super Concentrate | $46.73 | $4.67 |
| 0.5 gal. Roundup® Weed and Grass Killer Super Concentrate | $74.15 | $7.42 |
| 1 gal. Roundup® Weed and Grass Killer Super Concentrate | $106.29 | $10.63 |
| Combination Pack - 1 gal. Roundup® Ready-to-Use Weed and Grass Killer with 22 oz. Roundup® Weed & Grass Killer Sure Shot Foam Spray | $10.36 | $1.04 |
| Combination Pack - 1.33 gal. Roundup® Ready-to-Use Weed and Grass Killer Plus with Pump 'N Go Sprayer and two 6.5 oz. Roundup® Weed and Grass Killer Super Concentrate | $39.53 | $3.95 |
| Combination Pack – 1.33 gal. Roundup® Ready-to-Use Weed and Grass Killer and two 7 oz. Roundup® Weed and Grass Killer Concentrate Plus | $36.84 | $3.68 |

13

(*Id*. ¶ F.1.) If the Common Fund is sufficient to allow all payments according to this formula for claims submitted, then any remaining funds will be exhausted through a *cy pres* distribution to a charitable and tax-exempt organization, or organizations, to be mutually determined by the Parties. (*Id*. ¶ M.) In the event that requests for payment per unit (as set forth herein) are made in excess of the amounts available in the Common Fund after deducting all other expenses, then the payment per Claimant shall be reduced on a pro-rata basis.

### d. Labeling Changes

Monsanto will remove the representation that glyphosate "targets an enzyme found in plants but not in people or pets" on the label of the Roundup® Products, in favor of a statement to be selected by Monsanto akin to "Glyphosate works by targeting an enzyme that is essential for plant growth." (*Id*. ¶ D.1.) The final statement is subject to Monsanto's discretion and to approval by the Environmental Protection Agency. (*Id*.)

After the label change, Monsanto will have a reasonable period of time to exhaust existing inventories and to remove products with the current label representation that glyphosate "targets an enzyme found in plants but not in people or pets" from the marketplace. Any Products sold from Monsanto's inventory with the representation that glyphosate "targets an enzyme found in plants but not in people or pets" on the label, through the date Notice is first effected, are included in the Full Release described in the Agreement, and any consumer who purchases such products during the inventory removal period and prior to the date Notice is first effected shall be entitled to make a claim under the structure set forth therein. (*Id*. ¶ D.2)

### B. The Settlement's Class Release

Class Members who do not submit a claim and do not opt out (*i.e.*, who take no action) will fully release Monsanto and related entities from all claims arising out of or relating to the

14

Challenged Statement, including all variations of the statement at issue in the Action, or from any allegedly false or misleading statement or omission regarding the alleged impact of the Roundup® Products or glyphosate on bacteria or other microorganisms, as more fully specified in the Agreement. (*Id*. ¶ J.9.)

### C. Procedures for Opting Out or Objecting

Class Members who wish to opt out must download from the Settlement Website, and submit by the deadline, an Opt-Out Form. (*Id*. ¶ K.) Class Members who wish to object must file and serve a written objection by the deadline. (*Id*. ¶ L.1.)

## ARGUMENT

A class action can be settled only with court approval. *See* Fed. R. Civ. P. 23(e). If a settlement-only class would "bind class members," a court may preliminarily approve the settlement if the parties "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class" and the court finds that it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(3)(1); *see also, e.g.*, *Schumacher v. SC Data Ctr., Inc.*, No. 2:16-cv-04078-NKL, 2017 U.S. Dist. LEXIS 216359, at **1-2 (W.D. Mo. Apr. 24, 2017) (Laughrey, J.); W. Rubenstein, *Newberg on Class Actions* § 13:10 (5th ed. 2011).

## I. The Nationwide Settlement Class Should Be Certified.

 "In the context of Rule 23(e), this Court may, upon request of the parties, certify a class solely for purposes of settlement after making a determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." *Simmons v. Enter. Holdings, Inc.*, No. 4:10CV00625, 2012 LEXIS 29366, at *6 (E.D. Mo. Mar. 6, 2012) (quotation omitted). In this context, "the goal of preliminary approval is for a court to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of

15

the settlement's fairness. Accordingly, the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval phase." W. Rubenstein, *Newberg on Class Actions* § 13:13 (5th ed. 2011).

