**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| LISA JONES, *et al*., | Case No. 19-0102-CV-W-BP |
| Plaintiffs, | Hon. Beth Phillips |
| v. | |
| MONSANTO COMPANY, | |
| Defendant. | |

**DECLARATION OF KIM E. RICHMAN IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, Kim E. Richman, hereby declare:

1.      I am the founding and managing Member of Richman Law Group, and one of the attorneys designated as Class Counsel in this action. All the facts stated herein are based on my personal knowledge and, if called as a witness, I could and would testify competently to the matters set forth herein.

2.      Lisa Jones, Horacio Torres Bonilla, and Kristoffer Yee (collectively, "Plaintiffs") and Monsanto Company ("Monsanto") have reached agreement on the terms of a settlement to resolve this case, which are contained in the Proposed Class Action Settlement Agreement attached hereto as **Exhibit 1**. I respectfully submit this Declaration in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (the "Settlement").

3.      Plaintiffs filed this action against Monsanto, on behalf of a putative nationwide class and Missouri, New York, and California sub-classes, on February 13, 2019. In the action, Plaintiffs allege that Monsanto advertised its Roundup® Weed & Grass Killer products ("Roundup Products") with a misleading label representation, namely, that Roundup Products' active ingredient, glyphosate, targets an enzyme found in plants but not in people or pets (the "Challenged Statement").

4.      Shortly after the Court denied Monsanto's motion to dismiss this action on June 24, 2019, the parties notified the Court that, pursuant to the Court's mandatory Mediation and Assessment Program, they had jointly designated Professor Eric D. Green of Resolutions, LLC, an experienced mediator, to conduct private mediation.

5.      Over the summer of 2019, Plaintiffs and Monsanto separately assembled lengthy mediation statements and exhibits, including reference to the evidence developed through discovery in *Blitz v. Monsanto Co.*, No. 3:17-cv-00473 (W.D. Wis. June 20, 2017), which the parties had agreed would apply to this action.

6.      In the *Blitz* action, Monsanto produced tens of thousands of documents, which Class Counsel reviewed in full. Monsanto took the deposition of Plaintiff Blitz's expert on class-wide damages, University of Chicago Booth School of Business Professor Jean-Pierre Dubé; Class Counsel took the deposition of Monsanto's rebuttal damages expert Dr. Peter Rossi and of Monsanto's survey expert Sarah Butler; and Class Counsel defended Monsanto's deposition of Plaintiff Blitz.

7.      Plaintiffs, in order to guide negotiations during mediation, commissioned a marketing survey designed to assess respondents' views of falsity, which also asked respondents to estimate how much less, if any, they would expect to pay for the products if told that the statement at issue was false. This marketing survey was not intended to replicate the detailed methodology proposed for the assessment of class damages by Professor Dubé in *Blitz*, but to provide a measure and range of potential recovery in order to inform Plaintiffs in their negotiations. This survey, conducted by Dr. Thomas Maronick, DBA, JD, resulted in an estimated range of 7.9% to 15.9% value on the statement at issue.

8.      Based on this survey, Class Counsel believes the best-case damages after a victory at trial in this action would fall between 7.9% and 15.9% of the purchase price of the Roundup Products.

9.      Class Counsel also believes that the considerable additional expenditure of resources that would be necessary to continue litigating this matter—which could require

thousands more hours of attorney time through discovery (including expert discovery), class certification briefing, summary judgment briefing, pre-trial preparation, trial, and potential appeals—strongly weigh in favor of approval of the Settlement.

10.     Each side provided its mediation materials to Professor Green, and also sent an abridged mediation packet to the other side, protected by Federal Rule of Evidence 408, setting forth its view of most important facts and evidence, theory of the claims and case going forward, and asserted range of damages and calculations therefor.

11.     An all-day mediation between the Parties took place August 14, 2019, in New York.

12.     Following multiple rounds of shuttle diplomacy, as well as face-to-face negotiations among counsel, which closed a significant gap in settlement-value expectations, the parties agreed to a settlement in principle.

13.     Since the mediation, the parties have further refined that agreement in principle to arrive at the proposed settlement as presented to the Court for approval.

14.     On November 14, 2019, Plaintiffs served requests for production upon Monsanto, seeking documents confirming state-by-state sales of the Roundup Products and demographic information on putative class members. Monsanto produced responsive documents on December 20, 2019 and February 10, 2020.

15.     According to these documents, the Settlement covers approximately 88,925,680 units, representing about $1.49 billion in retail sales, of the Roundup Products.

16.     The Parties now submit the Settlement to this Court for preliminary approval.

17.     Class representatives Lisa Jones, Horacio Torres Bonilla, and Kristoffer Yee purchased the Roundup Products and saw the labeling statement at issue in this case.

18.     Lisa Jones, Horacio Torres Bonilla, and Kristoffer Yee are aware of their obligations as class representatives; they have been prosecuting, and will continue to prosecute, the action vigorously on behalf of the Class.

19.     I have been litigating class actions on behalf of consumers for over a decade. My litigation experience ranges from cases involving corporate fraud and insider trading to those

protecting individuals' constitutional and consumer rights. I have been appointed by various courts to represent consumers in numerous actions.

20.     Following is a partial list of cases that I have previously litigated or am currently litigating on behalf of consumers:

i.      *Salamanca v. General Mills, Inc.*, No. 3:16-cv-04871 (N.D. Cal.); *Nuez v. General Mills, Inc.*, No. 1:16-cv-04731 (E.D.N.Y.); *Woloszyn v. General Mills, Inc.*, No. 0:16-cv-02869 (D. Minn.) (class actions alleging deceptive and false labeling of oat products);

ii.     *Stevenson v. Post Consumer Brands, LLC and Post Holdings, Inc.*, No. 1:16-cv-03396 (E.D.N.Y); *Wu v. Post Consumer Brands, LLC, and Post Holdings, Inc.*, No. 3:16-cv-03494 (N.D. Cal) (class-actions alleging deceptive and false labeling of wheat cereal products);

iii.    *Gibson v. The Quaker Oats Company*, No. 16-cv-04853 (E.D. Ill.) (class action alleging deceptive and false labeling of oat products);

iv.     *Gonzalez v. Costco Wholesale Corp.*, No. 1:16-cv-02590 (E.D.N.Y.) (class action alleging deceptive labeling in connection with laundry detergent and dish soap products);

v.      *Normand v. Nestle Purina Petcare Co.*, No. 6:15-cv-06141 (W.D.N.Y.) (class action alleging that branded dog food is linked to the poisoning and death of thousands of dogs around the country);

vi.     *Hidalgo v. Johnson & Johnson Consumer Cos.*, No. 1:15-cv-05199 (S.D.N.Y) (class action alleging deceptive labeling of baby care products);

vii.    *Segedie v. The Hain Celestial Group, Inc.*, No. 7:14-cv-05029 (S.D.N.Y.) (class action alleging that infant formula is falsely labeled "organic" because it contains ingredients that are not allowed in "organic" products under federal law);

viii.   *Paulino v. Conopco, Inc.*, No. 1:14-cv-05145 (E.D.N.Y.) (class action alleging that "Suave Naturals" products, which use imagery of "natural ingredients" to convey a supposed benefit of the product, contain harmful and synthetic chemicals in violation of New York and California consumer protection laws);

ix.     *Brenner v. Williams-Sonoma, Inc.*, No. 1:13-cv-10931 (D. Mass.) (class action alleging that defendant gathered customers' ZIP codes during credit card transactions, which it used to build databases for advertising and campaigns in violation of the Massachusetts Unfair Trade Act);

x.      *Rich v. Lowe's Home Centers, Inc.*, No. 3:13-cv-30144 (D. Mass.) (class action alleging violation of Massachusetts Unfair Trade Practices Act and unjust enrichment);

xi.     *Koehler v. Pepperidge Farm, Inc.*, No. 13-cv-02607 (D. Colo.) (class action

alleging that snack food labeled "natural" contains genetically modified organisms);

xii. *Barron v. Snyder's-Lance, Inc.*, No. 0:13-cv-62496 (S.D. Fla.) (class action alleging that snack food products labeled "natural" contain genetically modified organisms and synthetic ingredients);

xiii. *In re: Simply Orange Orange Juice Marketing & Sales Practices Litigation*, No. 4:12-md-02361 (W.D. Mo.) (class action alleging that orange juice labeled as "100% pure" and "natural" contains synthetic flavoring and is subject to a high degree of processing);

xiv. *In re: Frito Lay North America, Inc. "All Natural" Litigation*, No. 1:12-MD-02413 (E.D.N.Y.) (class action alleging that snack food products labeled as "natural" contain genetically modified organisms);

xv. *Koh v. SC Johnson & Son, Inc.*, No. 5:09-cv-00927 (N.D. Cal.) (class action that introduced the concept of "greenwashing" in violation of California adverting laws);

xvi. *L'Ottavo Ristorante v. Ingomar Packing Co.*, No. 09-CV-01427 (E.D. Cal.) (class action alleging violation of the Sherman Act);

xvii. *Hill v. Roll International Corp.*, No. CGC-09-487547 (San Francisco County Superior Court) (class action alleging violation of California consumer protection laws);

xviii. *Serrano v. Cablevision Systems Corp.*, No. 09-CV-1056 (E.D.N.Y.) (class action alleging violation of CFAA and of New York consumer protection law);

xix. *Petlack v. S.C. Johnson & Son, Inc.*, No. 08-CV-00820 (E.D. Wisconsin) (class action alleging violation of Wisconsin consumer protection law);

xx. *S.K. v. General Nutrition Corp.*, No. 08-CV-9263 (S.D.N.Y.) (class action alleging violation of New York consumer protection laws);

xxi. *Fink v. Time Warner Cable*, No. 08-CV-9628 (S.D.N.Y.) (class action alleging violation of New York consumer protection laws);

xxii. *All-Star Carts & Vehicles Inc. v. BFI Canada Income Fund*, No. 08-CV-1816 (E.D.N.Y.) (class action alleging violation of the Sherman Antitrust Act);

xxiii. *Tan v. Comcast Corp.*, No. 08-CV-02735 (E.D. Pa.) (class action alleging violation of the federal Computer Fraud and Abuse Act (CFAA));

xxiv. *Bodoin v. Impeccable L.L.C.*, No. 601801/08 (N.Y. Sup. Ct.) (individual action alleging conspiracy and fraud);

xxv. *Gaines v. Home Loan Center, Inc.*, No. 08-CV-667 DOC (C.D. Cal) (class action alleging violation of the Racketeer Influenced and Corrupt Organizations Act);

xxvi. *Chin v. RCN Corp.*, No. 08-CV-7349 RJS (S.D.N.Y.) (class action alleging

violation of Virginia consumer protection law).

