# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| LISA JONES, HORACIO TORRES BONILLA, and KRISTOFFER YEE, on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Case No. 4:19-cv-00102-BP |
| v. | **DECLARATION OF BRANDON SCHWARTZ REGARDING PROPOSED NOTICE PLAN** |
| MONSANTO COMPANY and SCOTTS MIRACLE-GRO PRODUCTS, INC., | |
| Defendant. | |

*Lisa Jones et al. v. Monsanto Company, et al.*, No. 4:19-cv-00102-BP
DECLARATION OF BRANDON SCHWARTZ

I, Brandon Schwartz, declare:

1. I am the Director of Notice for Postlethwaite & Netterville, APAC ("P&N"), a full-service administration firm providing legal administration services, including the design, development, and implementation of unbiased complex legal notification programs. P&N was retained by Counsel to develop and execute the proposed Notice Plan and to administer the claims process in the above-referenced matter (the "Action")[1]. The following statements are based on my personal knowledge as well as information provided by other experienced P&N employees working under my supervision.

2. P&N routinely develops and executes notice plans and administers a wide variety of class action and mass action settlements, with subject matters including, but not limited to, products liability, consumer, mass tort, antitrust, labor and employment, insurance, and healthcare. P&N team members have experience designing and implementing over 100 notice and settlement programs. Additional information about P&N can be found on our website at www.pnclassaction.com.

## RELEVANT EXPERIENCE

3. With more than 15 years of class action, advertising, marketing, and media experience, I have developed noticing solutions for all aspects of class action certification and settlement and have an in-depth knowledge of generating media, conducting demographic research, designing media plans, developing and buying media, creating commercial/video productions, and using best practices for social media outreach through platforms such as Instagram and Facebook.

4. I have designed and implemented ad campaigns for more than 100 high-profile cases in addition to the hundreds of cases I have managed. Some of my media plans include: *Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*; the *Indian Residential Schools Settlement*; *In re: Sony PS3 "Other OS" Litigation; In re Ductile Iron Pipe Fittings Direct & Indirect Purchaser Antitrust Litigations*; *Hartig Drug Company, Inc. v. Senju Pharmaceutical et. al.*; and *Gordon v. The Hain Celestial Group, et al.*

5. A true and correct copy of sample court opinions on the adequacy of our notice efforts are included in P&N's curriculum vitae as **Exhibit A.** A description of my experience is attached as **Exhibit B.**

---

[1] All capitalized terms not otherwise defined in this document shall have the meaning ascribed to them in the Settlement Agreement.

6.      Based on our review of the Settlement Agreement, we understand that the proposed Class consists of:

> **All persons in the United States, who, during the Class Period, purchased in the United States, for personal or household use and not for resale or distribution, Roundup® Products in packaging with a label that contained the statement "targets an enzyme found in plants but not in people or pets" or a substantially similar statement. Any person who received a full refund is excluded from the Class definition.**

7.      This declaration describes the Notice Plan proposed in this Action (the "Notice Plan"), which has been designed using a method accepted within the advertising industry and the courts to understand the Target Audience (inclusive of Class Members) by examining their demography and media consumption habits. In order to do so, P&N used the syndicated research bureau GfK Mediamark Research, Inc. ("GfK")[2] and comScore[3].

8.      Using these media research tools, P&N is able to measure and report to the Court what percentage of the Target Audience is estimated to be reached by the Notice Plan and how many times the Target Audience will have the opportunity to see the notice. In advertising, this is commonly referred to as a reach and frequency analysis. Reach refers to the estimated percentage of the unduplicated audience exposed to the notice. Frequency, in turn, refers to how many times, on average, the target audience had the opportunity to view the notice. Reach and frequency calculations are used by advertising and communications firms worldwide and have become a critical element to help provide the basis for determining adequacy of notice in class action cases. The design of the proposed Notice Plan is consistent with the U.S. Supreme Court's guidance in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993)

---

[2] GfK is a nationally syndicated research tool. It is the leading supplier of multi-media audience research, and provides comprehensive reports on demographics, lifestyle, product usage and media exposure. GfK conducts more than 26,000 personal interviews annually to gather its information and is used by more than 450 advertising agencies as the basis for the majority of media and marketing campaigns.

[3] comScore is a global internet information provider on which leading companies and advertising agencies rely for consumer behavior insight and internet usage data. comScore maintains a proprietary database of more than 2 million consumers who have given comScore permission to monitor their browsing and transaction behavior, including online and offline purchasing. comScore panelists also participate in survey research that captures and integrates their attitudes.

*Lisa Jones et al. v. Monsanto Company, et al.*, No. 4:19-cv-00102-BP
DECLARATION OF BRANDON SCHWARTZ

and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

9.      Using nationally syndicated media research data, P&N has designed the proposed Notice Plan to give notice to the Class in the most practicable manner possible. A single target audience must be defined using the two separate research tools discussed above. As is common in many notice plans, an exact target of the defined class is not available in the research tools. Therefore, taking into account the proposed Class described above, we have determined that the best qualitative target for this case is "Adults 18 years old and older in the United States that have participated in gardening" (the "Target Audience"). This Target Audience is broader than the proposed Class and encompasses the members of the proposed Class, which is why it was selected.

## PROPOSED NOTICE PLAN

10.      The Proposed Long Form Notice has been designed to be noticed, read, and understood by potential Class Members.  The Summary Notice contains substantial, easy-to-understand description containing all key information about the Settlement and Class Members' rights and options.

11.      The Summary Notice will feature a prominent headline in bold text. This alerts readers that the Summary Notice is an important document authorized by the Court and that the content may affect them, thereby supplying reasons to read the Summary Notice.

12.      P&N has designed the proposed Notice Plan to provide notice to Class Members and ensure that they will be exposed to, see, review, and understand the Summary Notice. Accordingly, P&N determined that the most reasonable and practicable way to reach and communicate with Class Members is through a multifaceted approach, engineered through a combination of (1) print media, (2) online display, (3) social media, (4) streaming radio, (5) online video, (6) search advertising, (7) national press release, (8) toll-free settlement hotline, and (9) Settlement Website.

