# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

LISA JONES, *et al*.,

               Plaintiffs,

    v.

MONSANTO COMPANY,

               Defendant.

Case No. 19-0102-CV-W-BP

Hon. Beth Phillips

## <u>MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF UPDATED CLASS ACTION SETTLEMENT, AN AWARD OF ATTORNEYS' FEES, EXPENSES AND CLASS REPRESENTATIVE SERVICE AWARDS</u>

# Table of Contents

I.  INTRODUCTION ..................................................................................................... 1

II. BACKGROUND ....................................................................................................... 2

  A. Factual Background and Procedural History ..................................................... 2

  B. The Instant Class Action ................................................................................... 6

  C. The Proposed Settlement ................................................................................... 8

  D. Notice and Settlement Administration............................................................... 9

III. THE SETTLEMENT WARRANTS FINAL APPROVAL............................................ 10

  A. Legal Standard ................................................................................................ 10

  B. The Settlement Agreement's Terms Are Fair, Reasonable, and Adequate, Taking Into Account the Factors Listed in Federal Rule 23(e)(2)............................................... 12

    1. The Class Representatives and Class Counsel Have Adequately Represented the Class. 12

    2. The Settlement Was Negotiated at Arm's Length. ...................................... 13

    3. The Settlement Agreement Provides Adequate Relief to Class Members, Taking Into Account the Factors Set Out in Rule 23(e)(2)(C)(i-iv). ......................................... 14

      a. The Settlement Agreement Delivers Valuable Relief While Avoiding the Considerable Costs, Risks, and Delays of Trial and Appeal. .......................................... 14

      b. The Settlement Agreement Provides for an Efficient and Effective Method of Notifying and Distributing Relief to the Settlement Class Members. ............................. 19

      c. Plaintiffs' Requested Fee Award Is Reasonable and Well-Earned.......................... 21

      d. Apart From the Settlement Agreement, There Have Been No Other Agreements Made in Connection With the Settlement. ........................................................ 21

    4. The Settlement Agreement Treats Settlement Class Members Equitably Relative to One Another............................................................................................ 21

  C. The Remaining *Van Horn* Factors Also Weigh in Favor of Final Approval................... 22

    1. The Defendant Has the Ability to Pay the Settlement. ................................. 22

    2. The Settlement Agreement Has Received Minimal Opposition.................... 22

  D. The Execution of the Notice Plan Satisfies Due Process.................................. 23

IV. THE ATTORNEYS' FEES REQUESTED, AND THE PROPOSED INCENTIVE AWARDS, ARE REASONABLE........................................................................................ 24

  A. Plaintiffs' Proposed Attorneys' Fees Are Reasonable...................................... 24

V. THE CY PRES DISTRIBUTIONS CONTEMPLATED BY THE SETTLEMENT AGREEMENT ARE FAIR AND REASONABLE..................................................................... 31

VI. CONCLUSION................................................................................................... 33

# Table of Authorities

**CASES**

*Barfield v. Sho-Me Power Elc. Coop.*, No. 2:11-cv-4321NKL, 2015 U.S. Dist. LEXIS 70166 (W.D. Mo. June 1, 2015) ............................................................................. 27

*Barfield v. Sho-Me Power Elec. Coop.*, No. 11-CV-04321-NKL, 2013 U.S. Dist. LEXIS 103997 (W.D. Mo. July 25, 2013) ................................................................. 24

*Beyond Pesticides, et al., v. Monsanto Co.*, No. 1:17-cv-00941 (D.D.C., removed May 18, 2017) ........................................................................................................... 3

*Blair v. Monsanto Co.*, No. 3:17-cv-50123 (N.D. Ill. Apr. 24, 2017) ............................. 3

*Blitz v. Monsanto Co.*, 317 F. Supp. 3d 1042, 1056 (W.D. Wis. 2018)........................... 4

*Blitz v. Monsanto Co.*, No. 17-cv-473, 2019 U.S. Dist. LEXIS 498 (W.D. Wis. Jan. 2, 2019) ..... 5

*Blitz v. Monsanto Co.*, No. 19-8001 (7th Cir. 2019) ...................................................... 5

*Blitz v. Monsanto Co.*, No. 3:17-cv-00473 (W.D. Wis. June 20, 2017) ............................... passim

*Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017) .............................. 15

*Bristol-Myers Squibb v. Superior Court*, 137 S. Ct. 1773 (2017) ................................... 4

*Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017) ....................................... 32, 33

*Carias, et al., v. Monsanto Co.*, No. 15-CV-3677, 2016 U.S. Dist. LEXIS 139883 (E.D.N.Y. Sept. 30, 2016) ............................................................................ 3, 18, 26

*Claxton v. Kum & Go, L.C.*, No. 16-3385, 2015 U.S. Dist. LEXIS 75605 (W.D. Mo. June 11, 2015) ................................................................................................. 30

*Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966 (Cal. Ct. App. 2009) ......................... 16

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) ........................................ 15

*Evans & Green, LLP v. That's Great News, LLC*, No. 11-3340-CV-S-ODS, 2012 U.S. Dist. LEXIS 147775 (W.D. Mo. Oct. 15, 2012)............................................. 23

*Graves v. United Inds. Corp.*, No. 2:17-cv-06983, 2020 U.S. Dist. LEXIS 33781 (C.D. Cal. Feb. 24, 2020) ......................................................................... 33

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir, 1975)............................... 15

*Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239 (E.D.N.Y. 2019) ............................. 15

*Heldt v. Payday Fin., LLC*, No. 3:13-CV-03023, 2016 U.S. Dist. LEXIS 2646 (D.S.D. Jan. 8, 2016) ................................................................................................. 13

*Huyer v. Buckley*, 849 F.3d 395 (8th Cir. 2017) ........................................................... 21

*In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694 (E.D. Mo. 2002). ..................... 22

*In re Centurylink Sales Practices & Secs. Litig.*, 2020 U.S. Dist. LEXIS 227558 (D. Minn. Dec. 24, 2020) ......................................................................... 27, 30

*In re Dollar Corp.*, MDL No. 2709, No. 16-02709-MD-W-GAF, 2017 U.S. Dist. LEXIS 144316 (W.D. Mo. Aug. 3, 2017)............................................................. 16

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019)......................... 17

*In re Roundup Prods. Liab. Litig.*, 358 F. Supp. 3d 956 (N.D. Cal. 2019).................. 26

*In re Roundup Prods. Liab. Litig.*, No. 16-md-02741, 2018 U.S. Dist. LEXIS 114760 (N.D. Cal. July 10, 2018)................................................................................. 26

*In re Sch. Asbestos Litig.*, 789 F.2d 996 (3rd Cir. 1986) .............................................. 16

*In re St. Jude Med., Inc.*, 425 F.3d 1116 (8th Cir. 2005) .............................................. 16

*In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968 (8th Cir. 2018)........... 14, 30

*In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057 (8th Cir. 2013) ................................................................................................. 10

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922 (8th Cir. 2005) ............... 14, 15

*In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980 (D. Minn 2005) ................................................................................................................................................... 27

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ........................... 24, 25

*Kandice Simmons & Tamika v. Enter. Holdings, Inc.*, No. 4:10CV00625, 2012 LEXIS 29366 (E.D. Mo. Mar. 6, 2012) ........................................................................................................... 22

*Keil v. Lopez*, 862 F.3d 685 (8th Cir. 2017) .................................................................... passim

*Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist.*, 921 F.2d 1371 (8th Cir.1990) ............. 10

*Marshall v. Nat'l Football League*, 787 F.3d 502 (8th Cir. 2015) ................................... 21, 22, 23

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ................................................. 16

*McDonald v. Armontrout*, 860 F.2d 1456 (8th Cir. 1988) ......................................................... 29

*Miller v. Ghirardelli Chocolate Co.*, No. 12-cv-04936-LB, 2015 U.S. Dist. LEXIS 20725 (N.D. Cal. Feb. 20, 2015) .................................................................................................................... 32

*Mirzaie, et al., v. Monsanto Co.*, No. CV 15-04361, 2016 U.S. Dist. LEXIS 3816 (C.D. Cal. Jan. 12, 2016) ...................................................................................................................... 2, 18, 26

*Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.*, 213 F.R.D. 537 (W.D. Mo. 2002) ................................................................................................................................................... 12

*Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.*, 339 F.3d 1001 (8th Cir. 2003) 12

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) .............................................. 10, 23

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ............................................................... 23

*Plubell v. Merck & Co.*, 289 S.W.3d 707 (Mo. App. 2009) ....................................................... 16

*Pollard v. Remington Arms Co.*, 320 F.R.D. 198 (W.D. Mo. 2017) ......................................... 23

*Pollard v. Remington Arms Co.*, 896 F.3d 900 (8th Cir, 2018) ................................................. 14

*Powers v. Lycoming Engines*, 328 F. App'x 121 (3rd Cir. 2009) ................................................ 16

*Price v. L'Oreal USA, Inc.*, No. 17 Civ. 614, 2018 U.S. Dist. LEXIS 138473 (S.D.N.Y. Aug. 15, 2018) .......................................................................................................................................... 16

*Professional Firefighters Ass'n, Local 385 v. Zalewski*, 678 F.3d 640 (8th Cir, 2012) .............. 14