### A. The Numerosity Requirement of Rule 23(a)(1) Is Satisfied.

The Settlement covers approximately 88,925,680 units, representing about $1.49 billion in retail sales. (Richman Decl. ¶ 15.) This satisfies the Rule 23(a)(1) numerosity requirement. *See Cooper v. Integrity Home Care, Inc.*, No. 4:16-CV-1293-DGK, 2018 U.S. Dist. LEXIS 119748, at *13 (W.D. Mo. July 18, 2018) (Kays, J.) ("The class size—approximately 775—meets the numerosity requirement.").

### B. The Commonality Requirement of Rule 23(a)(2) Is Satisfied.

"[C]ommonality requires that the class members' claims depend upon a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[A] single common question 'will do' for purposes of Rule 23(a)(2)." *Brown v. Precythe*, No. 2:17-cv-04082-NKL, 2018 U.S. Dist. LEXIS 105534, at *17 (W.D. Mo. June 25, 2018) (Laughrey, J.) (quoting *Ebert v. General Mills, Inc.*, 823 F.3d 472, 478 (8th Cir. 2016)). Commonality is satisfied where "the class members' claims derive from a common nucleus of operative facts." *Hopkins v. Kan. Teachers Cmty. Credit Union*, 265 F.R.D. 483, 487 (W.D. Mo. 2010) (Fenner, J.) (quotation omitted). "Commonality is easily satisfied in most cases." *Brown*, 2018 U.S. Dist. LEXIS 105534, at *17. Here, all Class Members' claims arise from Monsanto's alleged misleading advertising of its Roundup® products as "target[ing] an enzyme found in plants but not in people or pets." Thus, "[c]ommonality is satisfied here because Plaintiffs' claims present common questions of law and fact regarding [Defendant's] . . . practices." *Id.* at *18.

16

**C.    The Typicality Requirement of Rule 23(a)(2) Is Satisfied.**

"Typicality requires the plaintiff to show 'the claims or defenses of the representative parties are typical of the claims or defenses of the class'[.]" Fed. R. Civ. P. 23(a)(3). The class representatives "need not share identical interests with every class member, but only 'common objectives and legal and factual positions'." *Claxton v. Kum & Go, L.C.*, No. 6:14-cv-03385-MDH, 2015 U.S. Dist. LEXIS 75605, at *9 (W.D. Mo. June 11, 2015) (Harpool, J.). . The "requirement is 'fairly easily met' and it is considered satisfied where 'the claims or defenses of the representatives and the members of the class . . . are based on the same legal or remedial theory'." *Id.* at *9 (quotation omitted). Here, the "proposed Settlement Class members were allegedly subjected to the same misleading and deceptive conduct when they purchased the Roundup [products], and allegedly suffered economic injury because the Roundup [products] at issue are misrepresented in the same manner." *Rawa v. Monsanto Co*., Nos. 4:17CV01252 & 4:17CV02300, 2018 U.S. Dist. LEXIS 88401, at *17 (E.D. Mo. May 25, 2018) (granting preliminary approval). "Plaintiffs' claims and the claims of the Proposed Class thus arise from the same course of conduct and give rise to the same legal or remedial theory," satisfying the typicality requirement. *Brown*, 2018 U.S. Dist. LEXIS 105534, at **22-23.

**D.    The Adequacy Requirement of Rule 23(a)(4) Is Satisfied.**

"Rule 23(a)(4) requires that the class representative and class counsel 'fairly and adequately protect the interests of the class.' The adequacy requirement is met where: '(1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously; and (2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge'." *Brown*, 2018 U.S. Dist. LEXIS 105534, at *23 (internal citation omitted). This requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). In this case, the very limited legal issues "are the same for every potential plaintiff, so the Plaintiffs' interests are

17

substantively identical to those of the other potential class members." *Brown*, 2018 U.S. Dist. LEXIS 105534, at *24 (citing *Wal-Mart*, 564 U.S. at 349 n.5, for proposition that requirements of typicality and adequacy "tend to merge"). As purchasers of the Roundup® Products who saw the Challenged Statement, Class Plaintiffs have standing, and they have no conflict of interest with other class members. (Richman Decl. ¶¶ 17-18.) Moreover, they are aware of their obligations as class representatives; they have been prosecuting, and will continue to prosecute, the action vigorously on behalf of the Class. (*Id.*)