21.    I have also engaged in extensive consumer protection litigation concerning glyphosate, the subject of the Challenged Statement. Following is a partial list of cases that I have previously litigated or am currently litigating on behalf of consumers, whether directly or on behalf of consumer watchdog organizations:

    i.    *Tran v. Sioux Honey Ass'n, Coop.*, No. 17-cv-110 (N.D. Cal.) (putative class action alleging that honey products labeled "pure" and "100% pure" contain glyphosate);

    ii.    *Organic Consumers Association v. Twinings North America, Inc.*, No. 2019 CA 004412 B (D.C. Super. Ct.) (consumer watchdog action concerning tea products labeled "pure" and "natural" despite testing showing residues of glyphosate and other synthetic biocides);

    iii.    *Beyond Pesticides et al. v. General Mills, Inc.*, No. 2016 CA 6309 B (D.C. Super. Ct.) (consumer watchdog action concerning granola bars marketed as "Made with 100% Natural Whole Grain Oats" despite glyphosate residues allegedly brought to the product through oats);

    iv.    *Clean Label Project Foundation, et al. v. Panera, LLC*, No. 2019 CA 001898 B (D.C. Super. Ct.) (consumer watchdog action concerning restraint selling food marketed as "100% clean" despite testing showing presence of glyphosate residues);

    v.    *GMO Free USA, et al. v. Pret A Manger*, No. 2018 CA 6750 B (D.C. Super. Ct.) (consumer watchdog action concerning restraint advertising "natural food" where testing found traces of glyphosate in several food items); and

    vi.    *Toxin Free USA v. The J.M. Smucker Co.*, No. 2019 CA 003192 B (D.C. Super. Ct.) (consumer watchdog action concerning pet food advertised as "natural" despite containing glyphosate residues and other trace chemicals harmful to pets).

22.    Attached hereto as **Exhibit 2** is a true and correct copy of the firm's resume.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 23rd day of March in New York, New York.

Kim E. Richman

# EXHIBIT 1

# CLASS ACTION SETTLEMENT AGREEMENT

This Settlement Agreement and Release (the "Agreement"), effective upon the date of the signatories below, is made by and between Monsanto Company and the Class (defined below) (collectively, the "Parties"), in the matter *Lisa Jones et al. v. Monsanto Company*, case No. 4:19-cv-00102-BP (W.D. Mo.) ("the Action").

**WHEREAS**, Class Representatives Lisa Jones, Horacio Torres Bonilla, and Kristoffer Yee commenced the Action for breach of warranty, unjust enrichment, and violations of Missouri, New York, and California laws of unfair competition and false advertising against Monsanto and Scotts Miracle-Gro Products, Inc. in the United States District Court for the Western District of Missouri on February 13, 2019;

**WHEREAS**, the Parties disagree on the merits and viability of the claims set forth in the Action's complaint, Monsanto denies any and all liability or wrongdoing, and Plaintiffs believe that all claims are viable and subject to class certification;

**WHEREAS**, the Parties have engaged in discovery but have not yet briefed class certification;

**WHEREAS**, while discovery has continued, the Parties engaged in a mediation session before Professor Eric D. Green to determine whether a settlement of the Action could be reached, and at the end of the mediation session, the Parties reached an agreement in principle;

**WHEREAS**, Plaintiffs have concluded that it is in the best interest of the Class to settle the Action on the terms set forth in this Agreement in order to avoid further expense, inconvenience, and delay, and based on other factors bearing on the merits of settlement;

**WHEREAS**, Monsanto enters into this Agreement in order to avoid further expense, inconvenience, delay, and interference with business operations, and to dispose of the Action and to put to rest all controversy concerning the claims that have been or could have been asserted;

**WHEREAS**, the Class (as defined below) and Monsanto wish to resolve, on a nationwide basis, any and all past, present, and future claims the Class has or may have against the Released Persons of any nature whatsoever, as they relate to the allegations in the Action, and to that end, the Class and Monsanto intend that the United States District Court for the Western District of Missouri conditionally certify a Class for settlement, and that this Agreement will encompass and end all related pending, threatened, or possible litigation and/or claims by any Party against the Released Persons;

**NOW, THEREFORE**, the Parties, for good and valuable consideration, the sufficiency of which is hereby acknowledged, understand and agree to the following terms and conditions:

## A. Definitions

As used in this Agreement, the following terms enclosed within quotation marks have the meanings specified below:

1. "Action" means the matter *Lisa Jones et. al v. Monsanto Company*, case No. 4:19-cv-00102-BP (W.D. Mo.).

2. "Agreement" means this Settlement Agreement and Release.

3. "Approved Claim" means a claim approved by the Claims Administrator, according to the terms of this Agreement.

4. "Authorized Claimant" means any Claimant who has timely and completely submitted a Claim Form that has been reviewed and validated by the Claims Administrator.

5. "Claim" means a request for relief submitted by or on behalf of a Class Member on a Claim Form filed with the Claims Administrator in accordance with the terms of this Agreement.

6. "Claimant" means any Class Member who submits a Claim for benefits as described in Section J of this Agreement.

7. "Claims Deadline" means the date by which all Claim Forms must be postmarked or received by the Claims Administrator to be considered timely. The Claims Deadline shall end 90 days after the Preliminary Approval Date.

8. "Claim Form" means the document to be submitted by Claimants seeking benefits pursuant to this Agreement.

9. "Claims Administrator" means the independent company agreed by the Parties and approved by the Court to provide the Class Notice and to administer the claims process.

10. "Claims Administration Expenses" means the fees charged and expenses incurred by the Claims Administrator in completing the claims administration process set forth in this Agreement.

11. "Class" or "Class Member(s)" means all Persons in the United States, who, during the Class Period, purchased in the United States, for personal or household use and not for resale or distribution, Roundup® Products in packaging with a label that contained the statement "targets an enzyme found in plants but not in people or pets" or a substantially similar statement. Any Person who received a full refund is excluded from the Class definition.

12. "Class Counsel" means the following attorneys of record in the Action:

Kim Richman
Richman Law Group
8 W. 126th Street
New York, NY 10027
Telephone: (718) 705-4579
Facsimile: (212) 687-8292
krichman@richmanlawgroup.com

Michael L. Baum
Baum, Hedlund, Aristei & Goldman, P.C.
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Telephone: (310) 207-3233
mbaum@baumhedlund.com

and any attorneys at those firms assisting in the representation of the Class in this Action.

13.     "Class Counsel's Fees" means the amount awarded as attorneys' fees to Class Counsel by the Court for prosecuting the Action and implementing this Agreement.

14.     "Class Notice" means collectively, the "Notice of Class Action Settlement" and the "Publication Notice," substantially in the forms to be agreed upon by the Parties and that will be submitted to the Court in connection with the Motion for Preliminary Approval of Settlement.

15.     "Class Period" shall mean and refer to a time period not to exceed the applicable statute of limitations for false advertising/consumer protection or breach of warranty claims (whichever is longer) in the state where each Class Member purchased the Products, triggered by the date the Complaint was filed in the Action (February 13, 2019). A full list of the applicable periods for each state, district, or territory included in this Agreement is appended hereto as Exhibit B.

16.     "Class Released Claims" means the claims released by the Class Members via this Agreement.

17.     "Class Representatives" means named plaintiffs in the Action, Lisa Jones, Horacio Torres Bonilla, and Kristoffer Yee, and any other individuals who may be added as plaintiffs to any amended pleading.

18.     "Common Fund" means the 39.55 million dollars ($39,550,000) set aside as part of the Settlement Consideration.

19.     "Court" means the United States District Court for the Western District of Missouri.

20.     "Effective Date" means the date on which the judgment approving this Agreement becomes final. For purposes of this definition, the Final Settlement Approval Order and Judgment shall become final at the latest date of the following options: (i) if no appeal from the Final Settlement Approval Order and Judgment is filed, the date of expiration of the time for filing or noticing any appeal from the Final Settlement Approval Order and Judgment; or (ii) if an appeal from the Final Settlement Approval Order and Judgment is filed, and the Final Settlement Approval Order and Judgment is affirmed or the appeal dismissed, and the deadline to file a petition for certiorari has passed, the date of such affirmance or dismissal; or (iii) if a petition for certiorari seeking review of the appellate judgment is filed and denied, the date the petition is denied; or (iv) if a petition for writ of certiorari is filed and granted, the date of final affirmance or final dismissal of the review proceeding initiated by the petition for a writ of certiorari.