13.      The proposed Notice Plan as outlined above is estimated to have a measurable reach of a minimum of 80 percent of the Target Audience and, by inclusion, the proposed Class, with a 2.28 average frequency. The total reach is calculated utilizing a formula that accounts for potential duplication across media titles and vehicles rather than by adding the individual reach figures together. Although not calculable, the inclusion of search advertising and a national press release will strengthen the reach and frequency of the Notice Plan. Accordingly, I believe that the Notice Plan satisfies due process standards,

adheres to the recommendations in the *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*, and follows the Supreme Court's guidance set forth in *Daubert* and *Kumho Tire Co.*

**Print Notice**

14.     The proposed Notice Plan includes a half-page version of the Summary Notice in *Better Homes & Gardens* magazine. *Better Homes & Gardens* has a broad national audience with a readership of 32.5 million with an average of 4.3 readers per printed copy.[4] The Summary Notice would appear in the print and digital editions of *Better Homes & Gardens*. A copy of the Summary Notice is attached as **Exhibit C.**

| Publication | Circulation | Frequency | Ad Size | Insertions |
|---|---|---|---|---|
| *Better Homes & Gardens* Magazine | 7,635,346 | Monthly | 1/2 page | 1 |

15.     *Better Homes & Gardens* has a circulation of more than 7.6 million.[5] Sixty-four percent of its readers have a household income larger than $50,000 and 46 percent have a household income larger than $75,000. The circulation has an average age of 53 years old.[6] This audience subsection complements the demographic data about the Target Audience: 64 percent are 45 years old or older and 46 percent have a household income between $60,000 - $150,000.

16.     *Better Homes & Gardens* is a monthly publication that requires advertisers to reserve space and submit artwork 30 to 60 days prior to the monthly issue date. If the lead time is not conducive to the Notice Plan schedule determined by the Court, P&N will suggest a publication that shares similar demographical data to *Better Homes & Gardens* but requires less lead time to reserve space and submit artwork. Any supplemental suggestion will not have an adverse effect on the reach and frequency analysis.

**Digital Banner Notice**

17.     Internet advertising has become a standard component in legal notice plans. The internet has proven to be an efficient and cost-effective method to target and provide measurable reach to persons in proposed classes. According to GfK research, 87 percent of the Target Audience has used the internet in the

---

[4] *Better Homes & Gardens* Magazine 2019 Media Kit. MRI Doublebase 2019; June 2019 AAM Statement.
[5] AAM, June 30, 2019
[6] *Better Homes & Gardens* Magazine Media Kit. MRI Doublebase 2018.

*Lisa Jones et al. v. Monsanto Company, et al.*, No. 4:19-cv-00102-BP
DECLARATION OF BRANDON SCHWARTZ

last 30 days and 58 percent are medium-to-heavy users of the internet. Accordingly, P&N will run digital notices on select websites Class Members may visit regularly and use ad networks based on their cost efficiency, real-time targeting, and their broad network of partner websites that contribute to the overall reach of the Target Audience as well as social advertising on Facebook and Instagram. Additionally, P&N will incorporate video ads on YouTube and search advertising on Google.com. GfK Doublebase 2018 reveals that 13 percent of the Target Audience are of Spanish or Hispanic origin or descent and that 14 percent speak Spanish most often at home. Digital notices will therefore appear in Spanish and English where appropriate. These banner advertisements are image- and text-based graphic displays that are commonly used in legal noticing. The text of the banner and social advertisements will allow users to identify themselves as Class Members and will directly link them to the Settlement Website for more information.

18.    Digital notices will incorporate artificial intelligence ("AI") to locate and serve ads to the Target Audience in real-time. The AI self-learning platform will continue to monitor website content, user behavior, browsing habits, and clicks to continually improve performance through the life cycle of the Notice Plan.

19.    Furthermore, we will include a mix of segments that will target Class Members based on behavioral, contextual, language, interest-based, engagement, and remarketing strategies. Segmentation will include:

(1) individuals who accessed or read content related to Roundup® and other weed killer products;

(2) individuals who have downloaded coupons related to Roundup®;

(3) individuals who have watched videos that relate to lawn and gardening maintenance or Roundup® Weed & Grass Killer products;

(4) individuals who have "liked" social media account(s) for Roundup® Weed & Grass Killer products or lawn and garden maintenance;

(5) individuals who have shared or commented on Roundup® Weed & Grass Killer product social media account(s) or lawn and garden maintenance;

(6) individuals who visit English or Hispanic websites;

(7) remarketing across display and social media channels to individuals who have visited the

Settlement Website but did not submit a Claim; and/or

(8) individuals on both desktop and mobile devices.

Select placement strategies will also be used to target high-traffic, premier websites in shopping, sports, weather, entertainment, and local sites. Sites such as WebMD.com, ESPN.com, FoxNews.com, Univision.com and Weather.com are a few of the premier sites that will be used.

20.    The digital notices will have the opportunity to run on thousands of websites through Google Display and Yahoo! Ad Networks, allowing the notices to appear on websites that are relevant to the user. For example, 49 percent of the Target Audience visited YouTube.com, 37 percent visited Weather.com, 24 percent visited WebMD.com, and 17 percent visited ESPN.com.[7]   These sites, and others, will provide an opportunity for Class Members to see the digital notice while they are reading content relevant to them.

21.    In addition to the digital notices described above, P&N will run banner notifications on the top-visited social media sites Facebook and Instagram. These sites represent the leading group of social network sites covering 200 million active users in the United States.[8] Social media encourages users to share information, which can organically raise the reach of the Notice Plan when users share the banner notices with their friends, family, and followers. Notices on Facebook will appear in a user's newsfeed and along the right-side rail.  Instagram ads will appear in a user's feed. Video ads will be included across Facebook and will appear in a user's newsfeed.

22.    A summary of the Digital Banner Notice campaign is as follows:

| Network/Property | Banner Size | Length | Est. Impressions[9] |
|---|---|---|---|
| Google Display & Yahoo Ad Network | Various | 8 weeks | 225,400,000 |
| Facebook & Instagram | Custom | 8 weeks | 98,000,000 |
| TOTAL: | | | 323,400,000 |

23.    Samples of the proposed display and social media notices are attached as **Exhibit D**.

**YouTube**

---

[7] GfK Doublebase 2018.
[8] "Number of mobile phone Facebook user in United States from 2015 to 2020" (eMarketer, Statista 2018), and "Number of Instagram users in the United States from 2015 to 2021" (eMarketer; TechCrunch, Statista 2018).
[9] An impression is defined as the single display of an ad on a web page.