*Rawa v. Monsanto Co.*, 2018 U.S. Dist. LEXIS 88401 (E.D. Mo. May 25, 2018) .... 26, 30, 31, 32

*Rawa v. Monsanto Co.*, 934 F.3d 862 (8th Cir. 2019) .............................................. 14, 24, 30, 31

*Roark v. Barnhart*, 221 F. Supp. 2d 1020 (W.D. Mo. 2002) ..................................................... 29

*Schoenbaum v. E.I. Dupont De Nemours & Co.*, No. 4:05-CV-01108, 2009 U.S. Dist. LEXIS 114080 (E.D. Mo. Dec. 8, 2009) .......................................................................................... 11, 12

*Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848 (S.D. Iowa 2020) ........................... 12, 14, 21

*True v. Conagra Foods, Inc.*, No. 07-00770-CV-W-DW, 2011 U.S. Dist. LEXIS 6770 (W.D. Mo. Jan. 4, 2011) ...................................................................................................................... 16

*Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL, 2021 U.S. Dist. LEXIS 12776 (W.D. Mo. Jan. 21, 2021) ............................................................................................................. 30

*Washington v. Monsanto Co.*, No. 2:17-cv-02216 (E.D.N.Y. Apr. 12, 2017) ........................ 3, 25

*Waters v. Home Depot USA, Inc.*, 446 F. Supp. 3d 484 (E.D. Mo. 2020) .................................. 24

*White v. Just Born, Inc.*, No. 2:17-cv-04025-NKL, 2018 U.S. Dist. LEXIS 132466 (W.D. Mo. Aug. 7, 2018) ............................................................................................................................... 16

**STATUTES**

Consumers Legal Remedies Act, Cal. Bus. & Prof. Code § 1750 ................................................. 6

False Advertising Law, Cal. Bus. & Prof. Code § 17500 ........................................................... 2, 6

Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. §§ 136 *et seq.* ......................... 3, 4

Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.020 .............................. 6, 15, 16, 24

New York General Business Law § 349 ........................................................................... 3, 6, 16

New York General Business Law § 350 ........................................................................... 3, 6, 16

Unfair Competition Law, Cal. Civ. Code § 17200 .......................................................................... 6

Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.01 *et seq.* ................................ 4, 5, 15

## OTHER AUTHORITIES

D. Wilf-Townsend, *Did Bristol-Myers Squibb Kill the Nationwide Class Action?*, 129 *Yale Law Journal* (Nov. 19, 2020) ......................................................................................................... 17

## RULES

Fed. R. Civ. P. 23(c) ................................................................................................................. 23

Fed. R. Civ. P. 23(e) ............................................................................................................. passim

Fed. R. Civ. P. 30(b)(6) ............................................................................................................ 5, 6

Fed. R. Civ. P. 45(a)(4) ............................................................................................................... 4

Fed. R. Evid. 408 ....................................................................................................................... 13

## TREATISES

Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002).... 10, 11, 23

Am. Law Inst., Principles of the Law of Aggregate Litigation (2010)....................................... 31

*Manual for Complex Litigation*, § 21.632 (4th ed. 2004) ........................................................... 10

With Defendant Monsanto Company's consent, Plaintiffs move for final approval of a proposed nationwide Settlement Agreement.[1]

## I. **INTRODUCTION**

Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs respectfully submit this Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of the Updated Class Action Settlement, an Award of Attorneys' Fees, Expenses, and Class Representative Service Awards. The Settlement Agreement reached by the parties in this action provides for resolution of the allegations by Plaintiffs and Class Members that Monsanto advertised its Roundup® Weed & Grass Killer products ("Roundup® Products") with a misleading label representation, namely, that Roundup® Products' active ingredient, glyphosate, targets an enzyme found in plants but not in people or pets (the "Challenged Statement"). Upon final approval, the Settlement will provide valuable relief and financial compensation for the Class Members. It will also benefit the general public through its stipulation for the removal of the Challenged Statement from the Roundup® Products' labels. As further detailed herein, the Settlement Agreement that Class Counsel has obtained on behalf of the Class Members is fair and reasonable such that it warrants final approval.

The Notice Plans implemented in this matter have been effective in generating claims and notifying potential claimants. Following the entry of the Court's May 14, 2020 Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Certification of Class for the Purposes of Settlement, and Approval of Form and Matter of Notice (Dkt. No. 53 ("First Preliminary Approval Order")), the Claims Administrator ran the Notice Plan as approved by the Court. Additionally, in light of the COVID-19 pandemic, nationwide protests, and related news,

---

[1] The Settlement Agreement is attached to the Declaration of Kim E. Richman ("Final Richman Decl.") as Exhibit 1. All capitalized terms herein have the meaning specified in the Settlement Agreement.

the Claims Administrator ran a supplemental notice program beginning in mid-July. Plaintiffs also submitted, and the Court approved, a motion for preliminary approval of an Updated Settlement Agreement and Updated Notice Plan, which included an additional 90-day notice plan and supplementary methods of notice and extended the claims period. (*See* Dkt. Nos. 57, 59 ("Updated Preliminary Approval Motion," "Updated Preliminary Approval Order").) The extensive Notice Plan and Updated Notice Plan have successfully stimulated claims activity and exceeded the reach and frequency targets set forth in the Notice Plan. (Post-Notice Declaration of Brandon Schwartz ("Final Schwartz Decl.") ¶ 27.)

The favorable and fair terms of the Settlement Agreement, combined with the efficacy and success of the Notice Plans in apprising Class Members of their rights under the Settlement Agreement, demonstrate that this Settlement Agreement meets or exceeds the applicable standards. In advance of the final fairness hearing set for March 11, 2021, Plaintiffs respectfully submit this memorandum and request that the Court enter an order: (i) granting final approval of the Settlement; (ii) finding that adequate notice has been provided to Settlement Class Members; and (iii) approving Plaintiffs' requested attorneys' fees award, expenses, and class representative awards.

## II.    **BACKGROUND**

### A.    **Factual Background and Procedural History**

As the Court is aware, this settlement arises out a lengthy and continuous series of litigated actions regarding the Challenged Statement. While the instant class action ("*Jones*") began in 2019, years of related litigation preceded it.[2]

---

[2] Unrelated actions concerning the Challenged Statement were brought in April and June of 2015, not by Class Counsel or Plaintiffs here. *See Mirzaie, et al., v. Monsanto Co.*, No. CV 15-04361, 2016 U.S. Dist. LEXIS 3816 (C.D. Cal. Jan. 12, 2016) (alleging violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 ("FAL"));

These related actions began in April 2017 when various attorneys, including some of Class Counsel, filed class actions on behalf of consumers in the Eastern District of New York, *Washington v. Monsanto Co.*, No. 2:17-cv-02216 (E.D.N.Y. Apr. 12, 2017), and the Northern District of Illinois, *Blair v. Monsanto Co.*, No. 3:17-cv-50123 (N.D. Ill. Apr. 24, 2017), which were subsequently voluntarily dismissed and refiled in June 2017 in the Western District of Wisconsin under the caption *Blitz v. Monsanto Co.*, No. 3:17-cv-00473 (W.D. Wis. June 20, 2017). In May 2017, Richman Law & Policy, one of the firms designated as Class Counsel in this action,[3] also filed an action on behalf of two non-profit organizations in the Superior Court of the District of Columbia, which Monsanto removed to federal court. *See Beyond Pesticides, et al., v. Monsanto Co.*, No. 1:17-cv-00941 (D.D.C., removed May 18, 2017).

The litigation in these Related Actions—and particularly the *Blitz* Action—contributed significantly to bringing about the proposed Settlement in this matter. On June 20, 2017, Thomas Blitz of Wisconsin and five out-of-state plaintiffs, representing a putative nationwide class and six putative state sub-classes, filed a complaint against Monsanto[4] in the United States District Court for the Western District of Wisconsin. The *Blitz* complaint alleged that, contrary to the Challenged Statement, the enzyme targeted by glyphosate (5-enolpyruvylshikimate-3-phosphate synthase, or "EPSP synthase") is found in people and their pets. Specifically, the complaint alleges that EPSP

---

*Carias, et al., v. Monsanto Co.*, No. 15-CV-3677, 2016 U.S. Dist. LEXIS 139883 (E.D.N.Y. Sept. 30, 2016) (alleging violation of New York General Business Law ("GBL") §§ 349, 350). In those actions, Monsanto argued that the plaintiffs' state-law claims were preempted by the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136 *et seq.* The *Mirzaie* and *Carias* courts agreed in part and dismissed the plaintiffs' claims for injunctive relief under the California and New York statutes as preempted by FIFRA. *See Mirzaie*, 2016 U.S. Dist. LEXIS 3816, at **6-7; *Carias*, 2016 U.S. Dist. LEXIS 139883, at **19-20. The *Carias* court concluded, however, that FIFRA does ***not*** preempt claims for damages. *See id.* at **18-19.

[3] The Settlement Agreement designates Kim E. Richman of Richman Law Group as Class Counsel. As of January 2021, Richman Law Group changed its name to Richman Law & Policy.