Class Counsel are adequately representing the Proposed Class Members. Plaintiffs' lead counsel have extensive experience with complex litigation, including in class action litigation and the issues involved with class notice, class administration, and other relevant issues. (Richman Decl. ¶ 19.) Moreover, Plaintiffs' lead counsel have significant subject-matter expertise in consumer protection litigation concerning glyphosate, the subject of the Challenged Statement. (*Id.* ¶ 21.) Class Counsel have engaged in extensive discovery, including expert discovery, have compiled and reviewed thousands of pages of documents, and have successfully defended challenges to Plaintiffs' claims in multiple courts. Because Class Counsel are equipped to represent Plaintiffs, and have been doing so vigorously, and because there are no conflicts between Plaintiffs and the proposed class, the adequacy requirement is satisfied.

### E.     Common Questions of Law or Fact Predominate.

"At the core of Rule 23(b)(3)'s predominance requirement is the issue of whether the defendant's liability to all plaintiffs may be established with common evidence." *Komoroski*, 2017 U.S. Dist. LEXIS 119292, at **17-18 (quoting *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1029 (8th Cir. 2010)). "If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Id.* (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)). Here, the "proposed Settlement Class members were allegedly subjected

18

to the same misleading and deceptive conduct when they purchased the Roundup [Products], and allegedly suffered economic injury because the Roundup [Products] at issue are misrepresented in the same manner." *Rawa*, 2018 U.S. Dist. LEXIS 88401, at *17 (holding that "questions of law or fact common to the Settlement Class members predominate over any questions affecting only individual Settlement Class members" in case concerning different aspect of Roundup® labels). Questions of law and fact common to the proposed Settlement Class include whether a reasonable consumer would read the Challenged Statement, whether the Challenged Statement is false or misleading, and the proper amount of damages. *See id*. Although the specific extent of damages for each individual class member involves individual questions (*e.g.*, the amount of the Products purchased), "those questions do not overwhelm questions common to the class, especially in light of the proposed terms of settlement that easily account for such individual questions." *Claxton*, 2015 U.S. Dist. LEXIS 75605, at *13; *see infra* at Argument, I.B. Finally, for purposes of certifying the Settlement Class, Monsanto does not contest predominance. (Settlement Agreement ¶ B.2.)

### F.     A Class Action Is the Superior Method for Adjudicating This Controversy

"In determining whether a class action is a superior method of adjudication, courts consider the four factors stated in Rule 23(b)(3)—(1) the class members' interest in individual control of case prosecution or defense; (2) the extent and nature of any litigation a class member may have already begun; (3) the desirability, or lack thereof, of concentrating the litigation of the claims in this forum; and (4) the potential difficulties in managing the class action." *Claxton*, 2015 U.S. Dist. LEXIS 75605, at **13-14 (internal citation omitted). "When confronted with a settlement-only class, however, a district court need not inquire whether the case, if tried, would present intractable management problems." *Id*. at *14. (internal citation omitted).

In this case "class treatment is superior to other options for resolution of the controversy because the relief sought for each proposed Settlement Class member is small, such that, absent

19

representative litigation, it would be infeasible for members to redress the wrongs done to them." *Rawa*, 2018 U.S. Dist. LEXIS 88401, at \*\*17-18. For the same reason, class members have "little incentive to individually control the prosecution." *Claxton*, 2015 U.S. Dist. LEXIS 75605, at \*14.[9] Moreover, it is desirable to concentrate litigation in this forum, *see* Fed. R. Civ. P. 23(b)(3)(C), because Monsanto's principal place of business is in this State, and a substantial part of the events giving rise to the claims occurred in this State. *See Simmons*, 2012 LEXIS 29366, at \*8. Additionally, this Court now has substantial familiarity with the claims and defenses. Thus, the superiority requirement is satisfied. *See Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 208 (W.D. Mo. 2017) (Smith, J.) (finding superiority satisfied where "the settlement provides concrete, substantial remedies to individuals" and "avoids duplicative litigation").