21.     "Final Settlement Hearing" or "Final Approval Hearing" means the hearing to be conducted by the Court to determine whether to enter the Final Settlement Approval Order and Judgment.

22.     "Jones" means the plaintiff in the Action, Lisa Jones.

23.     "Final Settlement Approval Order and Judgment" or "Judgment" means the Court's final order approving the Agreement; entering judgment; dismissing the Action with prejudice; discharging the Released Parties of and from all further liability for the Released Claims; and permanently barring and enjoining the Releasing Persons from instituting, filing, commencing, prosecuting, maintaining, continuing to prosecute, directly or indirectly, as an individual or collectively, representatively, derivatively, or on behalf of them, or in any other capacity of any kind whatsoever, any action in any state court, any federal court, before any regulatory body or authority, or in any other tribunal, forum, or proceeding of any kind, against the Released Persons that asserts any Released Claims.

24.     "Labeling" means the display of written, printed, or graphic matter upon the Products' packaging or at the point of sale, as well as written, printed, or graphic matter for use in the distribution, marketing, manufacturing, or sale of the Products, including information found on Monsanto's, Scotts's, or any other Released Person's websites supplementing, describing, explaining, and/or promoting the Products.

25.     "Monsanto" means Monsanto Company and its current or future parent companies (including intermediate parents and ultimate parents) and subsidiaries, affiliates, predecessors, successors, and assigns, and each of their respective officers, directors, employees, agents, attorneys, insurers, stockholders, representatives, heirs, administrators, executors, successors and assigns, and any other Person acting on their behalf.

26.     "Notice Period" means the notice period to potential Class Members. Class Notice shall run for a period of 60 days, and shall commence within 14 days after the Preliminary Approval Date.

27.     "Notice Plan" means the plan for dissemination of the Class Notice to be agreed upon by the Parties and that will be submitted to the Court in connection with the Motion for Preliminary Approval of Settlement.

28.     "Objection Deadline" means the first business day on or after ten (10) calendar days from the filing of the Motion for Final Approval of the Settlement and Application for Fees, or such other date as the Court may order in its Preliminary Approval Order. It is the date by which the Class Members must file with the Court and serve on all Parties (i) a written statement objecting to any terms of the Settlement or to Class Counsel's Fees, and (ii) a written notice of intention to appear if they expect to present in person at the Final Approval Hearing objections to any terms of the Settlement or to Class Counsel's Fees.

29.     "Opt-Out Deadline" means ninety (90) days after the Preliminary Approval Date (to be concurrent with the Claims Deadline), or such other date as the Court may order in its Preliminary Approval Order.

30.     "Other Counsel" means any other attorney(s), representing any Class Member, who is not Class Counsel.

31.     "Party" or "Parties" means Plaintiffs, to include the Class Members, and Monsanto.

32.     "Person" means any individual, corporation, partnership, association, or any other type of legal entity.

33.     "Plaintiffs" means Lisa Jones, Horacio Torres Bonilla, Kristoffer Yee, and the other Class Members.

34.     "Preliminary Approval Date" means the date of entry of the Court's order granting preliminary approval of the Agreement substantially in the form of the Preliminary Approval Order that will be submitted in connection with the Motion for Preliminary Approval of Settlement.

35.     "Products" means Roundup® Weed & Grass Killer products that include the statement "targets an enzyme found in plants but not in people or pets" or a substantially similar statement. A full list of Products is appended hereto as Exhibit A.

36.     "Related Actions" include the following cases:

   a.  *Thomas Blitz v. Monsanto Company*, Case No. 3:17-cv-00473 (W.D. Wis.) (the "*Blitz* Action");

   b.  *Beyond Pesticides and Organic Consumers Association v. Monsanto Company*, Case No. 1:17-cv-00941 (D.D.C.).

The term "Related Actions" is meant only as a shorthand to refer to these cases in the course of this Agreement and is not intended, and shall not be construed, to limit in any way the scope of the releases provided by the Agreement or the effect of this Agreement in actions other than the Related Actions.

37.     "Released Claims" means all individual, class, representative, group or collective claims, demands, rights, suits, liabilities, damages, losses, injunctive and/or declaratory relief, and causes of action released pursuant to this Agreement.

38.     "Released Persons" mean, respectively, Monsanto; Scotts; any distributors and/or retailers of the Products; any Persons that are currently, or have in the past been, marketing, advertising, distributing, selling, or reselling the Products and any current or future parent companies (including intermediate parents and ultimate parents) and subsidiaries, affiliates, predecessors, successors, and assigns, and each of their respective officers, directors, employees, agents, attorneys, insurers, stockholders, representatives, heirs, administrators, executors, successors and assigns; and any other Person acting on behalf of Monsanto, Scotts, or any other Released Person.

39.     "Releasing Persons" means Jones, Torres Bonilla, Yee, and each Class Member and any Person claiming by or through each Class member, including but not limited to spouses, children, wards, heirs, devisees, legatees, invitees, employees, associates, co-owners, attorneys,

agents, administrators, predecessors, successors, assignees, representatives of any kind, shareholders, partners, directors, or affiliates.

40.      "Scotts" means The Scotts Company LLC, Monsanto's exclusive marketing and distribution agent for Roundup consumer products, and its current or future parent companies (including intermediate parents and ultimate parents) and subsidiaries, affiliates, predecessors, successors, and assigns, and each of their respective officers, directors, employees, agents, attorneys, insurers, stockholders, representatives, heirs, administrators, executors, successors and assigns, and any other Person acting on their behalf.

41.      "Settlement Payment" means the amount to be paid to Authorized Claimants as described in Section F.

42.      "Settlement Website" means a website maintained by the Claims Administrator to provide the Class with information relating to the Settlement.

43.      "Torres Bonilla" means the plaintiff in the Action, Horacio Torres Bonilla.

44.      "Yee" means the plaintiff in the Action, Kristoffer Yee.

## B. Conditional Class Certification for Settlement Purposes Only

1.      This Agreement is for settlement purposes only, and neither the fact of, nor any provision contained in this Agreement, nor any action taken hereunder, shall constitute, be construed as, or be admissible in evidence as an admission of (1) the validity of any claim or allegation by Jones, Torres Bonilla, Yee, the plaintiff(s) in any Related Action, or any Class Member, or of any defense asserted by Monsanto in these or any other actions or proceedings; (2) any wrongdoing, fault, violation of law, or liability of any kind on the part of any Party, Released Party, Class Member or their respective counsel; or (3) the propriety of class certification in the Action, Related Actions, or any other action or proceeding.

2.      For the sole and limited purpose of settlement only, the Parties stipulate to and request that the Court conditionally certify the Class under Rule 23(b)(3), which stipulation is contingent upon the occurrence of the Effective Date. Should the Effective Date not occur, this Agreement shall be void and will not constitute, be construed as, or be admissible in evidence as, an admission of any kind or be used for any purpose in the Action, Related Actions, or in any other pending or future action. In the event that the Agreement is terminated pursuant to its terms or the Final Settlement Hearing does not occur for any reason, the certification of the Class shall be vacated, and the Action shall proceed as it existed prior to execution of this Agreement.

3.      The Court's certification of the Class shall not be deemed to be an adjudication of any fact or issue for any purpose other than the accomplishment of the provisions of this Agreement, and shall not be considered the law of the case, res judicata, or collateral estoppel in the Action, Related Actions, or any other proceeding unless and until the Court enters a Judgment. Regardless of whether the Effective Date occurs, the Parties' agreement to class certification for settlement purposes only (and any statements or submissions made by the Parties in connection with seeking the Court's approval of this Agreement) shall not be deemed to be a stipulation as to the propriety of class certification, or any admission of fact or law regarding any request for class

certification, in any other action or proceeding, whether or not involving the same or similar claims.

4.      In the event the Court does not enter a Judgment, or the Effective Date does not occur, or the Agreement is otherwise terminated or rendered null and void, the Parties' agreement to certification of the Class for settlement purposes shall be null and void and the Court's certification order (if any is ordered) shall be vacated, and thereafter no new class or classes will remain certified.

5.      Nothing in this Agreement shall be argued as support for, or admissible in, an effort to certify any new class in this Court or any other court if the Court does not enter a Judgment, or the Effective Date does not occur, nor shall anything herein be admissible in any proceeding to certify this or any other classes in any other court under any circumstances.

6.      Subject to the Court's approval, and for settlement purposes only, Monsanto consents to the appointment of Jones, Torres Bonilla, and Yee as Class Representatives of the Class, and the appointment of Kim Richman, Michael L. Baum, and any attorneys at their firms assisting in the representation of the Class in this Action as Class Counsel.

7.      The Preliminary Approval Order shall contain a provision enjoining Class Members who have not opted-out of the Agreement from proceeding with any competing claims against the Released Persons related or similar to those claims that are asserted in this Action.

8.      Upon final approval of the Agreement by the Court, a Judgment substantially in the form agreed by the Parties, and conforming with the definition of Final Settlement Approval Order and Judgment above, will be entered by the Court.

## C. Benefits of the Agreement

Class Counsel and Class Representatives believe the Agreement confers substantial benefits upon the Class, particularly as weighed against the risk associated with the inherent uncertain nature of a litigated outcome; the complex nature of the Action, and Related Actions, in which the Parties have produced large amounts of discovery, taken and defended depositions, served and pursued third-party subpoenas for documents, and disclosed and produced expert reports, including in the *Blitz* Action as set forth *infra*; and the length and expense of continued proceedings through fact depositions, expert depositions, third-party document productions and depositions, class certification briefing, summary judgment briefing, trial, and appeals. Based on their evaluation of such factors, Class Counsel and Class Representatives have determined that the Settlement, based on the following terms, is in the best interests of the Class.