*Lisa Jones et al. v. Monsanto Company, et al.*, No. 4:19-cv-00102-BP
DECLARATION OF BRANDON SCHWARTZ

24.     A 30-second, skippable video notice will be created and targeted to users who search for or watch videos related to Roundup® Weed & Grass Killer products, lawn care maintenance, or gardening. The viewer has the option to skip the video after 5 seconds. This format provides an opportunity to gain a large amount of impressions (defined here as the number of times the video notice will run) while maintaining an efficient budget.

| Property | Format | Length | Est. Impressions |
|---|---|---|---|
| *YouTube* | 30 second video | 8 weeks | 29,400,000 |

## Streaming Radio

25.     Pandora radio has nearly 54 million monthly mobile listeners[10] and more than 90% of listeners use the ad-supported,[11] free version of the product. Additionally, 34% of the Target Audience listens to Pandora and 45% use a streaming radio platform like Pandora.

26.     A 15-second and 30-second radio notice(s) will be developed and targeted to individuals that have shown an interest in weed killer, lawn maintenance, or garden maintenance products. When the radio notice airs, an accompanying banner will appear on users' mobile devices with which users can interact and which will take the listener to the Settlement Website. In addition to the radio notice, an estimated 1.4 million banner impressions will run on users' mobile devices while they listen to music or when they skip a song. The banner may have the opportunity to pop up before the preceding song information is displayed.

| Property | Format | # of Days | Est. Impressions |
|---|---|---|---|
| *Pandora Audio* | 15/30 second audio | 14 | 2,672,728 |
| *Pandora Banner* | TBD | 14 | 1,470,000 |

## Search Advertising

27.     Search-based advertising places a notice in front of users that are actively researching a topic. Utilizing Google Ads, a select list of keywords will be developed that are relevant to the litigation, Roundup® Weed & Grass Killer products, and other weed killer products. When a user enters those

[10] 2019 Claritas Data (Population); Internal Metrics (Uniques).
[11] Pandora Internal Metrics Q4 2018.

*Lisa Jones et al. v. Monsanto Company, et al.*, No. 4:19-cv-00102-BP
DECLARATION OF BRANDON SCHWARTZ

keywords into the Google search bar, a short descriptive notice may appear above the results that would direct users to the Settlement Website.

**Press Release**

28.     A press release will be distributed over PRNewswire's US1 and Hispanic Newslines in substantially the same form as the Summary Notice. The press release will be issued broadly to media outlets, including newspapers, magazines, wire services, television, radio, and online media nationally. Combined, the Newslines distributes to more than 20,000 media outlets in the United States.

**Settlement Website**

29.     P&N will create and maintain a website dedicated to this Settlement. The website address, www.roundupwgksettlement.com, will be included in the Summary Notice and all digital banners will link directly to the Settlement Website. The Summary Notice, along with other relevant documents, will be posted on the Settlement Website, so that Class Members may review and download them.  The Settlement Website will provide the ability to file an online Claim Form, and will include relevant dates, answers to frequently asked questions, instructions for how Class Members may opt-out (request exclusion) from the Settlement, contact information for the Claims Administrator, and other case-related information.

**Dedicated Toll-Free Hotline**

30.     A dedicated toll-free informational hotline will be available 24 hours per day, seven days per week. The hotline will use an interactive voice response ("IVR") system where Class Members can obtain essential information regarding the Settlement and be provided responses to frequently asked questions. Class Members will also have the option to leave a voicemail and receive a call back from the Claims Administrator.

**Requests for Exclusion**

31.     Class Members wishing to exclude themselves may submit their request for exclusion by mail to a dedicated Post Office Box that P&N will maintain. P&N will monitor all mail delivered to that post office box and will track all exclusion requests received.

## CONCLUSION

32.     This method of focused notice dissemination is a measured and targeted approach to provide effective notice in this case. The Notice Plan is estimated to reach at least 80 percent of Class Members with

*Lisa Jones et al. v. Monsanto Company, et al.*, No. 4:19-cv-00102-BP
DECLARATION OF BRANDON SCHWARTZ

an estimated average frequency of 2.28. P&N estimates that the proposed Notice Plan will cost $401,220; this amount is included in the total estimated notice and administration costs described in the Motion for Preliminary Approval (§ II, p. 9-10). In 2010, the Federal Judicial Center issued a *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*. This guide states that, "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70–95%." It is thus my opinion that the Notice Plan is fully compliant with Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 23rd day of March 2020 in Portland, Oregon.

_____

Brandon Schwartz

*Lisa Jones et al. v. Monsanto Company, et al.*, No. 4:19-cv-00102-BP
DECLARATION OF BRANDON SCHWARTZ

# Exhibit A: CV of P&N


# Introduction

Postlethwaite & Netterville, APAC, (P&N) offers technical experience and diverse resources that are unique to the class action settlement administration space.

**Experience**: Since 1999, P&N has successfully administered numerous class action settlements in state court and federal court (including multidistrict litigation). Our team has processed and reviewed claims and managed distributions for settlements involving billions of dollars in settlement funds.

**Breadth, Depth and Flexibility of Resources**: Our approach to settlement administration provides a dedicated core team that is able to draw upon numerous specialized resources across diverse service areas within our firm of over 400 employees as needs arise.

We leverage the knowledge and experience of professionals holding the following designations, among others:

- Juris Doctor (JD)
- Project Management Professional (PMP)
- Certified Public Accountant (CPA)
- Certified Internal Auditor (CIA)
- Certified Information Systems Auditor (CISA)
- Certified Fraud Examiner (CFE)
- Certified in Financial Forensics (CFF)
- Certified Information Systems Security Professional (CISSP)
- Certified Security Engineer (CSE)
- Certified Information Security Manager
- Certified in Risk and Information Systems Control

**Capabilities and Experience Rooted in Quality and Objectivity**: As a 65+ year old accounting and business advisory firm, objectivity, integrity, and quality have been the cornerstones of our sustained success. These principles drive our work product, our decision-making, and our interactions with clients and team members. ***Our teams are well-versed in the development of and adherence to stringent quality assurance and quality control standards across a variety of disciplines.***


# Notable Claims Administration Experience

Our team has significant claims administration experience, including the following notable project experience:

## In Re: Cathode Ray Tube (CRT) Antitrust Litigation (MDL 1917)

**Nature of Work:** In cooperation with our project partner, The Notice Company, Inc., P&N performs claims administration services for indirect purchaser class action settlements in this multidistrict litigation totaling over $619,750,000 to date. The scope of P&N's services includes (1) custom website and database application development and maintenance, (2) claim data acquisition and management, (3) claims processing and validation, (4) claims deficiency and audit processing, (5) quality control and fraud, waste, and abuse monitoring, (6) custom reporting, (7) call center support and claimant communications, (8) claim allocation determination and distribution, and (9) project management services.