[4] The complaint also named Scotts Miracle-Gro Company ("Scotts") as a defendant. On November 6, 2017, Plaintiff Thomas Blitz, on behalf of a putative Wisconsin-only class, voluntarily dismissed all claims, without prejudice, as to defendant Scotts. This voluntary dismissal followed the execution of a tolling agreement with Scotts and was based upon representations made by Scotts as to its lack of ultimate liability for the claims at issue.

synthase is in bacteria in the gut microbiome and is "critical to the health and wellbeing of humans and other mammals, including their immune system, digestion, allergies, metabolism, and brain function." (*Blitz* Compl. ¶ 3.) The complaint originally sought damages and declaratory and equitable relief for alleged violations of six states' deceptive trade practices laws, breach of express warranty, and unjust enrichment. In light of the Supreme Court's decision in *Bristol-Myers Squibb v. Superior Court*, 137 S. Ct. 1773, 1780 (2017), however, the five non-resident plaintiffs voluntarily dismissed their claims on October 2, 2017, leaving only Plaintiff Blitz's claims, on behalf of the Wisconsin class, for violation of the Wisconsin Deceptive Trade Practices Act ("WDTPA"), breach of express warranty, and unjust enrichment.

Monsanto moved to dismiss the *Blitz* complaint on October 9, 2017, arguing that (1) FIFRA expressly preempted Plaintiff Blitz's claims; (2) the Challenged Statement is not false or misleading as a matter of law; (3) Plaintiff Blitz's claim for breach of express warranty failed for want of proper notice; and (4) Plaintiff Blitz's unjust enrichment claim failed because Plaintiff Blitz purchased Roundup® Products from a retailer and not directly from Monsanto. On April 13, 2018, the Wisconsin federal court rejected Monsanto's arguments that the claims are preempted and that the Challenged Statement on the label is not false or misleading as a matter of law. *See Blitz v. Monsanto Co.*, 317 F. Supp. 3d 1042, 1056 (W.D. Wis. 2018). The court accepted Monsanto's arguments concerning breach of express warranty and unjust enrichment claims, and those claims were dismissed. *See id*. Plaintiff Blitz's WDTPA claim continued on behalf of the putative class.

Class Counsel conducted discovery in the *Blitz* Action, and by agreement of the parties, that discovery also applies to this action. Class Counsel served third-party subpoenas on Scotts, including a Subpoena to Produce Documents pursuant to Rule 45(a)(4) on May 17, 2018. Scotts

served written responses, and Monsanto produced documents obtained from Scotts in response to Plaintiff Blitz's Requests for Production. Class Counsel also served on Scotts a Notice of Subpoena for Testimony pursuant to Rule 30(b)(6) on September 17, 2018. Meanwhile, between March 19 and June 11, 2018, Monsanto produced tens of thousands of documents, which Class Counsel reviewed in full in order to prepare for class certification briefing and depositions, and to provide background for an expert report commissioned by Class Counsel, which was produced to Monsanto on June 15, 2018. On July 13, 2018, Monsanto took the deposition of Plaintiff Blitz's expert on class-wide damages, University of Chicago Booth School of Business Professor Jean-Pierre Dubé. Class Counsel took the deposition of Monsanto's rebuttal expert Dr. Peter Rossi on August 2, 2018, and of Monsanto's survey expert Sarah Butler on August 9, 2018. Class Counsel defended Monsanto's deposition of Plaintiff Blitz on July 17, 2018.

On April 6, 2018, Plaintiff Blitz moved to certify the class of Wisconsin purchasers of Roundup® Products. After extensive briefing—which included expert reports filed on behalf of both Plaintiff Blitz and Monsanto, a hearing, and supplemental briefing—the court denied class certification on January 2, 2019, on the ground that, based on individualized issues of reliance, the WDTPA did not allow for class actions. *See Blitz v. Monsanto Co.*, No. 17-cv-473, 2019 U.S. Dist. LEXIS 498, at *17 (W.D. Wis. Jan. 2, 2019). Plaintiff Blitz filed a petition for interlocutory appeal to the United States Court of Appeals for the Seventh Circuit, which the Seventh Circuit denied on February 4, 2019. *See Blitz v. Monsanto Co.*, No. 19-8001 (7th Cir. 2019). Plaintiff Blitz then opted to continue his action on an individual basis, and to continue to seek relief, including a declaration that Monsanto's marketing practices violate the WDTPA. By stipulation of the parties, the *Blitz* Action was dismissed on March 24, 2020, after the motion for preliminary approval in this case was filed.

## B.    The Instant Class Action

The instant class action began on February 13, 2019 when the Class Plaintiffs filed suit against Monsanto, on behalf of a putative nationwide class and Missouri, New York, and California sub-classes. This class action alleges that, contrary to the representations of the Challenged Statement, glyphosate—the active ingredient in Roundup® Products—***does*** target an enzyme found in people and pets. The Complaint alleges breach of express warranty and unjust enrichment, along with violations of the Missouri Merchandising Practices Act ("MMPA"); New York GBL §§ 349 and 350; and California's Consumers Legal Remedies Act ("CLRA"), FAL, and Unfair Competition Law ("UCL"). (Complaint, Dkt. No. 1.)

Monsanto moved to dismiss Plaintiffs' Complaint, presenting arguments targeting nearly every aspect of the Complaint. On June 13, 2019, following extensive briefing, the Court denied Monsanto's motion to dismiss. (Dkt. No. 41.) While Monsanto's motion to dismiss was pending, the parties began discovery in this matter. On or about April 23 and 24, 2019, the parties exchanged initial disclosures. The parties negotiated and filed, on May 7, 2019, a Joint Proposed Scheduling Order and Discovery Plan. (Dkt. No. 28.) The Proposed Discovery Plan estimated that trial in this matter would range from five to 15 or more days and requested a February 1, 2021 trial date. This Court entered a Scheduling and Trial Order the following day, under which Plaintiffs' class certification expert reports were due October 14, 2019; Defendant's class certification expert reports were due December 16, 2019; Plaintiffs' merit expert reports were due June 15, 2020; Defendant's merit expert reports were due August 10, 2020; and all discovery would be complete by August 31, 2020. Consistent with that schedule, Class Counsel served Plaintiffs' First Set of Requests for Admissions on August 9, 2019. That same day, Class Counsel sent Monsanto a notice of deposition pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.

Shortly after the Court denied Monsanto's motion to dismiss, on June 24, 2019, the parties notified this Court that, pursuant to the Court's mandatory Mediation and Assessment Program, they had jointly designated Professor Eric D. Green of Resolutions, LLC, an experienced mediator, to conduct private mediation. Over the summer, Plaintiffs and Defendant Monsanto separately assembled lengthy mediation statements with exhibits, including reference to the evidence developed through the coordinated multi-case discovery process. (Dkt. 50-1, Declaration of Kim E. Richman ("First Richman Decl.") ¶ 5.)

An all-day mediation took place August 14, 2019 in New York. Following multiple rounds of shuttle diplomacy, as well as face-to-face negotiations among counsel, which closed a significant gap in settlement-value expectations, the parties agreed to a settlement in principle. (First Richman Decl.¶ 12; Dkt. No. 50-3 ("Green Decl.") ¶ 9.)

On March 23, 2020, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement, Certification of Class for the Purposes of Settlement, and Approval of Form and Matter of Notice. (Dkt. No. 49 ("First Preliminary Approval Motion").) The Court granted that motion on May 14, 2020 and entered an order setting forth, among other dates, a 90-day Notice Period. (*See* First Preliminary Approval Order.) On October 19, 2020, the Court approved Plaintiffs' Motion for Preliminary Approval of Updated Class Action Settlement and Approval of Updated Form and Matter of Notice. (Dkt. No. 59). The Updated Preliminary Approval Motion made modest changes to the First Preliminary Approval Motion. (*See infra* & Dkt. No. 57.)

## C. The Proposed Settlement

In the First Preliminary Approval Order, this Court certified the Settlement Class defined as:

> All persons in the United States, who during the Class Period[5] purchased in the United States, for personal or household use and not for resale or distribution, Roundup® Products in packaging whose label contained the statement "targets an enzyme found in plants but not in people or pets" or a substantially similar statement. Any person who previously received a full refund is excluded from the Class definition.

(Dkt. No. 53 ¶ 1.) The terms of the First Settlement Agreement included a $39.55 million non-reversionary common fund (the "Common Fund") which will be used to pay Class Member Claims, Class Notice costs, Claims Administration Expenses, Class Representative Incentive awards, and Class Counsel's Fees. Under the terms of the First Preliminary Approval Motion, Claimants could receive a standardized payment of 10 percent of the weighted average retail price for each unit of the Roundup® Product purchased during the Class Period. As part of the settlement, Monsanto also agreed to remove the Challenged Statement from the Roundup® Products' labels. Any funds remaining after payments to Class Members would be distributed *cy pres* to one or more charitable or tax-exempt organizations, which the parties later identified as the National Consumer Law Center, the National Advertising Division of the Better Business Bureau. (*See* Dkt. 50; Dkt. 52.)