## II. The Settlement Should Be Preliminarily Approved

"When a proposed class-wide settlement is reached, it must be submitted to the court for preliminary approval." *Komoroski*, 2017 U.S. Dist. LEXIS 119292, at \*2 (citation omitted). A court should grant preliminary approval where the parties show "that the court will likely be able to . . . approve the proposal under Rule 23(e)(2)" and certify the class for purposes of settlement. Fed. R. Civ. P. 23(e)(1)(B); *Fath v. Am. Honda Motor Co.*, No. 18-1549, 2019 U.S. Dist. LEXIS 215090, at \*6 (D. Minn. Dec. 13, 2019). The ultimate issue in considering a motion for preliminary approval "is whether the proposed settlement falls within the range of fairness so that notice of the proposed settlement should be given to class members and a hearing scheduled to consider final approval." *Komoroski*, 2017 U.S. Dist. LEXIS 119292, at \*3 (citation omitted). In other words, a court must determine that it

---

[9] The other case asserting a similar claim against Monsanto is the *Blitz* Action, which has been tried by Class Counsel in coordination with Plaintiffs' claims in this action. Thomas Blitz, the plaintiff in the *Blitz* Action, brought his case as a proposed class action (*see supra*) and, following denial of class certification for reasons specific to the Wisconsin false-advertising statute, indicated an intention to continue the action on an individual basis. (*Blitz* Action, ECF. No. 134 (text only order setting trial date following denial of class certification)). Blitz has opted to resolve his own claim as a Class Member here, and to dismiss the *Blitz* Action upon the Settlement's Effective Date. (Settlement Agreement ¶ G.2.) This proposed nationwide Settlement therefore remains the superior method for resolving the Class's claims.

will likely be able to approve the proposed settlement as "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

As amended in 2018, Rule 23(e)(2) directs courts to consider four factors in determining the fairness and reasonableness of a proposed settlement, namely whether "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate"; and "(D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D); *Swinton v. SquareTrade, Inc.*, No. 4:18-CV-00144, 2019 U.S. Dist. LEXIS 25458, at *15 (D. Iowa Feb. 14, 2019). Following the 2018 amendments, courts in this Circuit have recognized that the Rule 23(e)(2) factors "were not intended to displace the various factors that courts have developed in assessing the fairness of a settlement," but rather are intended "to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Swinton*, 2019 U.S. Dist. LEXIS 25458, at *16 (quoting Advisory Committee's Notes on 2018 Amendments to Fed. R. Civ. P. 23, 324 F.R.D. 904, 918) (internal quotation marks omitted). Those factors "largely overlap[]" with factors long considered by the Eighth Circuit in determining the fairness and reasonableness of a proposed settlement. *Fath*, 2019 U.S. Dist. LEXIS 215090 at *7. Courts in the Eight Circuit have frequently considered the factors of *Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988), namely: (1) "the merits of the plaintiff's case[] weighed against the terms of the settlement," (2) "the defendant's financial condition," (3) "the complexity and expense of further litigation," and (4) "the amount of opposition to the settlement." *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (quoting *Van Horn*, 840 F.2d at 607).

Notwithstanding the various factors, "a proposed settlement is presumptively reasonable at the preliminary approval stage, and there is an accordingly heavy burden of demonstrating otherwise."

21

*Schoenbaum v. E.I. Dupont De Nemours & Co.*, No. 4:05CV01108, 2009 U.S. Dist. LEXIS 114080, at \*14 (E.D. Mo. Dec. 8, 2009). "In evaluating the settlement, the Court[] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery." *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) (quotation omitted).

A.       **Class Representatives and Class Counsel Have Adequately Represented the Class**

As described above, Class Counsel and Class Representatives have adequately represented and will continue adequately to represent the interests of the Class. *See supra* Part I.D. Class Counsel have extensive experience litigating complex consumer class actions and have successfully represented the Class in this action and the *Blitz* Action. Because all Class Members have suffered the same injury, there is no conflict between Class Representatives and the Class.