## D. Changes to the Label

1.      Monsanto will undertake to remove the representation that glyphosate "targets an enzyme found in plants but not in people or pets" on the label of the Products, in favor of a statement to be selected by Monsanto akin to "Glyphosate works by targeting an enzyme that is essential for plant growth." The final statement is subject to Monsanto's exclusive discretion and approval by the Environmental Protection Agency.

2.      After the label change, Monsanto will have a reasonable period of time, consistent with EPA guidance and requirements, to exhaust existing inventories and remove Products with the current representation that glyphosate "targets an enzyme found in plants but not in people or pets" on the label from the marketplace. Any Products sold from Monsanto's inventory with the representation that glyphosate "targets an enzyme found in plants but not in people or pets" on the label, through the date Notice is first effected, are included in the Full Release described in this Agreement, and any consumer who purchases such products during the inventory removal period and prior to the date Class Notice is first effected shall be entitled to make a Claim under the structure set forth herein.

### E. Common Fund

1.      Within seven (7) calendar days following the Court's Final Approval Order, Monsanto shall pay $39.55 million into a "Qualified Settlement Fund" created and maintained by the Claims Administrator, with a separate tax identification number for purposes of this Agreement only (the "Common Fund").

2.      The Common Fund shall cover all expenses associated with the Agreement as approved by the Court, including without limitation, Class Notice, Claims Administration Expenses, Class Member Claims, the Settlement Payment, Class Representative incentive awards, and Class Counsel's Fees. Interest on the Settlement Fund shall inure to the benefit of the Class.

3.      All taxes on the income of the Settlement Fund, and any costs or expenses incurred in connection with the taxation of the Settlement Fund, shall be paid out of the Settlement Fund, shall be considered to be a cost of administration, and shall be timely paid by the Claims Administrator without prior order of the Court. The Parties shall have no liability or responsibility for the payment of any such taxes.

4.      In the event that requests for payment per unit (as set forth herein) are made in excess of the amounts available in the Common Fund after deducting all other expenses, incentive awards, and attorney's fees, then the payment per Claimant shall be reduced on a pro rata basis.

5.      In no case shall Monsanto be required to contribute or pay additional funds to the Common Fund and/or the Settlement set forth herein, beyond the payments agreed hereto, including but not limited to any payments for attorneys' fees or fees associated with notice and/or administration.

### F. Class Member Claims

1.      If the Common Fund is sufficient to allow such payments (and subject to the further limitations and requirements set forth below), considering the number of Claims made, for each unit of the Products purchased during the Class Period, Authorized Claimants will receive a standardized payment of 10% the weighted average retail price (after rounding). The weighted average retail price per unit and the payment per unit are set forth below:

| Roundup® Product | Weighted Average Retail Price | Payment Per Unit |
|---|---|---|
| 24 oz. Roundup® Ready-to-Use Weed and Grass Killer | $5.01 | $0.50 |
| 30 oz. Roundup® Ready-to-Use Weed and Grass Killer | $3.73 | $0.37 |
| 0.5 gal. Roundup® Ready-to-Use Weed and Grass Killer | $5.29 | $0.53 |
| 1 gal. Roundup® Ready-to-Use Weed and Grass Killer (all non-refill varieties) | $10.17 | $1.02 |
| 1 gal. Roundup® Ready-to-Use Weed and Grass Killer Refill | $5.78 | $0.58 |
| 1.1 gal. Roundup® Ready-to-Use Weed and Grass Killer | $15.96 | $1.60 |
| 1.25 gal. Roundup® Ready-to-Use Weed and Grass Killer Refill | $12.15 | $1.22 |
| 1.33 gal. Roundup® Ready-to-Use Weed and Grass Killer | $18.78 | $1.88 |

| | | |
|---|---|---|
| 16 oz. Roundup® Weed and Grass Killer Concentrate Plus | $13.24 | $1.32 |
| 32 oz. Roundup® Weed and Grass Killer Concentrate Plus | $19.54 | $1.95 |
| 35.2 oz. Roundup® Weed and Grass Killer Concentrate Plus | $20.54 | $2.05 |
| 36.8 oz. Roundup® Weed and Grass Killer Concentrate Plus | $18.38 | $1.84 |
| 40 oz. Roundup® Weed and Grass Killer Concentrate Plus | $18.83 | $1.88 |
| 64 oz. Roundup® Weed and Grass Killer Concentrate Plus | $38.52 | $3.85 |
| 80 oz. Roundup® Weed and Grass Killer Concentrate Plus | $46.34 | $4.63 |
| 3-pack 6 oz. Roundup® Weed and Grass Killer Concentrate Plus | $19.51 | $1.95 |

| | | |
|---|---|---|
| 32 oz. Roundup® Weed and Grass Killer Super Concentrate | $22.44 | $2.24 |
| 35.2 oz. Roundup® Weed and Grass Killer Super Concentrate | $43.03 | $4.30 |
| 0.42 gal. Roundup® Weed and Grass Killer Super Concentrate | $46.73 | $4.67 |
| 0.5 gal. Roundup® Weed and Grass Killer Super Concentrate | $74.15 | $7.42 |
| 1 gal. Roundup® Weed and Grass Killer Super Concentrate | $106.29 | $10.63 |
| Combination Pack - 1 gal. Roundup® Ready-to-Use Weed and Grass Killer with 22 oz. Roundup® Weed & Grass Killer Sure Shot Foam Spray | $10.36 | $1.04 |
| Combination Pack - 1.33 gal. Roundup® Ready-to-Use Weed and Grass Killer Plus with Pump 'N Go Sprayer and two 6.5 oz. Roundup® Weed and Grass Killer Super Concentrate | $39.53 | $3.95 |
| Combination Pack – 1.33 gal. Roundup® Ready-to-Use Weed and Grass Killer and two 7 oz. Roundup® Weed and Grass Killer Concentrate Plus | $36.84 | $3.68 |

2.      Any Person who received a refund directly from Monsanto and/or Scotts with respect to purchases of units of Products shall not be eligible for a payment as to those units.

## G. Attorneys' Fees, Expenses, and Costs

1.      Class Counsel and Class Representatives shall request attorneys' fees and costs, including Class Counsel's Fees, and incentive awards, to be paid from the Common Fund. Monsanto will not contest a request for Class Counsel's Fees that does not exceed 25% of the full amount available to the class. Monsanto will not oppose reasonable incentive payments for the Class Representatives.

2.      The Parties recognize that Class Counsel's Fees reflect the novel and complex nature of this matter, as well as the risk assumed by Class Counsel in investing months of labor into gaining relief for the Class without guarantee of return. The Parties recognize also that litigation pursued in the *Blitz* Action contributed significantly to bringing about the mediation in this matter and this Agreement and is appropriately considered by the Court in assessing the reasonableness of Class Counsel's Fees.

3.      The Claims Administrator shall pay to Class Counsel from the Common Fund the amount of Class Counsel's Fees and costs awarded by the Court within seven (7) calendar days after the Effective Date.

4.      Costs for settlement, notice, claims administration, incentive awards, and any other fees, including attorneys' fees, will be paid from the Common Fund.

## H. Retention of Claims Administrator

The Parties agree to retain Postlethwaite & Netterville as Claims Administrator to effect Class Notice and administration. The Claims Administrator shall assist with various administrative tasks, including, without limitation:

   a. Arranging for the dissemination of the Class Notice pursuant to the Notice Plan agreed to by the Parties and approved by the Court;

   b. Answering written inquiries from Class Members and/or forwarding such inquires to Class Counsel;

   c. Receiving and maintaining forms of Class Members who wish to opt out of and be excluded from the Agreement;

   d. Establishing a Settlement Website;

   e. Establishing and staffing a toll-free informational telephone number for Class Members;

   f. Receiving and processing Claims and distributing payments to Authorized Claimants; and

   g. Otherwise assisting with administration of the Agreement.

## I. Timing

All Claim Forms must be postmarked or received by the Claims Administrator by the Claims Deadline to be considered timely. The Claims Deadline shall be clearly set forth in the Preliminary Approval Order, the Class Notice, on the Settlement Website, and on the front of the Claim Form.

## J. Procedure

1. Class Notice will include print and nationwide digital publication.

2. All Claims must be submitted with a Claim Form and received by the Claims Administrator.

3. The Claim Form will be available on the Settlement Website. The Claim Form will be available to fill out and submit online, for download, or will be mailed to Class Members upon request by calling or writing to the Claims Administrator. Class Members may submit their completed and signed Claim Forms to the Claims Administrator by mail or online, postmarked or submitted online, on or before the Claims Deadline.

4. The Claim Form must include a reasonable proof of purchase, or must include a declaration, under penalty of perjury, of the identity and quantity of the type of Products that were purchased. All Claim Forms must include:

   a. Class Member name, address, and telephone number;

   b. Identification of the quantity and type of Product(s) that were purchased;

   c. The retailer and location (city and state) of the retailer from which the Products were purchased; and

   d. The approximate date(s) or date ranges on or during which the Products were purchased.