## In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico (MDL 2179)

**Nature of Work:** P&N was approved by the United States District Court for the Eastern District of Louisiana to process business economic loss and seafood harvester claims within the Deepwater Horizon Economic and Property Damages Settlement. P&N participated in determining over $1 billion in eligible claims within the first six months of the program and approximately $10 billion to date. P&N committed a significant multi-city team of 400+ accounting and finance professionals to the ongoing effort, providing claim eligibility review, economic damages calculations, and claimant communications for over 100,000 businesses and seafood harvesters with representation from 2,000+ law and accounting firms.

## In Re: Testosterone Replacement Therapy Products Liability Litigation (MDL 2545)

**Nature of Work:** P&N provides claims administration services related to custom technology development, project management, and attorney communications support. In coordination with the Court-appointed Special Master, Randi S. Ellis, P&N has developed secure, customized, web-based technology applications that are the framework for claim filing and document management efforts for over 130 participating law firms. Our claims platform also serves as both the central repository for personal injury claims adjudication and allocation functions of the Special Master.

> "I have worked with P&N on multiple large settlement projects in my role as Special Master. We are currently working together to administer a mass tort settlement where their technology platform has been able to streamline the claims process and securely manage sensitive claimant data. They are always willing to brainstorm with me when I need assistance which is why they have become a trusted partner and my first call! "
>
> *Randi Ellis, Court-Appointed Special Master*



## In Re: E.I. du Pont de Nemours and Company C8 Personal Injury Litigation (MDL 2433)

**Nature of Work:** P&N developed a secure, customized, web-based database application that served as the framework for claim filing and document management efforts for approximately 3,700 personal injury claims. In cooperation with the Special Master, Daniel J. Balhoff, P&N also provided project management services to facilitate the logistics of the claims process life cycle. Our claims database technology also served as both the central repository for claims determinations and allocation reporting to the Plaintiff Steering Committee and Lien Resolution Administrator.

> "P&N was tasked with building out a user friendly settlement submission web-based platform, training the law firms on how it would be used, coordinating with the Special Master and Claims Administrator reviewers, exchanging information with the third party lien resolution group, and providing responsive updates and reporting to the litigation lead counsel and individual participating law firms. P&N did a phenomenal job in all respects.
>
> Throughout the process, P&N provided personalized and immediately responsive service. Reporting was routinely updated and modified based upon new requests from lead counsel and the individual submitting firms were provided one-on-one service when needed. Based on my experiences with P&N, I would certainly recommend them and will actively seek to include project bids from them in any future resolution programs in which I have a part."
>
> *Jon C. Conlin, Plaintiffs' Co-Lead Counsel*

## In Re: FEMA Trailer Formaldehyde Products Liability Litigation (MDL 1873)

**Nature of Work:** P&N provided full scale notice and claims administration services for this multi-settlement MDL involving over $45,000,000 in settlement funds. The scope of P&N's services includes (1) notice administration, (2) custom website and database application development and maintenance, (3) claim data acquisition and management, (4) claims processing and deficiency curing, (5) call center support and claimant communications, (6) claim allocation determination and distribution, and (7) quality control and project management services.

> "In serving as a Court-appointed Special Master, I have worked with P&N's claims administration team on several occasions. I have always found them to be extremely attentive to detail, responsive, and committed to a high quality work product. Furthermore, they are proactive – once I tell them my goals, they come up with creative solutions to get there. The bottom line is that I can trust them to do the job right in a timely and efficient manner."
>
> *Daniel J. Balhoff, Court-Appointed Special Master*


# P&N Claims Administration Experience

## SAMPLE JUDICIAL COMMENTS

- **Edward Makaron et al. v. Enagic USA, Inc**., 2:15-cv-05145 (C.D. Cal.), Judge Dean D. Pregerson on January 16, 2020:

  *The Court makes the following findings and conclusions regarding notice to the Class:*

  *a. The Class Notice was disseminated to persons in the Class in accordance with the terms of the Settlement Agreement and the Class Notice and its dissemination were in compliance with the Court's Preliminary Approval Order;*

  *b. The Class Notice: (i) constituted the best practicable notice under the circumstances to potential Class Members, (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Class Members of the pendency of the Action, their right to object or to exclude themselves from the proposed Settlement, and their right to appear at the Final Approval Hearing, (iii) was reasonable and constituted due, adequate, and sufficient individual notice to all persons entitled to be provided with notice, and (iv) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law.*

- **Kimberly Miller et al. v. P.S.C, Inc., d/b/a Puget Sound Collections**, 3:17-cv-05864 (W. D. Wash.), Judge Ronald B. Leighton on January 10, 2020:

  *The Court finds that the notice given to Class Members pursuant to the terms of the Agreement fully and accurately informed Class Members of all material elements of the settlement and constituted valid, sufficient, and due notice to all Class Members. The notice fully complied with due process, Rule 23 of the Federal Rules of Civil Procedure, and all other applicable law.*

- **John Karpilovsky and Jimmie Criollo, Jr. et al v. All Web Leads, Inc.**, 1:17-cv-01307 (N.D. Ill), Judge Harry D. Leinenweber on August 8, 2019:

  *The Court hereby finds and concludes that Class Notice was disseminated to members of the Settlement Class in accordance with the terms set forth in the Settlement Agreement and that Class Notice and its dissemination were in compliance with this Court's Preliminary Approval Order.*

  *The Court further finds and concludes that the Class Notice and claims submission procedures set forth in the Settlement Agreement fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, were the best notice practicable under the circumstances, provided individual notice to all Settlement Class Members who could be identified through reasonable effort, and support the Court's exercise of jurisdiction over the Settlement Class as contemplated in the Settlement and this Order.*


- ***Paul Story v. Mammoth Mountain Ski Area, LLC,*** No. 2:14-cv-02422 (E.D. Cal.), Judge John A. Mendez on March 13, 2018:

  *The Court finds that the Settlement Administrator delivered the Class Notice to the Class following the procedures set forth in the Settlement Agreement; that the Class Notice and the procedures followed by the Settlement Administrator constituted the best notice practicable under the circumstances; and that the Class Notice and the procedures contemplated by the Settlement Agreement were in full compliance with the laws of the United States and the requirements of due process. These findings support final approval of the Settlement Agreement.*

- ***John Burford, et al v. Cargill, Incorporated,*** No. 05-0283 (W.D. La.), Judge S. Maurice Hicks, Jr. on November 8, 2012:

  *Considering the aforementioned Declarations of Carpenter and Mire as well as the additional arguments made in the Joint Motion and during the Fairness Hearing, the Court finds that the notice procedures employed in this case satisfied all of the Rule 23 requirements and due process.*

- ***In RE: FEMA Trailer Formaldehyde Product Liability Litigation,*** MDL No. 1873, (E.D La.), Judge Kurt D. Engelhardt on September 27, 2012:

  *After completing the necessary rigorous analysis, including careful consideration of Mr. Henderson's Declaration and Mr. Balhoff's Declaration, along with the Declaration of Justin I. Woods, the Court finds that the first-class mail notice to the List of Potential Class Members (or to their attorneys, if known by the PSC), Publication Notice and distribution of the notice in accordance with the Settlement Notice Plan, the terms of the Settlement Agreement, and this Court's Preliminary Approval Order:*

  *(a) constituted the best practicable notice to Class Members under the circumstances;*
  *(b) provided Class Members with adequate instructions and a variety of means to obtain information pertaining to their rights and obligations under the settlement so that a full opportunity has been afforded to Class Members and all other persons wishing to be heard;*
  *(c) was reasonably calculated, under the circumstances, to apprise Class Members of: (i) the pendency of this proposed class action settlement, (ii) their right to exclude themselves from the Class and the proposed settlement, (iii) their right to object to any aspect of the proposed settlement (including final certification of the settlement class, the fairness, reasonableness or adequacy of the proposed settlement, the adequacy of representation by Plaintiffs or the PSC, and/or the award of attorneys' fees), (iv) their right to appear at the Fairness Hearing - either on their own or through counsel hired at their own expense - if they did not exclude themselves from the Class, and (v) the binding effect of the Preliminary Approval Order and Final Order and Judgment in this action, whether favorable or unfavorable, on all persons who do not timely request exclusion from the Class;*



*(d) was calculated to reach a large number of Class Members, and the prepared notice documents adequately informed Class Members of the class action, properly described their rights, and clearly conformed to the high standards for modern notice programs;*

*(e) focused on the effective communication of information about the class action. The notices prepared were couched in plain and easily understood language and were written and designed to the highest communication standards;*

*(f) afforded sufficient notice and time to Class Members to receive notice and decide whether to request exclusion or to object to the settlement.;*

*(g) was reasonable and constituted due, adequate, effective, and sufficient notice to all persons entitled to be provided with notice; and*

*(h) fully satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, including the Due Process Clause, and any other applicable law.*



# Class Action & Mass Tort Administration Experience

P&N provides end-to-end class action claims administration and notice services in connection with lawsuits and settlements programs pending in courts around the United States. Since 1999, P&N has processed billions of dollars in settlement claims, ranging in class size from a few hundred to hundreds of thousands. Our team successfully administers a wide variety of settlements, and our ability to innovate enables us to navigate the complexity of class settlements and legal notice programs.

## CASE EXPERIENCE

Our case experience includes the following:

- In Re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico (MDL 2179)
- In Re: Cathode Ray Tube (CRT) Antitrust Litigation (MDL 1917)*
- In Re: Testosterone Replacement Therapy Products Liability Litigation (MDL 2545)‡
- In Re: E.I. du Pont de Nemours and Company C8 Personal Injury Litigation (MDL 2433)‡
- In Re: FEMA Trailer Formaldehyde Products Liability Litigation (MDL 1873)
- In Re: Chevron Refinery Fire Cases
- Story v. Mammoth Mountain Ski Area, LLC
- Sanchez et al v. Texas Brine, LLC et al.
- John Karpilovsky, et al. v. All Web Leads, Inc.
- Farruggio et al. v. 918 James Receiver, LLC et al.
- Hughes et al. v. AutoZone Parts Inc. et al.
- Howard, et al. v. Union Carbide Corporation
- Duhe, Jr., et al. v. Texaco, Inc., et al.
- Schexnayder Jr, et al. v. Entergy Louisiana, Inc., et al.
- Burford et al. v. Cargill, Incorporated
- Burmaster et al. v. Plaquemines Parish Government, et al.
- Hollis Law Firm ASR Settlement Fund
- Sullivan, et al. v. The Worley Companies, et al.
- In Re: Vulcan Litigation - April 2001 Incidents
- Pierce vs. Olinde's Hardware & Supply Co.
- Noretta Thomas, et al. v. A. Wilbert & Sons, LLC, et al.
- In Re: Honeywell July 2003 Release Settlement
- Travis Cooper, et al. v. Louisiana Department of Public Works
- Neftali Aldana, et al. v. Joiner Liquidating Trust, et al.

- Oldham, et al. v. The State of Louisiana, Through the Department of Health and Hospitals
- In Re: Alliedsignal Southworks Release
- In Re: Cedarcrest Boron Trifluoride Release
- In Re: Kirby Inland Marine, LP (Brusly Barge)
- Wallace Acey, Jr., et al. v. Reddy Ice Corporation
- Mildred Hall, Lee White, Willie Mae Williams, et al. v. Zen-Noh Grain Corporation
- In Re: I-110 South DSI, Inc. Spill
- DSI Chippewa Street Spill
- Georgia Gulf Mass Tort
- Louisiana Norm Site Cleanup
- Louisiana Mobile Home Sales Tax Refund
- PCS Nitrogen - Geismar Release
- Rathborne Settlement Group Escrow Fund
- Vietnamese Fisherman License Refund
- Adriana Garcia, et al. v. Sun West Mortgage Company, Inc.
- United States v. PRG Real Estate Management, Inc.
- Makaron v. Enagic USA, Inc.
- Kimberly Miller, et al. v. P.S.C.,Inc. d/b/a Puget Sound Collections
- Theodore Strong v. Numerica Credit Union
- Aaron Van Fleet, et al. v. Trion Worlds Inc.
- Wilmington Trust TCPA (Snyder, et al. v. U.S. Bank, N.A., et al.)
- Deutsche Bank National Trust TCPA (Snyder, et al. v. U.S. Bank, N.A., et al.

*Services provided in cooperation with The Notice Company, Inc.
‡Services provided in cooperation with the Court-Appointed Special Master


## Exhibit B: CV of Brandon Schwartz



# Brandon Schwartz



Brandon Schwartz is the Director of Notice for P&N Consulting Services Group. He is responsible for developing customized legal notice solutions for clients related to class action notice and claims administration programs.

Brandon has more than 10 years of experience designing and implementing complex notice programs. His knowledge of demographic research, reach and frequency methodology, digital and social media strategies, and Fed R. Civ 23(c)(2) compliance keep clients informed of the best practices in legal notice design. He is the author of several articles pertaining to Rule 23 changes and notice design and implementation.