The Updated Preliminary Approval Motion made modest changes to the Settlement Agreement and Notice Plan. These changes included an extension and supplementation of the Notice Plan in light of the ongoing national attention on COVID-19, nationwide protests, and related news; possibility of an upward adjustment of payments to Claimants on a pro rata basis up

---

[5] The "Class Period" refers to the applicable statute of limitations for false advertising or breach of warranty claims (whichever is longer) in the state where each Claimant is domiciled, triggered by the date the Complaint was filed in *Jones*, February 13, 2019. (*See* Settlement Agreement ¶ 15 & Ex. B.)

to 50 percent of the Roundup® Products' weighted average retail prices; an identification of the applicable statutes of limitations for all U.S. territories; and designation of the Center for Consumer Law & Economic Justice as an additional *cy pres* recipient. (*See* Dkt. No. 57, Updated Preliminary Approval Motion.)

### D. Notice and Settlement Administration

After the Court's First Preliminary Approval Order, Postlethwaite & Netterville ("P&N"), as Claims Administrator, executed the Class Notice Plan. The original Notice Period commenced on May 28, 2020 and ended on August 28, 2020. From the outset of the Notice Period, the Claims Administrator ran the Notice Plan as approved by the Court, meeting the reach and frequency targets set forth in the Notice Plan. The Notice Plan included the provision of notice through (1) print media, (2) online display, (3) social media, (4) streaming radio, (5) online video, (6) search advertising, (7) national press release, (8) toll-free settlement hotline, and (9) Settlement Website. (Dkt. No. 50-5, Declaration of Brandon Schwartz ("First Schwartz Decl.") ¶ 12.)

Beginning in mid-July 2020, the Claims Administrator also began a supplemental notice program to amplify notice and stimulate claims activity in light of the COVID-19 pandemic, nationwide protests, and related news. (Dkt. No. 58-2, Declaration of Brandon Schwartz ("Updated Schwartz Decl.") ¶¶ 7-8, 12-22.) The methods in the supplemental notice programs included an enhanced digital-marketing campaign, direct email notice to millions of potential purchasers of Roundup® Products, notice in digital newsletters, and paid placement on leading class-action websites. (*Id.*).

To maximize Class Members' opportunity to recover from the Common Fund, the parties implemented an Updated Notice Plan which ran until January 31, 2021. The Updated Notice Plan continued most of the methods of notice in the original and supplemental notice plans and added several more methods of notice, including television and radio advertisements and direct email

notice to Class Members who had previously submitted or started claims or opted out[6] in response to the initial Notice Plan. (Dkt. No. 58-2, Updated Schwartz Decl. ¶¶ 32-36, 40-47, Ex. M; Final Schwartz Decl. ¶ 8, Ex. B). Additionally, the Updated Class Notice Plan informed Class Members of the potential for pro rata increases to payment amounts. (Updated Schwartz Decl. ¶¶ 27, 31.) Notice has exceeded the reach and frequency targets set by the Notice Plan and has generated more than 240,000 claims. (Final Schwartz Decl. ¶ 21.)

## III.    THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.    Legal Standard

There is a longstanding policy favoring settlements in civil actions. *See Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist.*, 921 F.2d 1371, 1383 (8th Cir.1990) ("The law strongly favors settlements. Courts should hospitably receive them."); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). Settlements are especially encouraged in the class action context where "the uncertainty of outcome, difficulties of proof, [and] length of litigation" means these types of actions "lend themselves readily to compromise." Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002). Indeed, such settlements are "presumptively valid." *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013) (quoting *Little Rock Sch. Dist.*, 921 F.2d at 1391).

In approving Rule 23 class action settlements, courts employ a two-step process. *See Manual for Complex Litigation*, § 21.632 (4th ed. 2004); *see also, e.g., Schoenbaum v. E.I. Dupont De Nemours & Co.*, No. 4:05-CV-01108, 2009 U.S. Dist. LEXIS 114080, at **12-13 (E.D. Mo.

---

[6] Notice was provided to those Class Members who had previously opted out because of the possibility that they could receive a larger monetary award under the terms of the updated Settlement Agreement, which as discussed above, now contemplates a potential pro rata adjustment up to 50% of the Roundup® Products' weighted average retail prices.

Dec. 8, 2009). The first step of this process is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Newberg* § 11.25, at 38-39; *Schoenbaum*, 2009 U.S. Dist. LEXIS 114080, at *13.

If, as is the case here, preliminary approval has been granted and the claims period has concluded, the court reaches the second and final step. Under Federal Rule 23(e)(2), a court may approve a class settlement "after a hearing and only on finding that it is fair, reasonable, and adequate" and after considering the factors listed in Fed. R. Civ. P. 23(e)(2). These factors are:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3).
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). At the preliminary approval stage, this Court found, pursuant to Rule 23(e)(1)(B), that the Settlement Agreement satisfied all of the above factors. Plaintiffs briefly revisit the factors herein, *see infra*, in light of the progress made with notice and the administration of Claims to date.

In making a holistic determination about whether a settlement is fair, reasonable, and adequate, courts in the Eighth Circuit also consider several factors arising from *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988). These factors are (1) "the merits of the plaintiff's case, weighed against the terms of the settlement"; (2) "the defendant's financial condition"; (3) "the complexity and expense of further litigation"; and (4) "the amount of opposition to the settlement."

*Id*. The *Van Horn* factors substantially overlap with those listed in Rule 23. Indeed, courts in this Circuit have held that the first and third *Van Horn* factors can be properly assessed alongside Federal Rule 23(e)(2)(C)(i) due to their similarities. *See, e.g.*, *Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 861 (S.D. Iowa 2020) (noting that analysis of Federal Rule 23(e)(2)(C)(i) "will necessarily include analysis of two related *Van Horn* Factors: 'the merits of the plaintiff's case, weighed against the terms of the settlement' and 'the complexity and expense of further litigation'"). In line with that observation, Plaintiffs integrate consideration of *Van Horn* factors (1) and (3) in Section III(B)(3)(i). The remaining two *Van Horn* factors are discussed separately.

As detailed below, a consideration of the relevant codified and common law factors demonstrates that they weigh in favor of granting final approval to the Settlement Agreement.

**B.      The Settlement Agreement's Terms Are Fair, Reasonable, and Adequate, Taking Into Account the Factors Listed in Federal Rule 23(e)(2).**

**1.      The Class Representatives and Class Counsel Have Adequately Represented the Class.**

The adequacy requirement—that the representative parties will fairly and adequately protect the interests of the class—is met if (1) "the plaintiff's attorney is qualified, experienced, and will competently and vigorously prosecute the suit" and (2) "the interest of the class representative is not antagonistic to or in conflict with other members of the class." *Schoenbaum*, 2009 U.S. Dist. LEXIS 114080, at *27; *see also Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.*, 213 F.R.D. 537, 544 (W.D. Mo. 2002), *aff'd*, 339 F.3d 1001 (8th Cir. 2003).

Class Counsel are adequately representing the Proposed Class Members. Plaintiffs' lead counsel have extensive experience with complex litigation, including class-action litigation, and with class notice, class administration, and other relevant issues. (First Richman Decl. ¶¶ 19, 20.) Moreover, Plaintiffs' lead counsel have significant subject-matter expertise in consumer-

protection litigation concerning glyphosate, the subject of the Challenged Statement. (*Id.* ¶ 21.) Class Counsel have engaged in significant discovery, including expert discovery; have compiled and reviewed thousands of pages of documents; have successfully defended challenges to Plaintiffs' claims in multiple courts; and as evidenced by the Updated Settlement Agreement and Updated Notice Plan, have continued to negotiate on behalf of Class Members to secure the most robust relief and effective notice possible. Because Class Counsel are equipped to represent Plaintiffs, and have been doing so vigorously, and because there are no conflicts between Plaintiffs and the proposed class, the adequacy requirement is satisfied.

### 2. The Settlement Was Negotiated at Arm's Length.

As explained in more detail in Plaintiffs' First Motion for Preliminary Approval, this settlement was fairly negotiated at arm's length. The Settlement follows extensive litigation, investigation, motion practice, discovery, and negotiation. To reach this outcome for purchasers of Roundup® Products, in this and related actions, Class Counsel filed multiple complaints, defeated multiple motions to dismiss, fully briefed class certification in Wisconsin, filed a petition for interlocutory appeal of the denial of that motion, took and defended depositions, reviewed tens of thousands of pages of documents, and engaged in expert discovery. (First Richman Decl. ¶ 6.)

Thereafter, this settlement was reached via a lengthy mediation session, preceded by Fed. R. Evid. 408 exchanges of even more information, and assisted by a mutually selected professional mediator with years of experience in high-value litigation. (*Id.* ¶ 4.) "Courts are less likely to find collusion when a settlement agreement was preceded by a significant period of litigation or negotiations were conducted by a third-party mediator." *Heldt v. Payday Fin., LLC*, No. 3:13-CV-03023, 2016 U.S. Dist. LEXIS 2646, at *19 (D.S.D. Jan. 8, 2016) (citation omitted). Consequently, this Settlement Agreement was demonstrably negotiated at arms' length.