B.       **The Settlement Is the Product of Arms'-Length, Informed Negotiations**

The Settlement follows several years of litigation by Class Counsel in the related *Blitz* Action and extensive investigation, motion practice, discovery, and negotiation. To reach this outcome for purchasers of Roundup® Products, Class Counsel filed multiple complaints, defeated multiple motions to dismiss, fully briefed class certification in Wisconsin, filed a petition for interlocutory appeal of the denial of that motion, took and defended depositions, reviewed tens of thousands of pages of documents, and engaged in expert discovery. (Richman Decl. ¶ 6.) Thereafter, this proposed settlement was reached in a lengthy mediation session, preceded by FRE 408 exchanges of even more information, and assisted by a mutually selected professional mediator with years of experience in high-value litigation. (*Id.* ¶ 4.) "Courts are less likely to find collusion when a settlement agreement was preceded by a significant period of litigation or negotiations were conducted by a third-party

mediator." *Heldt v. Payday Fin., LLC*, No. 3:13-CV-03023, 2016 U.S. Dist. LEXIS 2646, at *19 (D.S.D. Jan. 8, 2016) (citation omitted).

Although Monsanto has agreed not to contest the fees sought by Class Counsel, the Settlement alleviates any potential concerns about collusion by setting a cap on the agreement not to contest, and by precluding any reversion of the Common Fund back to Monsanto. *See McClean v. Health Sys., Inc.*, No. 6:11-CV-03037-DGK, 2015 U.S. Dist. LEXIS 181040, at *17 (W.D. Mo. June 1, 2015) (Kays, J.). The non-reversionary nature of the fund—combined with the fact that the Settlement was reached after years of hard-fought litigation, and substantive preliminary victories by Plaintiffs regarding the merits of their claims—dispels any concern regarding potential collusion. *See id*. Additionally, the Settlement does not unduly favor named Plaintiffs or certain Class Members, since every Class Member who makes a claim will receive the same relative amount for purchases, and it is fair that Class Plaintiffs seek reasonable incentive awards for their service and willingness to pursue the litigation. *See Scott v. Boyd Bros. Transp.*, No. 13-00579-CV-W-BP, 2014 U.S. Dist. LEXIS 189686, at *7 (W.D. Mo. Sep. 5, 2014) (Phillips, J.) (final approval of settlement providing $7,500 incentive award).

## C.     The Relief Provided in the Settlement Is Adequate

In determining whether the relief provided is adequate, Rule 23(e)(2)(C) directs courts to take into account "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; [and] (iii) the terms of any proposed award of attorney's fees, including timing of payment."[10] "[A]t this juncture, no opposition to the Settlement Agreement has been noted," and "[i]n the event that there

---

[10] Rule 23(e)(2)(C)(iv) also directs courts to take into account "any agreement required to be identified under Rule 23(e)(3)." The parties have entered into no agreement that must be identified under Rule 23(e)(3) other than the Settlement Agreement.

are such objections, the Court [can] entertain them during the [final] fairness hearing." *Risch v. Natoli Eng'g Co.*, *LLC*, No. 4:11CV1621, 2012 U.S. Dist. LEXIS 110080, at *10 (E.D. Mo. Aug. 7, 2012). Even so, consideration of the Rule 23(e)(2)(C) factors demonstrates that the Settlement is more than adequate.

The Settlement's terms are more than adequate when weighed against the real costs, risks, and delay of trial and appeal in this matter. Although Plaintiffs believe they have a strong case on the merits—illustrated by, among other things, their success in defeating Monsanto's motions to dismiss in this and the Related Actions—Plaintiffs recognize that there are obstacles to succeeding on their claims. The denial of class certification in the *Blitz* Action is illustrative. There, the court held that, in the context of Wisconsin's consumer-protection statute, individualized issues of causation and reliance predominated over class-wide issues. *See Blitz v. Monsanto Co.*, No. 17-cv-473, 2019 U.S. Dist. LEXIS 498, at *14 (W.D. Wisc. Jan. 2, 2019) ("Plaintiff's proposed class falters under this test because individual questions of material inducement overwhelm the questions common to the class, at least as Wisconsin law currently stands."). Plaintiffs could potentially face similar hurdles in certifying a nationwide class here.

Plaintiffs also recognize that they face potential hurdles in succeeding on the merits. The EPA previously approved product labels that included the Challenged Statement, and Monsanto has argued throughout the course of the litigation that the Challenged Statement is an accurate description of the way glyphosate works and is not false and misleading.