5. The Claims Administrator shall retain sole discretion in accepting or rejecting the Claim Form.

6. Claims that are based only upon a declaration signed under penalty of perjury (*i.e.*, do not include reasonable proof of purchase) shall be limited to a Maximum Allowance of one (1) Product for each year of the Class Period (the number of years for each Class Member being determined by that state of that Class Member's purchases as set forth in the definition of Class Period above) with the exception of Claims for 1 Gal. Roundup® Weed and Grass Killer Super Concentrate. For 1 Gal. Roundup® Weed and Grass Killer Super Concentrate, Claims that are based only upon a declaration signed under penalty of perjury shall be limited to a Maximum Allowance of one (1) for every two (2) years of the Class Period. For example, if the applicable Class Period for a Class Member is five (5) years, that Class Member may make a Claim based upon a declaration for any one of the following combinations of products:

       i.     up to five (5) Products other than 1 Gal. Roundup® Weed and Grass Killer Super Concentrate;

      ii.     up to three (3) 1 Gal. Roundup® Weed and Grass Killer Super Concentrates;

     iii.     up to two (2) 1 Gal. Roundup® Weed and Grass Killer Super Concentrates and one (1) Product other than a 1 Gal. Roundup® Weed and Grass Killer Super Concentrate; or

     iv.     one (1) 1 Gal. Roundup® Weed and Grass Killer Super Concentrate and up to three (3) Products other than 1 Gal. Roundup® Ready-to-Use Weed and Grass Killer Super Concentrate).

7.     Claims based on a reasonable proof of purchase are not subject to the Maximum Allowance, but for such Claims, the Claims Administrator may at its discretion require a declaration signed under penalty of perjury that provides additional information, including that the purchases were for personal use at a specific location.

8.     The Claims Administrator shall pay out Approved Claims in accordance with the terms of this Agreement commencing ten (10) days after the Effective Date or as otherwise ordered by the Court.

9.     Class Members who do not submit a Claim or opt out (*i.e.*, do nothing) will be subject to this Agreement and all of its terms, including but not limited to the releases, and will receive no payment from the Common Fund.

### K. Opt-Out Procedure

1.     Class Members who wish to opt out of and be excluded from the Agreement must download from the Settlement Website an Opt-Out Form, to be created by the Claims Administrator, and Class Members must print, complete, and mail the form to the Claims Administrator, at the mailing address stated on the Opt-Out Form, postmarked no later than ten (10) days after the filing of the Motion for Final Approval of the Settlement and the Application For Fees or as otherwise ordered by the Court in its Preliminary Approval Order (the "Opt-Out Deadline").

2.     The Opt-Out Form must be personally completed and submitted by the Class Member, and multiple-Class-Member "mass" or "class" opt-outs shall not be permitted.

3.     The Claims Administrator shall be responsible for processing opt-outs and objections, if any, including to promptly provide Class Counsel and counsel for Monsanto with copies of same.

### L. Procedures for Objecting to the Settlement

Class Members have the right to appear and show cause why the Agreement should not be granted final approval, subject to each of the provisions of this paragraph:

1. *Written Objection Required.* Any objection to the Agreement must be in writing, filed with the Court, with a copy served on Class Counsel and counsel for Monsanto at the addresses set forth in the Class Notice and in Miscellaneous Provision ¶ 2 below, by the Objection Deadline.

2. *Form of Written Objection.* Any objection regarding or related to the Agreement shall contain (i) a caption or title that clearly identifies the Action and that the document is an objection, (ii) information sufficient to identify and contact the objecting Class Member or his or her attorney, and (iii) a clear and concise statement of the Class Member's objection, as well as any facts and law supporting the objection (the "Objection").

3. *Authorization of Objections Filed by Attorneys Representing Objectors.* Class Members may object either on their own or through an attorney hired at their own expense, but a Class Member represented by an attorney must sign either the Objection itself or execute a separate declaration stating that the Class Member authorizes the filing of the Objection.

4. *Effect of Both Opt-Out and Objection.* If a Class Member submits an Opt-Out Form, the Class Member will be deemed to have opted out of the Agreement, and thus to be ineligible to object. However, any objecting Class Member who has not timely submitted a completed Opt-Out Form for exclusion from the Agreement will be bound by the terms of the Agreement upon the Court's final approval of the Agreement.

## M. Failure to Exhaust Funds

After payments have been made to Authorized Claimants, to Class Counsel for Class Counsel Fees, to Class Representatives for incentive awards, and all other costs associated with the administration of this settlement have been paid or placed in appropriate escrow, any remaining funds will be exhausted through a *cy pres* distribution to a charitable and tax-exempt organization to be mutually determined by the Parties. In the event that the Parties cannot reach an agreement on the *cy pres* organization(s), the Parties will timely present the issue to the Court for resolution.

## N. Release of Monsanto, Scotts, and Related Persons

Upon the Effective Date, each of the Class Members will be deemed to have, and by operation of the Judgment will have, fully, finally, and forever released, relinquished, and discharged the Released Parties from any and all individual, class, representative, group or collective claims, demands, rights, suits, liabilities, damages, losses, injunctive and/or declaratory relief, and causes of action of every nature and description whatsoever, including costs, expenses, penalties, and attorneys' fees, whether known or unknown, matured or unmatured, asserted or unasserted, latent or patent, at law or in equity, existing under federal or state law, regardless of legal theory or relief claimed, that any Class Member has or may in the future have against Monsanto arising out of or related in any way to:

    a. Labeling, sales, marketing, advertising, or any other communications, regardless of medium, of or regarding glyphosate or any of the Products using the statement "targets an enzyme found in plants but not in people or pets";

b.  Labeling, sales, marketing, or advertising, or any other communications, regardless of medium, of or regarding glyphosate or any of the Products using any variations of the statement at issue in the Action, including but not limited to:

- "... stopping the function of an essential enzyme found in plants"
- "... stopping the function of an essential enzyme found in plants, but not in humans or animals"
- "... stopping the production of an essential enzyme found in plants (but not in humans or animals)"
- "... stopping the function of a substance found in plants (but not humans or animals)"

c.  Any allegedly false or misleading statement or omission in or on the Labeling of glyphosate or any of the Products regarding the alleged impact of the Products or glyphosate on bacteria, or other microorganisms in or around humans and/or animals;

which have been, or which could in the past or future have been, asserted in the Action, and in connection with the conduct of the Action, that have been brought, could in the past or future have been brought, or are currently pending in any forum in the United States.

## O. Release of Plaintiffs

Upon the Effective Date, Monsanto will be deemed to have, and by operation of the Judgment will have, fully, finally, and forever released, relinquished, and discharged Plaintiffs, the Class, and Class Counsel from any and all claims, demands, rights, suits, liabilities, and causes of action of every nature and description whatsoever, whether known or unknown, matured or unmatured, at law or in equity, existing under federal or state law, that Monsanto has or may have against any of them arising out of or related in any way to the transactions, occurrences, events, behaviors, conduct, practices, and policies alleged in the Action, and in connection with the filing and conduct of the Action, that have been brought, could have been brought, or are currently pending in any forum in the United States.

## P. Section 1542 Waiver

ALL PARTIES ACKNOWLEDGE SECTION 1542 OF THE CALIFORNIA CIVIL CODE. YEE AND CALIFORNIA MEMBERS OF THE CLASS EXPRESSLY WAIVE AND RELINQUISH ANY RIGHTS OR BENEFITS AVAILABLE TO THEM UNDER THIS STATUTE. CAL. CIV. CODE § 1542 PROVIDES: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR." NOTWITHSTANDING CAL. CIV. CODE § 1542 OR ANY OTHER FEDERAL OR STATE STATUTE OR RULE OF LAW OF SIMILAR EFFECT, THIS AGREEMENT SHALL BE GIVEN FULL FORCE AND EFFECT ACCORDING TO EACH AND ALL OF ITS EXPRESSED TERMS AND PROVISIONS, INCLUDING THOSE RELATED TO ANY UNKNOWN OR UNSUSPECTED CLAIMS, LIABILITIES, DEMANDS,

OR CAUSES OF ACTION WHICH ARE BASED ON, ARISE FROM, OR ARE IN ANY WAY CONNECTED WITH THE ACTION.

### Q. Class Action Fairness Act

1.      The Class Action Fairness Act of 2005 ("CAFA") requires Monsanto to inform certain federal and state officials about this Agreement. See 28 U.S.C. § 1715.

2.      Under the provisions of CAFA, the Claims Administrator, on behalf of Monsanto, will serve notice upon the appropriate officials within ten (10) calendar days after the Parties file the proposed Agreement with the Court. See 28 U.S.C. § 1715(b).

3.      The Parties agree that either the Claims Administrator or Monsanto is permitted to provide CAFA notice as required by law and that any such notice shall be done to effectuate the Agreement and shall not be considered a breach of this Agreement or any other agreement of the Parties.

4.      If any of the notified federal or state officials takes any action adversely affecting the validity or enforceability of the Agreement or seek to impose additional terms or liability on Monsanto for the matters resolved by the Class Released Claims, Monsanto may, at its option, suspend the implementation of the Agreement pending the outcome of the action initiated by the notified federal or state official, or provided that the Court has not yet entered the Final Settlement Approval Order and Judgment, may elect to void the Agreement by written notice to Class Counsel.

### R. Court Approval

1.      Promptly after executing this Agreement, and no later than March 24, 2020, the Parties will submit to the Court the Agreement, together with its exhibits, and will request that the Court grant preliminary approval of the proposed Agreement, issue a Preliminary Approval Order, and schedule a Final Approval Hearing to determine whether the Agreement should be granted final approval, whether an application for attorneys' fees and costs should be granted, and whether an application for incentive awards should be granted. As part of the preliminary approval motion, the Parties will request the Court to certify the Class provisionally for settlement purposes, and formally to appoint Class Counsel. The Parties intend and acknowledge that any such certification and appointment would be for purposes of the Agreement only, and not effective in continuing litigation between the Parties, if any.