Brandon has designed and implemented notice campaigns for hundreds of cases in his career. Prior to joining P&N, Brandon was the Director of Notice and Media for a large claims administrator where he was responsible for overseeing cases such as: *In re Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litigation*; *In re Sony PS3 "Other OS" Litigation*; *Gordon v. The Hain Celestial Group et al*; and *Smith, et al. v. Floor & Decor Outlets of America, Inc.*

## EDUCATION & CREDENTIALS

- Bachelor of Science, Marketing, University of Illinois at Chicago
- Bachelor of Science, Management, University of Illinois at Chicago
- Legal Notice Expert

## ARTICLES

- Legal Notice and Social Media: How to Win the Internet
- Rule 23 Changes: Avoid Delays in Class Settlement Approval
- Rule 23 Changes: How Electronic Notice Can Save Money
- Tackling Digital Class Notice with Rule 23 Changes
- What to Expect: California's Northern District Procedural Guidance Changes

## SPEAKING ENGAGEMENTS

- Class Action Law Forum: Consumer Class Actions, San Diego, CA, March 5, 2020
- Class Action Mastery: Best Practices in Claims Settlement Administration, HB Litigation Conference, San Diego, CA, January 17, 2019
- Class Action Mastery: Communication with the Class, HB Litigation Conference, New York, NY, May 10, 2018

**1 |**


## SAMPLE JUDICIAL COMMENTS

- ***Hartig Drug Company Inc., v. Senju Pharmaceutical LTD., and Allergan, Inc.,*** 1:14-cv-00719 (D. Del.), Judge Joseph F. Bataillon, May 3, 2018:

    *The Court approves the proposed notice program, including the Mail Notice and the Publication Notice, attached as Exhibits A and B to the Declaration of Brandon Schwartz of Garden City Group in support of Plaintiff's Unopposed Motion to Distribute Notice to the Settlement Class ("Schwartz Declaration"). The Court further approves the claim form attached as Exhibit C to the Schwartz Declaration. The Court finds that the manner of notice proposed constitutes the best practicable notice under the circumstances as well as valid, due, and sufficient notice to all persons entitled thereto and complies fully with the requirements of the Federal Rule of Civil Procedure 23…*

- ***Gordon v. Hain Celestial Group, et al.,*** 1:16-cv-06526 (S.D.N.Y.), Judge Katherine B. Forrest, September 22, 2017:

    *The form, content, and method of dissemination of the Class Notice given to Settlement Class Members - as previously approved by the Court in its Preliminary Approval Order – were adequate and reasonable, constituted the best notice practicable under the circumstances, and satisfied the requirements of Rule 23 (c) and (e) and Due Process.*

- ***In re: Ductile Iron Pipe Fittings ("DIPF") Indirect Purchaser Antitrust Litigation,*** 3:12-cv-00169 (D.N.J.) Judge Anne E. Thompson, June 8, 2016:

    *Notice of the Settlement Agreements to the Settlement Classes required by Rule 23(e) of the Federal Rules of Civil Procedure, including the additional forms of notice as approved by the Court, has been provided in accordance with the Court's orders granting preliminary approval of these Settlements and notice of the Settlements, and such Notice has been given in an adequate and sufficient manner; constitutes the best notice practicable under the circumstances; and satisfies Federal Rules of Civil Procedure 23(c)(2)(B) and due process.*

- ***In re: Sony PS3 "Other OS" Litigation,*** 4:10-cv-01811 (N.D. Cal.), Judge Yvonne Gonzalez Rogers, June 8, 2018:

    *The Court finds that the notice provisions set forth under the Class Action Fairness Act, 28 U.S.C. § 1715, were complied with in this Action.*

    *The Court finds that the program for disseminating notice to the Class provided for in the Settlement, and previously approved and directed by the Court (the "Notice Program"), has been implemented by the Settlement Administrator and the Parties, and that such Notice Program, including the approved forms of notice, constitutes the best notice practicable under the circumstances and fully satisfied due process, the requirements of Rule 23 of the Federal Rules of Civil Procedure and all other applicable laws.*


## LEGAL NOTICE CASES

| Case Caption | Docket Number | Court |
|---|---|---|
| In re: Sony PS3 "Other OS" Litigation | 4:10-cv-01811 | N.D. Cal. |
| In re: Ductile Iron Pipe Fittings Indirect Purchaser Antitrust Litigation | 3:12-cv-00169 | D.N.J. |
| In re: Ductile Iron Pipe Fittings Direct Purchaser Antitrust Litigation | 3:12-cv-00711 | D.N.J. |
| Hartig Drug Company Inc., v. Senju Pharmaceutical et. al. | 1:14-cv-00719 | D. Del. |
| Gordon v. The Hain Celestial Group, et al. | 1:16-cv-06526 | S.D.N.Y. |
| In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico – Economic and Property Damages Settlement (MDL 2179) | 2:10-md-02179 | E.D. La. |
| In re: Google Inc. Cookie Placement Consumer Privacy Litigation (MDL 2358) | 1:12-md-02358 | D. Del. |
| In re: Pool Products Distribution Market Antitrust Litigation (MDL 2328) | 2:12-md-02328 | E.D. La. |
| In re: Polyurethane Foam Antitrust Litigation (MDL 2196) | 1:10-md-2196 | N.D. Ohio |
| In re: Processed Egg Products Antitrust Litigation (MDL 2002) | 2:08-md-02002 | E.D. Pa. |
| In re: The Flintkote Company and Flintkote Mines Limited | 1:04-bk-11300 | Bankr. D. Del. |
| In re: Prograf (Tacrolimus) Antitrust Litigation (MDL 2242) | 1:11-cv-02242 | D. Mass. |
| Makaron v. Enagic USA, Inc. | 2:15-cv-05145-DDP-E | C.D. Cal. |
| John Karpilovsky, et al. v. All Web Leads, Inc. | 1:17-cv-01307 | N.D. Ill. |
| Hughes et al. v. AutoZone Parts Inc. et al. | BC631080 | Cal. Super. |
| Kimberly Miller, et al. v. P.S.C.,Inc. d/b/a Puget Sound Collections | 3:17-cv-05864-RBL | W.D. Wash. |
| Aaron Van Fleet, et al. v. Trion Worlds Inc. | 535340 | Cal. Super. |
| Wilmington Trust TCPA (Snyder, et al. v. U.S. Bank, N.A., et al.) | 1:16-cv-11675 | N.D. Ill. |
| Deutsche Bank National Trust TCPA (Snyder, et al. v. U.S. Bank, N.A., et al. | 1:16-cv-11675 | N.D. Ill. |
| Adriana Garcia, et al. v. Sun West Mortgage Company, Inc. | BC652939 | Cal. Super. |
| Markos v. Wells Fargo Bank, N.A. | 1:15-cv-01156 | N.D. Ga. |
| Cross v. Wells Fargo Bank, N.A. | 1:15-cv-01270 | N.D. Ga. |
| Ferrick v. Spotify USA Inc. | 1:16-cv-08412 | S.D.N.Y. |
| In re: Parmalat Securities Litigation (MDL 1653) | 1:04-md-01653 | S.D.N.Y. |
| Smith v. Floor and Décor Outlets of America, Inc. | 1:15-cv-04316 | N.D. Ga. |
| Schwartz v. Intimacy in New York, LLC | 1:13-cv-05735 | S.D.N.Y. |
| In re: TRS Recovery Services, Inc., Fair Debt Collection Practices Act Litigation (MDL 2426) | 2:13-md-02426 | D. Me. |
| Young v. Wells Fargo & Co | 4:08-cv-00507 | S.D. Iowa |
| In re: Credit Default Swaps Antitrust Litigation (MDL 2476) | 1:13-md-02476 | S.D.N.Y. |
| Anthony Frank Lasseter et. al. v. Rite-Aid | 09-cv-2013-900031 | Ala. Cir. Ct. |
| Khoday v. Symantec Corp. | 0:11-cv-00180 | D. Minn. |