3. **The Settlement Agreement Provides Adequate Relief to Class Members, Taking Into Account the Factors Set Out in Rule 23(e)(2)(C)(i-iv).**

   a. **The Settlement Agreement Delivers Valuable Relief While Avoiding the Considerable Costs, Risks, and Delays of Trial and Appeal.**

Rule 23(e)(2)(C)(i) states that the Court, in assessing the adequacy of the relief provided for the class, should take into account "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). This analysis incorporates two factors enumerated by the Eighth Circuit in *Van Horn,* 840 F.2d at 607: the merits of the plaintiffs' case, and the complexity of the litigation. *See Swinton*, 454 F. Supp. 3d at (stating that 23(e)(2)(C)(i) "will necessarily include analysis of two related *Van Horn* Factors: 'the merits of the plaintiff's case, weighed against the terms of the settlement' and 'the complexity and expense of further litigation'"); *see also, e.g., In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005) (noting that "barring settlement, this case would 'likely drag on for years, require the expenditure of millions of dollars, all while the class members would receive nothing'").

An adequate settlement is not a complete victory, but a reasonable compromise. *See, e.g., Rawa v. Monsanto Co.*, 934 F.3d 862, 869 (8th Cir. 2019) ("[A] settlement is a product of compromise and the fact that a settlement provides only a portion of the potential recovery does not make such settlement unfair, unreasonable or inadequate[.]") (quoting *Keil v. Lopez*, 862 F.3d 685, 699 (8th Cir. 2017)). The most important factor is the strength of the plaintiffs' case, on the merits, balanced against the amount offered in settlement. *See id.* at 868; *Pollard v. Remington Arms Co.*, 896 F.3d 900, 907 (8th Cir, 2018); *In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 978 (8th Cir. 2018); *Professional Firefighters Ass'n, Local 385 v. Zalewski*, 678 F.3d 640, 648 (8th Cir, 2012). The more obstacles existing between plaintiffs and ultimately

successful litigation, the more heavily the court will weigh the benefits obtained through settlement. *See, e.g.*, *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1177 (8th Cir. 1995). Despite this, assessing settlement does not require the Court to reach any ultimate conclusions of fact or law underlying the merits of the dispute. *See, e.g.*, *DeBoer*, 64 F.3d at 1178; *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123-24 (8th Cir, 1975). Nevertheless, the Court may take into account decisions already rendered when assessing adequacy of the settlement. *See, e.g.*, *Keil*, 862 F.3d at 693; *In re Wireless*, 396 F.3d at 932-33.

The gravamen of this case is that purchasers of Roundup® Products were deceived by a label representation that Roundup's active ingredient "targets an enzyme found in plants but not in people or pets." Plaintiffs have always believed that they have a strong case based on either (1) literal falsity, or (2) tendency to mislead. Indeed, both here and in the *Blitz* action, Plaintiffs defeated motions to dismiss. On the other hand, Monsanto vigorously defends the Challenged Statement on a factual basis, and past litigation as well as the history of this case demonstrate the pitfalls Plaintiffs face in pursuing recovery upon verdict:

**Challenges to Class Certification.** After extensive discovery, including expert reports and depositions, and multiple rounds of briefing, class certification was denied in the *Blitz* action. The court held that, because of individualized issues of reliance, the WDTPA does not allow for a class action. *See Blitz*, 2019 U.S. Dist. LEXIS 498, at *17. Plaintiffs' position is that, unlike the WDTPA, neither the MMPA nor the New York and California statutes (under which these representative plaintiffs proceed) preclude class actions. *See, e.g.*, *Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017) (affirming certification of 11 statewide classes, including under California consumer-protection law, of cooking oil purchasers who alleged they were deceived by "100% Natural" labels); *Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239 (E.D.N.Y. 2019)

(granting certification to class of infant formula purchasers alleging misleading marketing, because N.Y. GBL §§ 349 and 350 do not require individualized reliance); *Plubell v. Merck & Co.*, 289 S.W.3d 707 (Mo. App. 2009) (affirming certification of MMPA class of purchasers alleging that manufacturer failed to disclose and actively concealed risks of pharmaceutical drug). But Monsanto contests this position,[7] and class certification would likely entail the same kinds of expert discovery and briefing conducted in Wisconsin, as well as a hearing on the issue of overcoming potential individualized issues, the outcome of which is by no means certain.

In addition, Plaintiffs seek certification of a ***nationwide*** class and, if this issue were contested, Monsanto would request briefing on the consumer-protection law specific to every state[8]—a mammoth project—and argue that variances in various states' laws preclude certification of a nationwide class. *See, e.g.*, *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120 (8th Cir. 2005) (reversing nationwide class certification because district court failed to conduct adequate analysis of conflicts of law); *True v. Conagra Foods, Inc.*, No. 07-00770-CV-W-DW, 2011 U.S. Dist. LEXIS 6770, at *19 (W.D. Mo. Jan. 4, 2011) (rejecting argument that Missouri law should apply to claims of nationwide class); D. Wilf-Townsend, *Did Bristol-Myers Squibb Kill the Nationwide*

---

[7] Monsanto argues that individualized issues of reliance or exposure bar Plaintiffs from proceeding on a class wide basis under the MMPA and the New York and California statutes. *See, e.g.*, *Price v. L'Oreal USA, Inc.*, No. 17 Civ. 614, 2018 U.S. Dist. LEXIS 138473, at *22 (S.D.N.Y. Aug. 15, 2018) (declining to apply presumption of reliance where "customers may have been drawn to the product for numerous different reasons"); *White v. Just Born, Inc.*, No. 2:17-cv-04025-NKL, 2018 U.S. Dist. LEXIS 132466, at *9 (W.D. Mo. Aug. 7, 2018) (while reliance is not required per se under MMPA, stating in slack-fill case that "the question of whether any MMPA violation injured each class member will require individualized inquiry"); *Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 979 (Cal. Ct. App. 2009) (finding no presumption of reliance when consumers not uniformly exposed to advertising materials before purchase).

[8] *See In re Dollar Corp.*, MDL No. 2709, No. 16-02709-MD-W-GAF, 2017 U.S. Dist. LEXIS 144316, at **29-30 (W.D. Mo. Aug. 3, 2017) ("[S]uch a course follows the majority of guidance from the various circuit courts of appeal, which caution that plaintiffs seeking to certify a nationwide class 'must credibly demonstrate, through an ***extensive analysis*** of state law variances, that class certification does not present insuperable obstacles.'") (internal quotes omitted to *Powers v. Lycoming Engines*, 328 F. App'x 121, 124 (3rd Cir. 2009), and *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1010 (3rd Cir. 1986)). *Cf. Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) ("Under the facts and circumstances of this case, we hold that each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place.").

*Class Action?*, 129 *Yale Law Journal* (Nov. 19, 2020). The existence of a nationwide class does not, however, hinder certification for **settlement** purposes—a particular benefit to Class Members of the Settlement Agreement the parties have reached. *See, e.g.*, *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019) (affirming certification of nationwide settlement class in multidistrict litigation alleging misrepresentations about fuel economy).

**Expert and Other Discovery.** Despite the early stage of litigation in this case and in the *Blitz* Action, Plaintiffs have received tens of thousands of pages of discovery documents from Monsanto, which were reviewed *in toto* and used in the assembly of Plaintiffs' mediation statement. Even that massive undertaking would pale in comparison to the scientific and other expert discovery that would be necessary if Plaintiffs were to litigate to trial. Issues to be heard by the trier of fact would include (1) whether EPSP synthase, the enzyme targeted by the active ingredient in Roundup® Products (glyphosate), is found "in" people and pets by virtue of the bacteria that form the animal microbiome; (2) whether, from a scientific perspective, the Challenged Statement can be deemed literally false; (3) if not, how consumers interpreted the Challenged Statement; (4) the value that consumers placed upon the Challenged Statement[9]; and (5) in the case of punitive damages, Monsanto's corporate knowledge of the truth or falsity of the Challenged Statement. Even if this resulted in a verdict for Plaintiffs (which is not at all certain), this time outlay by attorneys and other professionals would dip deeply into the potential recovery for Class Members and delay that recovery by years.

---

[9] For example, in support of certification in the *Blitz* matter, Plaintiffs submitted the expert report of Professor Jean-Pierre Dubé, of the University of Chicago Booth School of Business, setting out a Random Coefficient Demand Estimation (RCDE) framework for assessing the value consumers place upon the Challenged Statement. Carrying out the study proposed by Professor Dubé would require both time and extensive work by his team of researchers. (Final Richman Decl. ¶ 4.) That expense would address just one issue before the trier of fact.

**Limited Potential Recovery.** Other consumers (not representative parties in this action) have tried to counter the Challenged Statement through litigation. *See, e.g.*, *Carias*, 2016 U.S. Dist. LEXIS 139883, at *15 (putative class action on behalf of persons alleging product-liability claims based on Roundup targeting human gut bacteria, and seeking damages for personal injury); *Mirzaie*, 2016 U.S. Dist. LEXIS 3816, at *2 (putative class action alleging violation of California False Advertising Law based on Challenged Statement and seeking injunctive relief). Those actions fell to federal preemption arguments, based on the type of relief sought, and to the mire of competing scientific studies on whether the Roundup® Products cause personal injury. In light of such precedent, Plaintiffs here narrowly crafted their Complaint and requested no injunctive relief or personal-injury damages—seeking only declaratory relief and monetary recovery based on purchase price, clearing a path for potential success but limiting the total potential recovery. Because Plaintiffs do not allege the Roundup® Products to be wholly without value—as weed killers, the Roundup® Products killed weeds—recovery per plaintiff was unlikely to approach the full purchase price of the Roundup® Products, which sold between $3.73 and $106.29 (weighted retail averages).