The parties also dispute damages. Monsanto asserts, based on its commissioned expert report and other evidence, that the Challenged Statement has no statistically significant impact on price. Even setting aside statistical significance, Monsanto's expert's analysis suggests that Plaintiffs' best-case damages after trial would be only 2.5% of the purchase price. (Analysis Group Decl. ¶ 12.) Based on

their survey commissioned for purposes of mediation, Plaintiffs believe the best-case damages after a victory at trial would fall between 7.9% and 15.9% of the purchase price. (Richman Decl. ¶ 8.) The proposed settlement provides for recovery of 10% of the weighted average retail price. Continued litigation would necessarily mean additional expenditure and uncertainty in resolving the proper measure of damages, including the risk that Monsanto's damages estimate would prevail—resulting in a far smaller recovery (if any) than that provided for in the proposed settlement.

Moreover, continuing to litigate this matter would be extremely complex and expensive. "Class actions, in general, place an enormous burden of costs and expense upon parties." *Keil v. Lopez*, 862 F.3d 685, 698 (8th Cir. 2017) (internal citation omitted). Monsanto "has alleged numerous legal and factual defenses that, absent settlement, will require full discovery, including numerous depositions, briefing, and additional pre-trial work"; moreover, "[c]lass certification, expert discovery, and summary judgment motions are just a few of the matters that would ensue, in addition to a trial and possible appeals," all of which may result in "thousands more hours of attorney time." *Id.* Class Counsel's view that this factor favors settlement (Richman Decl. ¶ 9) is "entitled to deference," especially in light of their "significant experience in class actions and complex litigation." *Keil*, 862 F.3d at 697 (citing *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995)).

In light of these substantial risks, the $39.55 million settlement fund represents a favorable recovery for the class—according to Monsanto's expert's damages model, *more* than the class could have recovered even with a complete victory. Such recovery falls between the damages ranges estimated by Monsanto's and Plaintiffs' competing estimates and is well within the range of recoveries permitted by courts in this Circuit. *See, e.g.*, *Keil*, 862 F.3d at 696 (approving "settlement fund represent[ing] 27 percent of the maximum possible full verdict at trial" in light of "substantial risks as to whether class counsel could successfully certify and maintain a class, let alone prevail at trial and

25

recover the full measure of damages they sought"); *Huyer v. Wells Fargo & Co.*, 314 F.R.D. 621, 628 (S.D. Iowa 2016) (approving $25,750,000 class action settlement when class counsel posited best-case-scenario damages of more than $100,000,000), *aff'd sub. nom. Huyer v. Njema*, 847 F.3d 934, 939-40 (8th Cir. 2017); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 708-09 (E.D. Mo. 2002) (finding recovery of 3.7% of best-case damages estimate to be fair and adequate, recognizing that "a settlement is a product of compromise and the fact that a settlement provides only a portion of the potential recovery does not make such settlement unfair, unreasonable or inadequate").

In addition to the monetary value of the relief to the Class, Defendant Monsanto will remove the Challenged Statement from all Roundup® Product labels. This represents a significant benefit, extending to Class Members who do not ultimately file claims, as well as to members of the general public who may purchase Roundup® Products in the future. *See, e.g.*, *Keil*, 862 F.3d at 697 ("[E]ven if 97 percent of the class did not exercise their right to share in the fund . . . assuming that these class members continue to purchase pet food, they will benefit from the additional injunctive relief that the settlement provides."); *Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 84 (1st Cir. 2015) ("The district court did not abuse its discretion in concluding that injunctive relief against continuation of the allegedly false advertising was 'a valuable contribution to this settlement agreement'."). Moreover, this injunctive relief goes beyond what was available even under the best-case scenario of continued litigation. Due to concerns over federal preemption and Monsanto's early victories on the issue in *Mirzaie* and *Carias*, Plaintiffs did not request a court-ordered label change. *See* June 13 Order, Dkt. No. 41, at 14-18. Thus, by securing Monsanto's voluntary and binding agreement to undertake the removal of the Challenged Statement from the label, this Settlement has procured a benefit for the Class that could not otherwise have been achieved, and which reflects the novel nature of this case.