2.      A Final Settlement Hearing to determine final approval of the Agreement shall be scheduled as soon as practicable, subject to the calendar of the Court, but no sooner than 90 days after the Preliminary Approval Date. Upon final approval of the Agreement by the Court at or after the Final Settlement Hearing, the Parties shall seek and obtain from the Court the Final Settlement Approval Order and Judgment.

3.      Objecting Class Members may appear at the Final Approval Hearing and be heard. The Parties shall have the right, but not the obligation, either jointly or individually, to respond to any objection.

4.      If this Agreement is not given final approval by the Court, the Parties will seek in good faith to revise the Agreement as needed to obtain Court approval. Failing this, the Parties will be restored to their respective places in the litigation. In such event, the terms and provisions of this Agreement will have no further force and effect with respect to the Parties and will not be used in this or in any other proceeding for any purposes, and any judgment or order entered by the Court in accordance with the terms of this Agreement will be treated as vacated.

## S.  No Public Statements and Media or Public Inquiry Plan

1.      The Parties will refrain (directly, or through counsel or third parties) from making any public statements regarding the fact of or the terms of this settlement, absent written agreement signed by both Parties.

2.      The Parties and their counsel agree that, in responding to any inquiries from the public media concerning the Action and/or the Agreement, the Parties and their counsel will limit their comments to the effect that "the matter has been settled to the satisfaction of all Parties subject to Court approval" unless a prior written agreement has been signed by both Parties. Nothing in this paragraph shall limit Class Counsel's ability to communicate privately with a Class Member concerning this Action or the Agreement. Monsanto or the Claims Administrator may make such public disclosures about the Action and Agreement as any applicable laws require.

## T.  Miscellaneous Provision

1.      *Entire Agreement.* This Agreement shall constitute the entire Agreement among the Parties with regard to the subject matter of this Agreement and shall supersede any previous agreements, representations, communications, and understandings among the Parties with respect to the subject matter of this Agreement. The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or undertaking concerning any part or all of the subject matter of the Agreement has been made or relied upon except as expressly set forth herein. This Agreement supersedes any prior agreement between the parties, including the Term Sheet executed by the Parties.

2.      *Notices Under This Agreement.* All notices or mailings required by this Agreement to be provided to or approved by Class Counsel and Monsanto, or otherwise made pursuant to this agreement, shall be provided as follows:

| Class Counsel | Monsanto |
|---|---|
| Kim Richman<br>Richman Law Group<br>8 W. 126th Street<br>New York, NY 10027<br>Telephone: (718) 705-4579<br>Facsimile: (212) 687-8292<br>krichman@richmanlawgroup.com<br><br>Michael L. Baum | John J. Rosenthal<br>Winston & Strawn LLP<br>1901 L St. N.W.<br>Washington, D.C. 20036<br>Telephone: (202) 282-5785<br>jrosenthal@winston.com<br><br>Jeff Wilkerson<br>Winston & Strawn LLP |

| Baum, Hedlund, Aristei & Goldman, P.C. | 300 S. Tryon St., 16th Floor |
|---|---|
| 12100 Wilshire Blvd., Suite 950 | Charlotte, NC 28202 |
| Los Angeles, CA 90025 | Telephone: (704) 350-7714 |
| Telephone: (310) 207-3233 | jwilkerson@winston.com |
| mbaum@baumhedlund.com | |

3. *Good Faith.* The Parties acknowledge that each intends to implement the Agreement. The Parties have at all times acted in good faith and shall continue to, in good faith, cooperate and assist with and undertake all reasonable actions and steps in order to accomplish all required events on the schedule set by the Court, and shall use reasonable efforts to implement all terms and conditions of this Agreement.

4. *Binding on Successors.* This Agreement shall be binding upon and inure to the benefit of the heirs, successors, assigns, executors, and legal representatives of the Parties to the Agreement and the Released Parties.

5. *Arms-Length Negotiations.* The Agreement compromises claims that are contested, and the Parties agree that the consideration provided to the Class and other terms of the Agreement were negotiated in good faith and at arms' length by the Parties, and reflect an Agreement that was reached voluntarily, after consultation with competent legal counsel, and guided in part by the Parties' earlier private mediation session with Professor Eric D. Green, an experienced mediator. The determination of the terms of, and the drafting of, this Agreement, has been by mutual agreement after negotiation, with consideration by and participation of all Parties hereto and their counsel. Accordingly, the rule of construction that any ambiguities are to be construed against the drafter shall have no application. All Parties agree that this Agreement was drafted by Class Counsel and Monsanto's Counsel at arms' length, and that no parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their attorneys, or the circumstances under which the Agreement was negotiated, made, or executed.

6. *Waiver.* The waiver by one Party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

7. *Modification in Writing Only.* This Agreement and any and all parts of it may be amended, modified, changed, or waived only by an express instrument in writing signed by the Parties.

8. *Headings.* The descriptive headings of any paragraph or sections of this Agreement are inserted for convenience of reference only and do not constitute a part of this Agreement.

9. *Governing Law.* This Agreement shall be interpreted, construed, and enforced according to the laws of the State of Missouri, without regard to conflicts of law.

10. *Continuing Jurisdiction.* After entry of the Judgment, the Court shall have continuing jurisdiction over the Action solely for purposes of (i) enforcing this Agreement, (ii) addressing settlement administration matters, and (iii) addressing such post-Judgment matters as may be appropriate under court rules or applicable law, including under the All Writs Act.

11.     *Agreement Constitutes a Complete Defense*. To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement.

12.     *Execution*. This Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument. Photocopies and electronic copies (*e.g.*, PDF copies) shall be given the same force and effect as original signed documents.

**IN WITNESS WHEREOF**, each of the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on that date upon which it has been executed by all of the undersigned.

ON BEHALF OF Lisa Jones, Horacio Torres Bonilla, Kristoffer Yee, and the Proposed Settlement Class:

_____ Date: March ____, 2020

ON BEHALF OF Monsanto Company:

_____ Date: March 23, 2020
John J. Rosenthal

11.     *Agreement Constitutes a Complete Defense*.  To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement.

12.     *Execution*.  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them will be deemed to be one and the same instrument.  Photocopies and electronic copies (*e.g.*, PDF copies) shall be given the same force and effect as original signed documents.


**IN WITNESS WHEREOF**, each of the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on that date upon which it has been executed by all of the undersigned.

ON BEHALF OF Lisa Jones, Horacio Torres Bonilla,
Kristoffer Yee, and the Proposed Settlement Class:

_____ Date: March 23, 2020
Kim E. Richman

ON BEHALF OF Monsanto Company:

_____ Date: March 23, 2020
John J. Rosenthal

## **EXHIBIT A**

Products

Roundup® Ready-to-Use Weed & Grass Killer III (all sizes, applicators, and varieties)
Roundup® Ready-to-Use Weed & Grass Killer Plus (all sizes, applicators, and varieties)
Roundup® Weed & Grass Killer Concentrate Plus (all sizes and varieties)
Roundup® Weed & Grass Killer Super Concentrate (all sizes and varieties)

**EXHIBIT B**

Applicable Statutes of Limitation

| State | Citation | Time Period |
|---|---|---|
| Puerto Rico | *Marquez v. Campos*, 111 D.P.R. 854 (1982) | 6 months |
| Colorado | C.R.S. § 13-80-101(1)(a) | 3 years |
| Alabama | Ala. Code § 8–19–14 | 4 years |
| Alaska | Alaska Stat. § 45.50.531(f) | 4 years |
| Arizona | Ariz. Rev. Stat. Ann. § 12–541(5); *Schellenbach v. GoDaddy.com LLC*, 2017 WL 192920, at *3 (D. Ariz. Jan. 18, 2017) | 4 years |
| California | Cal. Bus. & Prof. Code § 17208; *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1134, 1140 (C.D. Cal. 2010) | 4 years |
| Connecticut | C.G.S.A. 42-a-2-725 | 4 years |
| Delaware | 6 Del. C. § 2-725 | 4 years |
| District of Columbia | D.C. Code § 28:2-725 | 4 years |
| Florida | Fla. Stat. Ann. § 95.11(3)(f); *Matthews v. Am. Honda Motor Co.*, 2012 WL 2520675, at *4 (S.D. Fla. June 6, 2012) | 4 years |
| Georgia | Ga. Code Ann. § 9-3-31; *Kason Indus., Inc. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1204 (11th Cir. 1997) | 4 years |
| Hawaii | HRS § 490:2-725 | 4 years |