3 |



| Case Caption | Docket Number | Court |
|---|---|---|
| MacKinnon, Jr v. IMVU | 1-11-cv-193767 | Cal. Super. |
| Ebarle et al. v. LifeLock, Inc. | 3:15-cv-00258 | N.D. Cal. |
| Sanchez v. Kambousi Restaurant Partners ("Royal Coach Diner") | 1:15-cv-05880 | S.D.N.Y. |
| Schwartz v. Avis Rent A Car System | 2:11-cv-04052 | D.N.J. |
| Klein v. Budget Rent A Car System | 2:12-cv-07300 | D.N.J. |
| Pietrantonio v. Kmart Corporation | 15-5292 | Mass. Cmmw. |
| Cox et al., v. Community Loans of America, Inc., et al. | 4:11-cv-00177 | M.D. Ga. |
| Vodenichar et al. v. Halcón Energy Properties, Inc. et al. | 2013-512 | Pa. Com. Pleas |
| State of Oregon, ex. rel. Ellen F. Rosenblum, Attorney General v. AU Optronics Corporation, et al., | 1208 10246 | Or. Cir. |
| Barr v. The Harvard Drug Group, LLC, d/b/a Expert-Med | 0:13-cv-62019 | S.D. Fla. |
| Splater et al. v. Thermal Ease Hydronic Systems, Inc. et al. | 03-2-33553-3 | Wash. Super. |
| Phillips v. Bank of America | 15-cv-00598 | Cal. Super. |
| Ziwczyn v. Regions Bank and American Security Insurance Co. | 1:15-cv-24558-FAM | S.D. Fla |
| Dorado vs. Bank of America, N.A. | 1:16-cv-21147-UU | S.D. Fla |
| Glass v. Black Warrior Electric | cv-2014-900163 | Ala. Cir. |
| Beck v. Harbor Freight Tools USA, Inc. | 15-cv-00598 | Ohio Com. Pleas |
| Ligon v. City of New York, et al. | 12-cv-2274 | S.D.N.Y. |
| Abdellahi, et a., vs. River Metals Recycling, LLC | 13-CI00095 | Ky. Cir. |
| Alegre v. XPO Last Mile, Inc. | 2:15-cv-02342 | D.N.J. |
| Jack Leach et al. v. E.I. du Pont de Nemours and Co. | 01-C-608 | W. Va. Cir. |
| Hayes , et al. v. Citizens Financial Group Inc., et al. | 1:16-cv-10671 | D. Mass. |
| In re: Foreign Exchange Benchmark Rates Antitrust Litigation | 1:13-cv-07789 | S.D.N.Y. |
| Flo & Eddie, Inc. v. Sirius XM Radio, Inc. | 2:13-cv-05693 | C.D. Cal. |
| Cozzitorto vs. American Automobile Association of Northern California, Nevada & Utah | C13-02656 | Cal. Super. |
| Filannino-Restifo, et al. v. TD Bank, N.A. | 0:18-cv-01159 | D.N.J. |
| United States v. Takata Corporation | 2:16-cr-20810 | E.D. Mich. |
| Free Range Content, Inc. v. Google Inc. | 5:14-cv-02329 | N.D. Cal |
| Bautista v. Valero Marketing and Supply Company | 3:15-cv-05557 | N.D. Cal |
| Devin Forbes and Steve Lagace -and- Toyota Canada Inc. | cv-16-70667 | Ont. Super. Ct. |
| Thierry Muraton -and- Toyota Canada Inc. | 500-06-000825-162 | Que. Super. Ct. |
| In re: Residential Schools Class Action Litigation | 00-CV-192059 | Ont. Super. Ct. |
| In re: Tricor Antitrust Litigation | 05-340 | D. Del. |
| Masztal v. City of Miami | 3D06-1259 | Fla. Dist. App. |
| In re: Tribune Company, et al. | 08-13141 | D. Del. |
| Marian Perez v. Tween Brands Inc. | 14-cv-001119 | Ohio Com. Pleas |
| Ferguson v. Safeco | DV 04-628B | Mont. Dist. |
| Williams v. Duke Energy | 1:08-cv-00046 | S.D. Ohio |
| Boone v. City of Philadelphia | 2:05-cv-01851 | E.D. Pa. |
| In re: Lehman Brothers Inc. | 08-13555, 08-01420 | Bankr. S.D.N.Y. |
| In re: Department of Veterans Affairs (VA) Data Theft Litigation (MDL No. 1796) | 1:06-md-00506 | D.D.C. |


| Case Caption | Docket Number | Court |
|---|---|---|
| In re: Countrywide Customer Data Breach Litigation (MDL No. 1998) | 3:08-md-01998 | W.D. Ky. |
| In re: Checking Account Overdraft Litigation (MDL No. 2036) | 1:09-md-02036 | S.D. Fla. |
| In re: Heartland Data Security Breach Litigation (MDL No. 2046) | 4:09-md-02046 | S.D. Tex. |
| Schulte v. Fifth Third Bank | 1:09-cv-06655 | N.D. Ill. |
| Mathena v. Webster Bank, N.A. | 3:10-cv-01448 | D. Conn. |
| Delandro v. County of Allegheny | 2:06-cv-00927 | W.D. Pa. |
| Trombley v. National City Bank | 1:10-CV-00232 | D.D.C. |
| Fontaine v. Attorney General of Canada | 00-CV-192059 CP | Ont. Super. Ct. |
| Marolda v. Symantec Corp. | 3:08-cv-05701 | N.D. Cal. |