Therefore, if Plaintiffs were able to achieve multi-state or nationwide class certification (an uncertain outcome) and litigate this case through trial (and very likely appeal, given the vigor with which Monsanto opposes the claims), their ***best-case*** recovery would most likely be limited to a fraction of the purchase price,[10] or in certain states, to three times that amount.[11] In contrast to this perilous path to small recovery, Plaintiffs and Monsanto have reached an agreement that provides Class Members with as much as $1.87 to $53.15 recovery per unit purchased, nationwide,

---

[10] As noted in the motion for preliminary approval, Plaintiffs believe the best-case damages would amount to between 7.9% and 15.9% of the purchase price. ECF No. 50 at 24-25.

[11] The consumer-protection laws of Alaska, Colorado, Hawaii, Idaho, Indiana, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Ohio, and Texas include provisions for treble damages.

amounting to 50 percent of the weighted average retail prices of the products purchased. (Final Richman Decl. ¶ 5.) This recovery is available immediately, without waiting years for discovery, expert motions, consumer surveys, trial, and appeal. The benefit to Class Members far outweighs the prospects and risks of prolonged recovery. (*Id.* ¶ 6.) According to the research of Plaintiffs' counsel, at the time of mediation, when agreement was reached, this settlement was the largest ever in a consumer-packaged-goods case alleging marketing deception. (*Id.* ¶ 7.) In addition, as part of the Settlement Agreement, Monsanto has committed to removing the Challenged Statement from the packaging of Roundup® Products, obviating what Plaintiffs contend is a possibility of consumer confusion in the future. This is a form of relief that would not have been available in the litigation.

### b. The Settlement Agreement Provides for an Efficient and Effective Method of Notifying and Distributing Relief to the Settlement Class Members.

Pursuant to the Court's First and Updated Preliminary Approval Orders, notice and administration have been carried out by nationally recognized notice and claims administrator, P&N, subject to the Parties' supervision. To maximize reach to potential Class Members, P&N has carried out several notice programs. The First Notice Period commenced on May 28, 2020 and ended on August 28, 2020. The First Notice Plan included the provision of notice through (1) print media, (2) online display, (3) social media, (4) streaming radio, (5) online video, (6) search advertising, (7) national press release, (8) toll-free settlement hotline, and (9) Settlement Website. (First Schwartz Decl. ¶¶ 12, 17-22). Beginning in mid-July 2020, the Claims Administrator also began running a supplemental notice program to amplify notice and stimulate claims activity, in light of the COVID-19 pandemic, nationwide protests, national turmoil, and related news. (Updated Schwartz Decl. ¶¶ 7-8, 12-22). The methods in the supplemental notice programs

included an enhanced digital marketing campaign, direct email notice to millions of potential purchasers of the product, notice in digital newsletters, and paid placement on leading class-action websites. (*Id.*).

Further, to maximize the ability of Class Members to recover from the Common Fund, the parties implemented an additional Updated Notice Plan with another 90-day notice period which ran until January 31, 2021. The Updated Notice Plan continued most of the methods of notice in the original and supplemental notice plans while also adding methods, including direct email notice to certain known Class Members and television and radio advertisements. (Updated Schwartz Decl. ¶¶ 32-26, 40-47; Final Schwartz Decl. ¶¶ 8, 11-12.) Additionally, the Updated Class Notice Plan informed Class Members of the potential for pro rata increases to payment amounts. (*Id.* ¶¶ 27, 31.)

The implementation of the Notice Plans has been successful in stimulating claims activity and have exceeded the reach and frequency targets set forth in the Notice Plan. (Final Schwartz Decl. ¶ 25). As of February 25, 2021, there have been 593,864 unique visitors to the settlement website and as of as of February 23, 2021, there have been 645 calls to the settlement hotline. (*Id.* ¶¶ 19-20.)

P&N has effectively administered the claims process for the benefit of the Settlement Class. P&N reviewed more than 285,399 Claim Forms, from which it identified and culled 43,125 duplicative or deficient claims. (*Id.* ¶ 22.) Through these efforts, P&N has ensured that the full extent of the monetary relief is reserved for the 242,312 non-duplicative, valid claims timely submitted by Class Members. In sum, P&N's exemplary efforts have succeeded in fulfilling Rule 23's goals of fairly apprising Settlement Class Members of a potential settlement and their rights thereunder.

### c. Plaintiffs' Requested Fee Award Is Reasonable and Well-Earned.

Monsanto has agreed not to object to or oppose an application by Counsel for fees and expenses up to 25% of the full amount of the amount available to the Class from the Common Fund. Class Members were notified about these proposed fees, and no Class Member has objected to the fees. Moreover, this fee amount is well within the range approved by courts in this Circuit. *See, e.g.*, *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (finding that courts in the Eighth Circuit have "frequently awarded attorney fees up to 36% in class actions"). Class Counsel have expended significant time and effort in litigating on behalf of the Class over a period of four years, have succeeded repeatedly on difficult legal issues, and have secured extraordinary relief for the Class. The reasonableness of Plaintiffs' requested fee award is discussed at length in Section IV, *infra*.

### d. Apart From the Settlement Agreement, There Have Been No Other Agreements Made in Connection With the Settlement.

As stated in Plaintiff's Motion for Preliminary Approval, with respect to the final subfactor of Rule 23(e)(2)(C), there are no side agreements to be identified under Rule 23(e)(3).

### 4. The Settlement Agreement Treats Settlement Class Members Equitably Relative to One Another.

It cannot be disputed that the Settlement Agreement treats Class Members equitably relative to each other. Although "[t]here is no requirement that all class members in a settlement be treated *equally*," *Swinton*, 454 F. Supp. 3d at 875 (citing *Marshall v. Nat'l Football League*, 787 F.3d 502, 510 (8th Cir. 2015)), that is essentially what the Settlement Agreement provides. Specifically, each Class Member who submits a valid claim will receive at least 10 percent of the weighted average retail price of the particular Roundup® Product or Products he or she purchased.

Should the total value of claims fall short of the amounts available in the Common Fund, payments to Claimants will be increased pro rata up to an amount not to exceed 50 percent of the weighted average retail price of the Products purchased. Given that this upward adjustment will be applied pro rata, Class Members will necessarily be treated equitably relative to each other.

### C. The Remaining *Van Horn* Factors Also Weigh in Favor of Final Approval.

#### 1. The Defendant Has the Ability to Pay the Settlement.

Given Monsanto's size and financial stability, there is "no indication that Defendant[] will be unable to pay, or incur undue hardship as a result of the settlement." *Kandice Simmons & Tamika v. Enter. Holdings, Inc*., No. 4:10CV00625, 2012 LEXIS 29366, at *10 (E.D. Mo. Mar. 6, 2012). Further, even if Monsanto is able to afford a greater settlement, "given the substantial risks and obstacles faced by the classes in proceeding to trial . . . such factor does not weigh against approving the settlement." *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 702 (E.D. Mo. 2002). And while Monsanto's "good financial standing . . . would permit it to adequately pay for its settlement obligations," it could just as easily use those funds to "continue with a spirited defense in the litigation." *See Marshall*, 787 F.3d at 512; *see also Keil*, 862 F.3d at 697 (finding this factor neutral where there was "no evidence in the record calling [defendant's] financial condition into question").

#### 2. The Settlement Agreement Has Received Minimal Opposition.

The final *Van Horn* factor considers "the amount of opposition to the settlement." *Van Horn*, 840 F.2d at 607. Given the likely size of this Class, there have been very few persons opting out. To date, there have been 366 opt-outs, relative to more than 240,000 claims. Although it is difficult to accurately estimate the size of the Class given a lack of direct data available on Class Members' purchases, those opt-outs pale in comparison to the claim numbers. Moreover, it is

possible that most or all of these opt-outs were made out of an abundance of caution by individuals looking to preserve personal-injury rights against Monsanto in light of the well-publicized litigation over the alleged contribution of Roundup® Products to cancer. A court may consider whether the number of people opposing is large when compared to the class as a whole. *See Newberg* § 11:48; *see also, e.g.*, *Pollard v. Remington Arms Co.*, 320 F.R.D. 198, 220 (W.D. Mo. 2017) ("The Court finds the small amount of opposition from purported class members weighs in favor of approving the settlement."). As a whole, the amount of opposition to this settlement is minuscule, especially in light of the fact that the Eighth Circuit has "approved class-action settlements even when almost half the class objected to it." *Marshall*, 787 F.3d at 513.

### D. The Execution of the Notice Plan Satisfies Due Process.

Notice must satisfy "the broad 'reasonableness' standards imposed by due process." *Evans & Green, LLP v. That's Great News, LLC*, No. 11-3340-CV-S-ODS, 2012 U.S. Dist. LEXIS 147775, at *12 (W.D. Mo. Oct. 15, 2012). These broad standards stipulate that notice must contain relevant information in plain, easily understood language, including the nature of the action, the class definition(s), the claims, and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii); *see also Petrovic*, 200 F.3d at 1153. Notice, however, need not mean actual notice to every individual; instead, "notice must be the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (internal quotations and citation omitted). This evaluation is therefore contextual and recognizes that "[w]hat constitutes the best notice practicable under the circumstances depends on several factors, including the size of the class, whether the class members can be easily identified, and the probability that notice will reach the intended persons." *Barfield v. Sho-Me Power Elec. Coop.*,

No. 11-CV-04321-NKL, 2013 U.S. Dist. LEXIS 103997, at *48 (W.D. Mo. July 25, 2013) (citation omitted).