26

Finally, the relief provided in the Settlement is adequate in light of the proposed method of processing Class Members' claims and distributing relief to the Class, and in light of Class Counsel's proposed award of attorneys' fees. As described above, subject to this Court's approval, Class Members' claims will be processed by an experienced claims administrator. Checks will be distributed by mail to Claimants who submit valid claims. And there is no indication that the anticipated award of attorneys' fees is excessive in light of the Settlement. The Settlement does not contain a quick-pay provision. And, although Class Counsel intends to apply for an award of attorneys' fees in a separate motion, Class Counsel does not intend to seek attorneys' fees representing more than 25% of the Common Fund. Such an award is well within the range of permissible awards recognized by courts in this Circuit. *See, e.g.*, *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 862, 865-66 (8th Cir. 2017) (upholding $20 million fee based on $60 million common fund). Any award of attorneys' fees will reflect the novel and complex nature of this matter, including the untested legal theory, as well as the risk assumed by Class Counsel in investing years of labor, here and in the *Blitz* matter, into gaining relief for the Class without guarantee of return.

### D. The Settlement Treats Class Members Equally

The Settlement treats class members equitably relative to each other. Although "[t]here is no requirement that all class members in a settlement be treated *equally*," *Swinton*, 2019 U.S. Dist. LEXIS 25458, at *27 (citing *Marshall v. Nat'l Football League*, 787 F.3d 502, 510 (8th Cir. 2015)), that is essentially what the Settlement provides. Specifically, each Class Member who submits a valid claim will receive 10% of the average retail price of the particular product or products he or she purchased. There is thus no argument that class members are treated inequitably relative to each other.

27

## E. Defendant's Financial Condition Favors Approval of the Settlement.

Finally, courts in the Eighth Circuit frequently consider a defendant's financial condition in determining whether approval of a class settlement is appropriate. *See In re Uponor*, 716 F.3d at 1063 (enumerating the Eighth Circuit's *Van Horn* factors); *see also Swinton*, 2019 U.S. Dist. LEXIS 25458, at **16, 29 (holding that courts should "consider the Rule 23(e)(2) factors along with the factors developed by courts in the Eighth Circuit" and including defendant's financial condition in analyzing settlement). Given Monsanto's size and recent acquisition by prominent multi-national corporation Bayer AG, there is "no indication that Defendant[] will be unable to pay, or incur undue hardship as a result of the settlement." *Simmons*, 2012 LEXIS 29366, at *10. And while Monsanto's "good financial standing . . . would permit it to adequately pay for its settlement obligations," Monsanto could just as easily use the Settlement funds to "continue with a spirited defense." *Marshall*, 787 F.3d at 512.

## III. The Notice and Notice Plan Should Be Approved

The Notice Plan (*see generally* Schwartz Decl. ¶¶ 5-32) is the best notice practicable, *see* Fed. R. Civ. P. 23(c)(2)(B), because it was designed to target Class Members and reach at least 80% of them 2.28 times each. The proposed Notice is proper because it contains "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977).

<u>CONCLUSION</u>

With the consent of Defendant Monsanto, Plaintiffs respectfully request the Court to issue an Order, substantially in the form of the Proposed Order submitted herewith, (1) preliminarily certifying the Settlement Class and appointing the named Plaintiffs and their counsel as Class Representatives and Class Counsel; (2) preliminarily approving the proposed Settlement; (3) approving the Class Notice and Notice Plan, and directing that Class Notice be disseminated pursuant to the Notice Plan;

28

and (4) setting a fairness hearing and other necessary dates in connection with Final Approval of the Settlement.

Dated: March 23, 2020         Respectfully Submitted,

**RICHMAN LAW GROUP**
Kim E. Richman (*pro hac vice forthcoming*)
Clark A. Binkley (*pro hac vice forthcoming*)
8 West 126th St.
New York, NY 10027
T: 718-705-4579
F: 212-687-8292
krichman@richmanlawgroup.com
cbinkley@richmanlawgroup.com

**BELL LAW, LLC**
Bryce B. Bell (MO#66841)
Mark W. Schmitz (MO#69329)
2600 Grand Blvd., Suite 580
Kansas City, MO 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com

**BAUM, HEDLUND, ARISTEI &
GOLDMAN, P.C.**
Michael L. Baum (*pro hac vice forthcoming*)
R. Brent Wisner (*pro hac vice forthcoming*)
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
T: (310) 207-3233
mbaum@baumhedlund.com
bwisner@baumhedlund.com


***Attorneys for Plaintiffs and the Class***