| State | Citation | Time Period |
|---|---|---|
| Idaho | I.C. § 28-2-725 | 4 years |
| Illinois | 810 ILCS 5/2-725 | 4 years |
| Indiana | IC 26-1-2-725 | 4 years |
| Kansas | K.S.A. § 84-2-725 | 4 years |
| Kentucky | K.R.S. § 355.2-725 | 4 years |
| Louisiana | L.S.A.-C.C. Art. § 2534 | 4 years |
| Maryland | Md. Com. Law Code § 2-725 | 4 years |
| Massachusetts | M.G.L.A. 106 § 2-725 | 4 years |
| Montana | MCA § 30-2-725 | 4 years |
| Nebraska | Neb.Rev.St. U.C.C. § 2-725 | 4 years |
| Nevada | Nev. Rev. Stat. Ann. § 104.2725; *Freas v. BMW of N. Am., LLC*, 320 F. Supp. 3d 1126, 1135 (S.D. Cal. 2018) | 4 years |
| New Hampshire | N.H. Rev. Stat. Ann. § 382-A:2-725 | 4 years |
| New Mexico | N. M. S. A. 1978, § 55-2-725 | 4 years |
| New York | NY UCC § 2-725(1) | 4 years |
| North Carolina | N.C.G.S.A. § 25-2-725 | 4 years |
| Ohio | R.C. § 1302.98 | 4 years |
| Oregon | O.R.S. § 72.7250(1) | 4 years |
| Rhode Island | *Kennedy v. Acura*, 2002 WL 31331373, at *6 (R.I. Super. Aug. 28, 2002) | 4 years |
| South Dakota | SDCL § 57A-2-725 | 4 years |
| Tennessee | T. C. A. § 47-2-725 | 4 years |
| Texas | Tex. Bus. & Com. Code Ann. § 2.725 | 4 years |
| Virginia | VA Code Ann. § 8.2-725 | 4 years |
| Washington | RCWA 62A.2-725 | 4 years |
| West Virginia | W. Va. Code, § 46-2-725 | 4 years |
| Wyoming | W.S.1977 § 34.1-2-725 | 4 years |

| State | Citation | Time Period |
|---|---|---|
| Arkansas | Ark. Code Ann. § 4-88-115 | 5 years |
| Missouri | Mo. Ann. Stat. § 516.120(2); *Snelling v. HSBC Card Servs., Inc.*, 2015 WL 3621091, at *8 (E.D. Mo. June 9, 2015) | 5 years |
| Oklahoma | 12A Okl. Stat.Ann. § 2-725 | 5 years |
| Utah | Utah Code Ann. § 13-2-6 (b) | 5 years |
| Maine | Me. Rev. Stat. tit. 14, § 752; *State v. Bob Chambers Ford, Inc.*, 522 A.2d 362, 364 (Me. 1987) | 6 years |
| Michigan | Me. Rev. Stat. tit. 14, § 752; *State v. Bob Chambers Ford, Inc.*, 522 A.2d 362, 364 (Me. 1987) | 6 years |
| Minnesota | Minn. Stat. Ann. § 541.05(1); *Drobnak v. Andersen Corp.*, 2008 WL 80632, at *4 (D. Minn. Jan. 8, 2008) | 6 years |
| Mississippi | Miss. Code Ann. § 75-2-725 | 6 years |
| New Jersey | N.J. Stat. Ann. § 2A:14-1; *Marchi v. Hudson City Sav. Bank*, 2017 WL 628476, at *4 (D.N.J. Feb. 15, 2017) | 6 years |
| North Dakota | N.D. Cent. Code Ann. § 28-01-16(2); *Bostow v. Lundell Mfg. Co.*, 376 N.W.2d 20, 22 (N.D. 1985) | 6 years |

| State | Citation | Time Period |
|---|---|---|
| Pennsylvania | 42 Pa. Stat. and Cons. Stat. Ann. § 5527(b); *Jacobs v. Halper*, 116 F. Supp. 3d 469, 480 (E.D. Pa. 2015) | 6 years |
| South Carolina | SC ST § 36-2-725 | 6 years |
| Vermont | Vt. Stat. Ann. tit. 12, § 511; *In re Monty*, 2013 WL 2481531, at *4 (Bankr. D. Vt. June 10, 2013) | 6 years |
| Wisconsin | W.S.A. 402.725 | 6 years |
| Iowa | IA Stat. § 614.1; I.C.A. § 554.2725 | 10 years |

# EXHIBIT 2


## Firm Summary

A boutique law firm specializing in consumer protection and civil rights litigation, Richman Law Group (RLG) was founded on the idea that the client is the essential component in maintaining a successful practice. Composed of a tight-knit cadre of tenacious and diverse professionals, RLG is dedicated to fighting for the rights of our clients, and through them, the needs of the community at large.

We put forth all efforts in obtaining the greatest result for our clients, keeping their best interest in mind from the initial point of contact to the resolution of their case. We at RLG commit ourselves to treating every client as the top priority of the firm, while also working for the greater good.

RLG is also a Certified B Corporation. This means that the firm is obligated to consider the impact of its business decisions on employees, clients, community, and the environment.

## Practice Areas

### Class Actions

RLG has brought class actions on behalf of consumers in many jurisdictions over a wide array of issues ranging from telecommunications to deceptive food labeling to other consumer product advertising. Below is a selection of our class action cases:

*Jones v. Monsanto Co*., No. 19-cv-102 (W.D. Mo.); *Blitz v. Monsanto Co.*, No. 3:17-cv-00473 (W.D. Wisconsin) (class action alleging deceptive and false advertising of Roundup weed-killer products);

*Tabler v. Panera LLC*, No. 19-cv-1646 (N.D. Cal.) (class action alleging deceptive and false advertising of "clean" food products);

*In re Nissan North America, Inc. Litigation*, No. 3:19-cv-00843 (M.D. Tenn.) (class action alleging violations of the Magnuson-Moss Warranty Act over a braking defect);

*Livingstone v. Colgate-Palmolive Co.*, No. 1:19-cv-04643 (S.D.N.Y.) (class action alleging deceptive and false labeling of dish soap);

*Livingstone v. Publix Super Markets, Inc.*, No. 19-015268 (Fla. 17th Cir. Ct.) (class action alleging deception over the label "Mild & Gentile" despite the presence of allergens);



*Thompson v. Proctor & Gamble Co.*, No. 18-cv-60107 (S.D. Fla.) (class action alleging deceptive and false labeling of cleaning products);

*Yu v. Dr Pepper Snapple Group, Inc. et al*, No. 5:18-cv-06664 (N.D. Cal.) (class action alleging false and deceptive advertising over the "natural" label);

*Parks v. Ainsworth Pet Nutrition, LLC*, No. 18-cv-6936 (S.D.N.Y.) (class action alleging deceptive and false advertising of "natural" dog food);

*Axon v. Citrus World, Inc. et al*, No. 1:18-cv-04162 (E.D.N.Y.) (class action alleging false and deceptive advertising regarding orange juice labeling);

*Mattero v. Costco Wholesale Corp.*, No. 3:18-cv-02871 (N.D. Cal.); *Gonzalez v. Costco Wholesale Corp.*, No. 1:16-cv-02590 (E.D.N.Y.) (class actions alleging deceptive labeling in connection with laundry detergent and dish soap products);

*Susan Tran v. Sioux Honey Association, Cooperative*, No. 8:17-cv-00110 (C.D. Cal.) (class action alleging deceptive and false labeling of "Pure" and "100% Pure" honey);

*Gregorio et al v. The Clorox Company*, No. 4:17-cv-03824 (N.D. Cal.) (class action alleging "greenwashing" claims);

*Tyman et al v. Pfizer, Inc.*, No. 1:16-cv-06941 (S.D.N.Y.) (class action alleging "100% Natural" chapstick);

*Gibson v. The Quaker Oats Company*, No. 16-cv-04853 (E.D. Ill.) (class action alleging deceptive and false labeling of oat products);

*Wu v. Post Consumer Brands, LLC, and Post Holdings, Inc.*, No. 3:16-cv-03494 (N.D. Cal) (class-actions alleging deceptive and false labeling of wheat cereal products);

*Salamanca v. General Mills, Inc.*, No. 3:16-cv-04871 (N.D. Cal.); *Nuez v. General Mills, Inc.*, No. 1:16-cv-04731 (E.D.N.Y.); *Woloszyn v. General Mills, Inc.*, No. 0:16-cv-02869 (D. Minn.) (class actions alleging deceptive and false labeling of oat products);

*Hidalgo v. Johnson & Johnson Consumer Cos.*, No. 1:15-cv-05199 (S.D.N.Y) (class action alleging deceptive labeling of baby care products);

*Normand v. Nestle Purina Petcare Co.*, No. 6:15-cv-06141 (W.D.N.Y.) (class action alleging that branded dog food is linked to the poisoning and death of thousands of dogs around the county);


*Paulino v. Conopco, Inc.*, No. 1:14-cv-05145 (E.D.N.Y.) (class action alleging that "Suave Naturals" products, which use imagery of "natural ingredients" to convey a supposed benefit of the product, contain harmful and synthetic chemicals in violation of New York and California consumer protection laws);

*Segedie v. The Hain Celestial Group, Inc.*, No. 7:14-cv-05029 (S.D.N.Y.) (class action alleging that infant formula is falsely labeled "organic" because it contains ingredients that are not allowed in "organic" products under federal law);

*Barron v. Snyder's-Lance, Inc.*, No. 0:13-cv-62496 (S.D. Fla.) (class action alleging that snack-food products labeled "natural" contain genetically modified organisms and synthetic ingredients);

*Goldemberg v. Johnson & Johnson Consumer Companies*, No. 7:13-cv-03073 (S.D.N.Y.) (class action alleging false and deceptive advertising of personal care products);

*Koehler v. Pepperidge Farm, Inc.*, No. 13-cv-02607 (D. Colo.) (class action alleging that snack food labeled "natural" contains genetically modified organisms);

*Rich v. Lowe's Home Centers, Inc.*, No. 3:13-cv-30144 (D. Mass.) (class action alleging violation of Massachusetts Unfair Trade Practices Act and unjust enrichment);

*Brenner v. Williams-Sonoma, Inc.*, No. 1:13-cv-10931 (D. Mass.) (class action alleging that defendant gathered customers' ZIP codes during credit card transactions, which it used to build databases for advertising and campaigns in violation of the Massachusetts Unfair Trade Act);