# Exhibit C: Summary Notice

# If You Purchased Certain RoundUp® Weed & Grass Killer Products, You May Be Entitled To Payment From A Proposed Class Action Settlement

*The United States District Court authorized this Notice.*
*It is not a solicitation from a lawyer. You are not being sued.*

This Settlement resolves a class action lawsuit, *Lisa Jones et al. v. Monsanto Company, et al.* (No. 4:19-cv-00102-BP), pending in the United States District Court for the Western District of Missouri (the "Court") against Monsanto Company, the manufacturer of the Roundup® Ready-to-Use Weed & Grass Killer III, Roundup® Ready-to-Use Weed & Grass Killer Plus, Roundup® Weed & Grass Killer Super Concentrate, and Roundup® Weed & Grass Killer Concentrate Plus (the "Roundup® Products").

The lawsuit alleges that a statement that appears on the rear label of these Roundup® Products, "targets an enzyme found in plants but not in people or pets," is false and misleading. Monsanto denies these allegations and any wrongdoing. The Settlement avoids costs and risks to you from continuing the lawsuit, provides relief to purchasers of the Roundup® Products during the relevant time period, and releases Monsanto and others from liability for the related claims.

**Who's Included?** You may be a Class Member if you purchased: (1) Roundup® Ready-to-Use Weed & Grass Killer III; (2) Roundup® Ready-to-Use Weed & Grass Killer Plus; (3) Roundup® Weed & Grass Killer Concentrate Plus; or (4) Roundup® Weed & Grass Killer Super Concentrate in packaging with a label that contained the statement "targets an enzyme found in plants but not in people or pets" or a substantially similar statement.

The time period during which purchases are included in this Settlement differs from state to state, depending on each state's statutes of limitations. Visit the Settlement Website at www.RoundupWGKSettlement.com to determine if your purchase is eligible for compensation.

**What Does The Settlement Provide?** The proposed class action Settlement will provide the Class with **$39,550,000 (thirty-nine million five hundred and fifty thousand dollars)** of monetary relief to pay all aspects of the Settlement, including Class Members' claims, notice costs, administration costs, service awards to named plaintiffs, legal expenses, and attorneys' fees. If the Court approves the Settlement and you have not excluded yourself as described below, you will be bound by the Settlement and barred from suing Monsanto and related entities for the claims released in the Settlement. The Released Claims are described in detail at www.RoundupWGKSettlement.com.

**What Are My Rights And Options?**
**Make a Claim.** You must submit a claim by going to www.RoundupWGKSettlement.com and submitting (or printing and mailing) a claim form. Class Members may make a claim by submitting either proof(s) of purchase or an affirmation under penalty of perjury of the identity and quantity purchased. Any person who received a full refund is excluded from the Class definition. The deadline to postmark or submit your claim online is **[Date]**.

**Other Options.** The purpose of this Notice is to inform you of this lawsuit so you can make an informed decision as to whether you should remain in or opt out of this Settlement. **Your legal rights are affected**, and you have a choice to make now. If you do not want to be legally bound by the Settlement, you must exclude yourself by **[Date]**. If you do not exclude yourself, you will release any claims you may have, as more fully described in the Settlement Agreement, available at the Settlement Website. You may remain a Settlement Class Member and object to the Settlement by **[Date]**. You may choose to pay for and be represented by a lawyer who may send the objection for you. The website explains how to exclude yourself or object.

The Court will hold a Final Approval Hearing on [Date] at XX:XX a.m./ p.m. in Courtroom 7A of the Charles Evans Whittaker U.S. Courthouse, 400 E. 9th Street, Kansas City, Missouri 64106 to consider whether to approve the Settlement, attorneys' fees and expenses, and the Class Representative Service Award. You may ask the Court to appear at the Fairness Hearing, but you don't have to do so.

## How Can I Get More Information?

Visit the Settlement Website below, contact the Claims Administrator at (XXX) XXX-XXXX, or contact Class Counsel at (718) 705-4579.

**PLEASE DO NOT CALL OR WRITE THE COURT
FOR INFORMATION OR ADVICE.**

**1-XXX XXX-XXXX  ●  www.RoundupWGKSettlement.com**



# Exhibit D: Display & Social Media Notice Ads



Display Ad - A



Display Ad - B



Display Ad - C



**Class Action Settlement** · Sponsored

Purchasers of Weed & Grass Killer Products May Be Entitled To Payment From A Proposed Class Action Settlement

www.roundupwgksettlement.com
Purchased Roundup® Products?

Learn More

Like  Comment  Share

Facebook - A

---

Instagram

**Class Action Settlement** · Sponsored

Learn More

If You Purchased Roundup® Ready-To-Use Weed & Grass Killer Or Concentrate Products, You May Be Entitled To Payment From A Proposed Class Action Settlement.

Instagram - A



---



**Class Action Settlement** · Sponsored

Purchasers of Weed & Grass Killer Products May Be Entitled To Payment From A Proposed Class Action Settlement

www.roundupwgksettlement.com
Purchased Roundup® Products?

Learn More

Like  Comment  Share

Facebook - B

---

Instagram

**Class Action Settlement** · Sponsored

Learn More

If You Purchased Roundup® Ready-To-Use Weed & Grass Killer Or Concentrate Products, You May Be Entitled To Payment From A Proposed Class Action Settlement.

Instagram - B

---



**Class Action Settlement** · Sponsored

Purchasers of Weed & Grass Killer Products May Be Entitled To Payment From A Proposed Class Action Settlement

www.roundupwgksettlement.com
Purchased Roundup® Products?

Learn More

Like  Comment  Share

Facebook - C

---

Instagram

**Class Action Settlement** · Sponsored



Learn More

If You Purchased Roundup® Ready-To-Use Weed & Grass Killer Or Concentrate Products, You May Be Entitled To Payment From A Proposed Class Action Settlement.

Instagram - C