The extensive and multi-pronged Notice Plans that have been implemented here satisfy due process. As set forth in detail in Section III(B)(3)(ii), *supra*, P&N implemented the Notice Plans, which included short and long form notice, digital newsletter notice, sponsored search advertising, television and radio notice, featured notice on third-party class action settlement websites, direct email notice to potential purchasers, and a dedicated settlement hotline and website. (*See* Updated Schwartz Decl., ¶¶ 5-48). These methods, which were the best practicable notice under the circumstances here and duly executed by P&N, satisfy due process.

## IV. THE ATTORNEYS' FEES REQUESTED, AND THE PROPOSED INCENTIVE AWARDS, ARE REASONABLE.

### A. Plaintiffs' Proposed Attorneys' Fees Are Reasonable.

"A class-action MMPA case involves some measure of 'risk and complexity' that often generates considerable fees." *Waters v. Home Depot USA, Inc.*, 446 F. Supp. 3d 484, 491 (E.D. Mo. 2020). The district court has discretion to use either a lodestar or a percentage-of-the-fund method in determining an appropriate recovery. *See Rawa*, 934 F.3d at 870. Reasonableness of the requested award is evaluated by considering, to the extent relevant, the twelve factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Rawa*, 934 F.3d at 870; *see also, e.g.*, *Keil*, 862 F.3d at 701 ("It is within the discretion of the district court to choose which method to apply, as well as to determine the resulting award.").

Plaintiffs' counsel, unopposed by Monsanto, have requested fees assessed by the percentage-of-the-benefit method, to be set at 25% of the monetary common fund.[12] The *Johnson* factors to determine the reasonableness of this request are as follows, *see* 488 F.2d at 719-20:

- **The time and labor required.**

From the April 2017 filing of the *Washington v. Monsanto* matter in the Eastern District of New York (*see supra*, Section II.A, Factual Background and Procedural History) through this Motion for Approval of Updated Class Action Settlement, the time and labor invested by attorneys and legal staff totals multiple thousands of hours. The effort encompasses investigating the case, including consultations with scientists working in the area of glyphosate and its effects on humans; developing a novel case theory to succeed where others have not, avoiding preemption and procedural roadblocks; coordinating putative class representatives nationwide, in their chosen fora, and two nonprofit organizations pursuing litigation in the District of Columbia; defending multiple motions to dismiss; working with leading economists to create a workable class damages model; countering Monsanto's expert reports and taking expert depositions; defending Blitz at deposition; briefing class certification; reviewing, understanding, and cataloguing tens of thousands of pages of documents produced by Monsanto; and distilling all relevant facts and law into a single statement to apprise fully the mediator and his team. (Final Richman Decl. ¶ 8.) The successful mediation and Settlement would not have been possible without this work, cooperatively undertaken by multiple law firms. (*Id.* ¶ 9.)

- **The novelty and difficulty of the questions.**

As the Court is aware, litigation concerning the health effects of glyphosate (the active ingredient in Roundup® Products) is widespread and ongoing. *See, e.g.*, *In re Roundup Prods.*

---

[12] When the Court uses the percentage-of-the-benefit method, it is not required to cross-check it against the lodestar method. *Keil*, 862 F.3d at 701.

*Liab. Litig.*, 358 F. Supp. 3d 956, 957 (N.D. Cal. 2019); *In re Roundup Prods. Liab. Litig.*, No. 16-md-02741, 2018 U.S. Dist. LEXIS 114760, *184 (N.D. Cal. July 10, 2018). Most of those cases stalled for months or years in a global resolution process, or on appeal following verdict. Class Counsel here forged a path to comparatively swift relief for consumers who may now have concerns about their Roundup® Products but are not pursuing personal injury claims. As set forth below (Section IV.A.3), the litigation strategy was untested, risky, and ultimately successful in bringing about this Settlement. *Cf. Rawa v. Monsanto Co.*, 2018 U.S. Dist. LEXIS 88401, at **26-27 (E.D. Mo. May 25, 2018) ("Plaintiffs' counsel took on a case with little precedent and handled the *Martin* case in a speedy and efficient manner, including in obtaining class certification within a little over five months of filing the lawsuit.").

- **The skill requisite.**

In *Mirzaie*, 2016 U.S. Dist. LEXIS 3816, at *2 (not brought by class counsel here), a putative class sought injunctive relief against Monsanto based on the same Challenged Statement on the label of Roundup® Products; their case was dismissed on preemption grounds. In *Carias*, 2016 U.S. Dist. LEXIS 139883, *1 (not brought by class counsel here), a putative class sought recovery based on the same Challenged Statement, under a theory of personal injury relating to glyphosate's effect on the human microbiome; they were not able to achieve class-wide recovery. Thus, at the time Class Counsel were retained in this matter, significant doubt existed as to whether any path existed to address the Challenged Statement on behalf of a class of purchasers of Roundup® Products. (Final Richman Decl. ¶ 10.) Class Counsel devised an entirely new litigation strategy, disclaiming injunctive relief[13] and narrowing the scope of the challenge to address a single question, *i.e.*, whether EPSP's presence in bacteria forming part of the human/animal

---

[13] Monsanto has committed to removing the Challenged Statement from Roundup® Products.

microbiome creates consumer confusion whether glyphosate targets an enzyme ***not*** found in people or pets. This litigation sets aside, for example, complicated questions relating to glyphosate's health effects in humans—clearing the path to securing real relief on behalf of consumers, which Class Counsel achieved by refusing to abandon the litigation despite the class certification decision in *Blitz*. *See, e.g.*, *Barfield v. Sho-Me Power Elc. Coop.*, No. 2:11-cv-4321NKL, 2015 U.S. Dist. LEXIS 70166, at *15 (W.D. Mo. June 1, 2015) ("The Court has had opportunity to observe the work of Class Counsel in this hotly contested, complex case and has concluded that the lawyers representing the class served their clients with a high level of skill.").

- **The preclusion of other employment by the attorney due to acceptance of the case.**

The hours of manpower, as well as the almost four years, dedicated (so far) to bringing about this resolution have limited the time class counsel could spend on other matters. (Final Richman Decl. ¶ 11.)

- **The customary fee for similar work in the community.**

As established below (Section IV.A.12), fee awards consistently fall between 25% and 36% in the courts of this Circuit.

- **Whether the fee is fixed or contingent.**

"Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees." *In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn 2005) "[A] financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid." *In re Centurylink Sales Practices & Secs. Litig.*, 2020 U.S. Dist. LEXIS 227558, at *34 (D. Minn. Dec. 24, 2020) (citations omitted). From start to finish, every component of this litigation was undertaken on a contingent-fee basis, with

Class Counsel taking the significant risk of not succeeding on behalf of consumers. The requested fees comport with the notion that attorneys' fees in class actions are not merely to compensate hours worked, but to reward counsel for the benefit they brought to the class, while working under risk. *See, e.g.*, *In re Xcel Energy, Inc.*, 364 F. Supp. at 1001 (D. Minn. 2005).

- **Time limitations imposed by the client or the circumstance.**

As noted above, litigation concerning the health effects of glyphosate (the active ingredient in Roundup® Products) is widespread and ongoing, on the heels of Bayer's acquisition of Monsanto. In their attempt to win relief for everyday consumers not claiming personal injury, Class Counsel competed against a wider national and even international litigation picture. (Final Richman Decl. ¶ 12.) They were able to achieve this Settlement notwithstanding contemporaneous delays in omnibus settlement of personal-injury claims.

- **The amount involved and the results obtained.**

As set forth *supra*, the Roundup® Products at issue retail for $3.73 to $106.29 (weighted retail average). Class Counsel negotiated a $39.95 million fund for consumers nationwide, refunding up to 50% of their purchase price, including on multiple purchases. By any measure, this is an extraordinary result for consumers. *See, e.g.*, *Keil*, 862 F.3d at 696 (collecting cases).

- **The experience, reputation, and ability of the attorneys.**

As shown in their firm résumés, Class Counsel Richman Law & Policy ("RLP") and Baum, Hedlund, Aristei, & Goldman P.C. ("Baum Hedlund") boast extensive experience not only in class-action litigation, but in representing consumers in a variety of contexts. (First Richman Decl., Ex. A; Dkt 50-2, Declaration of Michael L. Baum ("Baum Decl.") ¶¶ 5-11.) Both firms, staffed by graduates of top-tier law schools, have been appointed lead counsel in multiple class actions. (Final Richman Decl. ¶ 13.) In addition, RLP represents nonprofit organizations fighting for consumers

regarding glyphosate disclosure, and Baum Hedlund serves as counsel in the omnibus MDL personal-injury litigation against Monsanto. (*Id.* ¶ 14.)