*In re: Frito Lay North America, Inc. "All Natural" Litigation*, No. 1:12-MD-02413 (E.D.N.Y.) (class action alleging that snack food products labeled as "natural" contain genetically modified organisms);

*In re: Simply Orange Orange Juice Marketing & Sales Practices Litigation*, No. 4:12-md-02361 (W.D. Mo.) (class action alleging that orange juice labeled as "100% pure" and "natural" contains synthetic flavoring and is subject to a high degree of processing);

*Serrano v. Cablevision Systems Corp.*, No. 09-CV-1056 (E.D.N.Y.) (class action alleging violation of CFAA and of New York consumer protection law);

*Hill v. Roll International Corp.*, No. CGC-09-487547 (San Francisco County Superior Court) (class action alleging violation of California consumer protection laws);


*L'Ottavo Ristorante v. Ingomar Packing Co.*, No. 09-CV-01427 (E.D. Cal.) (class action alleging violation of the Sherman Act);

*Koh v. SC Johnson & Son, Inc.*, No. 5:09-cv-00927 (N.D. Cal.) (class action that introduced the concept of "greenwashing" in violation of California adverting laws);

*Chin v. RCN Corp.*, No. 08-CV-7349 RJS (S.D.N.Y.) (class action alleging violation of Virginia consumer protection law);

*Tan v. Comcast Corp.*, No. 08-CV-02735 (E.D. Pa.) (class action alleging violation of the federal Computer Fraud and Abuse Act (CFAA));

*All-Star Carts & Vehicles Inc. v. BFI Canada Income Fund*, No. 08-CV-1816 (E.D.N.Y.) (class action alleging violation of the Sherman Antitrust Act);

*Fink v. Time Warner Cable*, No. 08-CV-9628 (S.D.N.Y.) (class action alleging violation of New York consumer protection laws);

*S.K. v. General Nutrition Corp.*, No. 08-CV-9263 (S.D.N.Y.) (class action alleging violation of New York consumer protection laws);

*Petlack v. S.C. Johnson & Son, Inc.*, No. 08-CV-00820 (E.D. Wisconsin) (class action alleging violation of Wisconsin consumer protection law).

## Consumer Watchdog Actions

RLG served as counsel alongside various nonprofits to advocate on behalf of consumers regarding health and environmental issues. Below is a selection of our consumer watchdog actions:

*Voters For Animal Rights v. D'Artagnan, Inc. et al*, No. 1:19-cv-06158 (S.D.N.Y.) (Nonprofit action alleging deceptive marketing and advertising of foie gras products as humane despite utilizing objectively inhumane practices);

*Children's Health Defense, v. Beech-Nut Nutrition Company*, No. 2019 CA 004475 B (D.C. Super. Ct.) (Nonprofit action alleging food product labeled as "natural" contained unnatural biocides);

*Food & Water Watch, Inc. et al v. Tyson Foods, Inc.*, No. 1:19-cv-02811 (D.D.C.) (Nonprofit action alleging deceptive marketing of poultry products);


*Food & Water Watch, Inc., et al v. Pilgrim's Pride Corporation.*, No. 2019 CA 000730 B (D.C. Super. Ct.) (Nonprofit action alleging deceptive and false advertising of chicken products labeled as "natural" and "treated humanely")

*Toxin Free USA v. The J.M. Smucker Co.*, No. 2019 CA 003192 B (D.C. Super. Ct.) (Nonprofit action alleging deceptive and false advertising of "natural" dog food);

*Organic Consumers Ass'n v. Twinings North America, Inc.*, No. 2019 CA 004412 B (D.C. Super. Ct.) (Nonprofit action alleging deceptive and false advertising of tea products);

*Clean Label Project Foundation, et al., v. Panera, LLC*, No. 2019 CA 001898 B (D.C. Super. Ct.) (Nonprofit action alleging deceptive and false advertising regarding "clean" representations);

*Organic Consumers Ass'n v. Ben & Jerry's Homemade, Inc.*, No. 2018 CA 004850 B (D.C. Super. Ct.) (Nonprofit action alleging false and deceptive advertising due to "greenwashing");

*GMO Free USA, et al., v. Pret A Manger, LTD, et al.*, No. 2018 CA 006750 B (D.C. Super. Ct.) (Nonprofit action alleging false and deceptive advertising of "natural" food products);

*Beyond Pesticides, et al., v. Monsanto Co.*, No. 2017 CA 002468 B (D.C. Super. Ct.) (Nonprofit action alleging deceptive and false advertising of Roundup weed-killer products);

*Organic Consumers Ass'n v. R.C. Bigelow, Inc.*, No. 2017 CA 008375 B (D.C. Super. Ct.) (Nonprofit action alleging deceptive and false advertising of tea products);

*Organic Consumers Ass'n, v. Handsome Brook Farm, LLC, et al.*, No. 2016 CA 006223 B (D.C. Super. Ct.) (Nonprofit action alleging deceptive and false advertising of eggs due to "humane-washing").

## Civil Rights

RLG fights for clients whose rights have been denied within New York State and beyond. Such cases include false arrest, use of excessive force, and the right to due process. Below is a selection of our civil rights cases:

*Nigro v. City Of New York et al.*, No. 1:19-cv-02369 (S.D.N.Y.) (Individual action alleging false arrest of a prominent journalist by the New York Police Department (NYPD));

*Johnson v. City of New York et al.*, No. 1:15-cv-01621 (S.D.N.Y.) (Individual action alleging excessive force and false imprisonment by the NYPD);

*Khalifa et al., v. City of New York et al.*, No. 1:15-cv-06611 (E.D.N.Y.) (Individual action alleging excessive force and false arrest by the NYPD);


*DaCosta v. City of New York et al.*, No. 1:15-cv-05174 (E.D.N.Y.) (Individual action alleging malicious prosecution);

*Soto-Muniz v. New Jersey Department of Corrections et al.*, No. 1:10-cv-01980 (E.D.N.Y.) (Individual action alleging cruel and unusual punishment).

## Our Attorneys

### Kim E. Richman
*Founding Partner*

Kim Richman, who is based in the New York office of Richman Law Group, specializes in consumer class actions and civil rights litigation. Mr. Richman is an accomplished trial attorney with experience in both federal and state courts, where he has litigated dozens of trials to verdict.

Mr. Richman draws his class action expertise from previous work with a small think tank in San Francisco and with a large class action firm. His experience ranges from protecting the privacy rights of consumers and fair use rights of the public to prosecuting cases involving corporate fraud and insider trading.

Mr. Richman has represented federal civil rights clients, individually and on a class-wide basis. These matters have involved, for example, protecting the wrongfully accused and victims of excessive force, advocating for factory laborers, and protecting the civil liberties of protestors arrested at a political march.

Mr. Richman is a member of the state bar of New York and the federal bars of the Southern and Eastern Districts of New York. Mr. Richman received his juris doctorate from Brooklyn Law School in 2001 and his bachelor's degree from the University of Massachusetts in 1996, from where he graduated summa cum laude.

Currently, Mr. Richman serves as the New York State Chair for the National Association of Consumer Advocates.

### P. Renée Wicklund
*Senior Counsel*

Renée Wicklund is senior Of Counsel at the Richman Law Group. Previously, Ms. Wicklund spent a decade with one of the nation's largest and top-ranked law firms, practicing class action defense and mass toxic tort litigation.

Ms. Wicklund is a 1998 graduate of The Yale Law School, where she was a Coker Fellow and managing editor of The Yale Law Journal, and a 1994 graduate of Syracuse University, where she



was Syracuse University Scholar. She also holds master's degrees from The University of Chicago and Sarah Lawrence College.

### Clark Binkley
*Managing Attorney*

Clark Binkley is the managing attorney at Richman Law Group. Mr. Binkley's prior legal background includes civil rights, union-side labor law, and complex ERISA litigation. He is a graduate of New York University School of Law and holds a bachelor's degree in history from the University of California – Berkeley. He is also the is the social outreach liaison for New York State for the National Association of Consumer Advocates.

### Randal Wilhite
*Associate Attorney*

Randal Wilhite is an associate with Richman Law Group. Before joining Richman Law Group, Mr. Wilhite worked at CAMBA Legal Services and the New York Legal Assistance Group, representing low-income individuals. He is a graduate of New York University School of Law and Cornell University.

### Jay Shooster
*Associate Attorney – Animal Welfare Legal Fellow*

Jay Shooster is an attorney and the Factory Farming Legal Fellow at Richman Law Group. Mr. Shooster's work is focused on animal welfare litigation. He previously worked as a fellow with Just Security, a project within the Center for Human Rights and Global Justice at New York University School of Law. He is a graduate of New York University School of Law.

### Michael Mietlicki
*Of Counsel*

Michael Mietlicki is Of Counsel with Richman Law Group. Mr. Mietlicki's practice areas include consumer protection and counsel for businesses and non-profits. Mr. Mietlicki was previously a legal fellow at Stevens Institute of Technology in Hoboken, New Jersey. Mr. Mietlicki is a graduate of New York University School of Law and Sarah Lawrence College. He was a senior editor of the New York University Journal of Intellectual Property and Entertainment Law.

### Jaimie Mak
*Of Counsel*

Jaimie Mak is of counsel to the Richman Law Group. Ms. Mak is a California-licensed attorney, who was admitted in 2005. Ms. Mak received her J.D. from the University of California, Hastings College of the Law in 2004.