- **The undesirability of the case.**

Monsanto, recently acquired by one of the world's largest multinational corporations, Bayer, has vigorously defended, and continues vigorously to defend, its Roundup® line of glyphosate-based weed-killer products. Class Counsel agreed to wade into this complex field of litigation—in effect, to challenge Monsanto in multiple federal courts *See, e.g.*, *McDonald v. Armontrout*, 860 F.2d 1456, 1462 (8th Cir. 1988) (noting that social and professional risk and undesirability of undertaking litigation factor into determining proper compensation levels for class counsel). *Cf. Roark v. Barnhart*, 221 F. Supp. 2d 1020, 1025 (W.D. Mo. 2002) (individual case) ("[T]he case was processed through the administrative level, through the district court level, back to the administrative level, and back to the district court level. Because of the particular issues involved and the myriad steps that were necessary to obtain a complete record for review, this case probably falls into the 'undesirable' category.").

- **The nature and length of the professional relationship with the client.**

In order to achieve this Settlement, Class Counsel agreed to, and did, represent named plaintiffs in multiple venues nationwide. (*See supra*, Section II.A, Factual Background and Procedural History.) RLP additionally represents nonprofit organizations that litigated on behalf of consumers in the District of Columbia. (Final Richman Decl. ¶ 15.) Following denial of class certification in the *Blitz* action, Class Counsel agreed to continue Plaintiff Blitz's litigation on an individual basis while simultaneously fighting in this Court on behalf of the remaining named plaintiffs to win relief for consumers nationwide. (*Id.* ¶ 16.)

- **Awards in similar cases.**

The award of attorneys' fees, representing 25% of the common fund and unopposed by Monsanto, is well within the range of similar cases. *See, e.g.*, *Rawa*, 934 F.3d at 865 (affirming class settlement with class counsel to request up to one-third of fund value in fees); *In re Target Corp.,* 892 F.3d at 977 (affirming settlement in which defendant agreed to pay $10 million to settle claims and waived right to appeal award of attorneys' fees less than or equal to $6.75 million); *Vogt v. State Farm Life Ins. Co.*, No. 2:16-CV-04170-NKL, 2021 U.S. Dist. LEXIS 12776, at **5-6 (W.D. Mo. Jan. 21, 2021) ("As the Court has previously noted, '[c]ourts in this Circuit and this District have frequently awarded attorney fees of 33 1/3%-36% of a common fund'.") (collecting cases).

Accordingly, the *Johnson* factors are met, and the requested attorneys' fees are reasonable and well-supported. *See, e.g.*, *In re Centurylink Sales Practices & Secs. Litig.*, 2020 U.S. Dist. LEXIS 227558, at *38 ("Given the difficulty and risks involved in this litigation, the result is a testament to the skill and dedication of Plaintiffs' Counsel and serves as an example that MDLs and consumer class actions can provide meaningful relief to consumers.").

## B. Plaintiffs' Requested Service Awards Are Reasonable.

Courts recognize that the risk, time, and dedication that an individual devotes to a lawsuit that inures to the common benefit of others warrants a service award above and beyond what other members of a settlement class receive. *See, e.g.*, *Rawa*, 2018 U.S. Dist. LEXIS 88401, at **26-27 (approving service awards to named plaintiffs of $10,000, $5,000, and $2,500); *Claxton v. Kum & Go, L.C.*, No. 16-3385, 2015 U.S. Dist. LEXIS 75605, at *6 (W.D. Mo. June 11, 2015) (approving service award to named plaintiff of $14,145). In this case, Plaintiffs seek service payments of $2,500 for each of the three named Plaintiffs. The total service payments of $7,500 total less than

0.0002% of the total Common Fund. Such service payments are therefore reasonable and well within the range approved by courts of this Circuit.

## V.    THE CY PRES DISTRIBUTIONS CONTEMPLATED BY THE SETTLEMENT AGREEMENT ARE FAIR AND REASONABLE.

In light of the expected payments to Class Members of approximately $11.7 to $13.35 million, the expected administration and notice costs of $1.84 million, and assuming Class Counsel's requested fee award of 25 percent of the Common Fund is granted, there will remain at least approximately $14.47 million in the Common Fund (the "Remaining Funds"), which per the Settlement Agreement is to be distributed to *cy pres* recipients. Specifically, the Settlement Agreement contemplates that, with Court approval, these funds will be distributed to (1) the National Consumer Law Center (the "NCLC"); (2) the Center for Consumer Law & Economic Justice at the University of California, Berkeley (the "CCLEJ"); and (3) the National Advertising Division of the Better Business Bureau (the "NAD"). The parties propose to distribute the Remaining Funds equally to these three organizations, and submit that such a distribution is appropriate and reasonable in this case.

The Eighth Circuit evaluates *cy pres* distributions based on the American Law Institute's ("ALI") *cy pres* criteria. *Rawa*, 2018 U.S. Dist. LEXIS 88401, at *29-30 (citing *In re Bankamerica Corp. Secs. Litig.*, 775 F.3d 1060, 1062-63 (8th Cir. 2015)), *aff'd* 934 F.3d 862 (2019). Under those principles, a *cy pres* remedy is appropriate when a settlement "involves individual distributions to class members and funds remain after distributions" and further distributions to class members who have made claims would be "impossible or unfair." ALI, Principles of the Law of Aggregate Litigation § 3.07(b) (2010). In such a case, *cy pres* distributions are appropriate when made to recipients whose interests "reasonably approximate those being pursued by the class" and

"for uses consistent with the nature of the underlying action and with the judicial function." *Id*. § 3.07(c); *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 867 (8th Cir. 2017).

*Rawa* held, in a case analogous to this one, that *cy pres* distributions were appropriate when (1) the "identification and distribution process was fair and reasonable" and the claims administrator made "extensive efforts to notify potential claimants," who could "submit claims easily on line, and no proof of purchase was required"; (2) where the "claimants are receiving what the parties have reasonably characterized as at least 100% of their damage amounts" and would thus receive a windfall from additional distributions; and (3) where the class was notified of a potential *cy pres* distribution. 2018 U.S. Dist. LEXIS 88401, at *32-34.  All of these factors are equally true here.

First, as described in the declarations of Brandon Schwartz, the Parties and the Claims Administrator have made extraordinary efforts to notify potential claimants of the Settlement Agreement and their opportunity to make a claim, including extending the claims period and advertising extensively online, on television, in print, on the radio, and in other media. Second, based on the pro rata adjustment provision in the Settlement Agreement, claimants are receiving an amount more than *three times* the high-end of Plaintiffs' counsel's damages estimates. Third, the Class was notified of a potential *cy pres* distribution in the Class Notice and via the Settlement Website, which included a copy of the Settlement Agreement.

The proposed *cy pres* recipients are also well-tailored to the nature of this lawsuit. The NCLC is a national consumer advocacy group that numerous courts have approved as a *cy pres* recipient in false advertising cases. *See, e.g., Miller v. Ghirardelli Chocolate Co.*, No. 12-cv-04936-LB, 2015 U.S. Dist. LEXIS 20725, at *23 (N.D. Cal. Feb. 20, 2015); NCLC, *NCLC Brochure* (2019), https://www.nclc.org/images/pdf/about_us/nclc-brochure-2019.pdf. The CCLEJ

works nationally "to establish fair and equal access to a marketplace free from fraud and predatory practices" and engages in advocacy and policymaking in the consumer law field. CCLEJ, *Our Work*, https://consumerlaw.berkeley.edu/about/our-work (last visited Feb. 25, 2021); s*ee also Caligiuri*, 855 F.3d at 867 (approving distribution to organization that would use funds "consistent with the nature of the underlying action"); The NAD monitors national advertising, enforces high standard of truth and accuracy, accepts consumer complaints, and resolves advertising disputes. *See* BBB National Programs, *National Advertising Division*, https://bbbprograms.org/programs/all-programs/national-advertising-division (last visited Feb. 25, 2021); *see also, e.g.*, *Graves v. United Inds. Corp.*, No. 2:17-cv-06983, 2020 U.S. Dist. LEXIS 33781, at *23 (C.D. Cal. Feb. 24, 2020).

## VI.  <u>CONCLUSION</u>

For the reasons set forth herein and after the hearing scheduled for March 11, 2021, Class Counsel respectfully request that the Court issue an order (i) granting final approval of the Settlement Agreement; (ii) finding that adequate notice has been provided to Settlement Class Members; and (iii) approving Plaintiff's requested attorneys' fees award, expenses, and class representative awards, and for any other relief this Court deems just and equitable.

DATED: February 25, 2021           Respectfully submitted,

**RICHMAN LAW GROUP**
Kim E. Richman (*pro hac vice*)
Clark A. Binkley (*pro hac vice*)
1 Bridge St. Ste 83
Irvington, NY 10533
T: 718-705-4579
F: 212-687-8292
krichman@richmanlawpolicy.com

cbinkley@richmanlawpolicy.com

**BELL LAW, LLC**
Bryce B. Bell (MO#66841)
Mark W. Schmitz (MO#69329)
2600 Grand Blvd., Suite 580
Kansas City, MO 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com


**BAUM, HEDLUND, ARISTEI & GOLDMAN, P.C.**
Michael L. Baum (*pro hac vice*)
R. Brent Wisner (*pro hac vice*)
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
T: (310) 207-3233
mbaum@baumhedlund.com
bwisner@baumhedlund.com

*Attorneys for Plaintiffs and the Class*