UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

LISA JONES, *et al.*,

               Plaintiffs,

    v.

MONSANTO COMPANY,

               Defendant.

Case No. 19-0102-CV-W-BP

Hon. Beth Phillips

**DECLARATION OF KIM E. RICHMAN
IN SUPPORT OF PLAINTIFFS' MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT,
AN AWARD OF ATTORNEYS' FEES, EXPENSES AND
CLASS REPRESENTATIVE SERVICE AWARDS**

I, Kim E. Richman, hereby declare:

1.      I am the founding and managing Member of Richman Law & Policy, and one of the attorneys designated as Class Counsel in this action. All the facts stated herein are based on my personal knowledge and, if called as a witness, I could and would testify competently to the matters set forth herein.

2.      I respectfully submit this Declaration in support of Plaintiffs' Motion for Final Approval of Class Action Settlement and an Award of Attorneys' Fees, Expenses and Class Representative Service Awards (the "Settlement").

3.      A true and correct copy of the Settlement is attached as Exhibit 1.

4.      Carrying out a Random Coefficient Demand Estimation ("RCDE") study, as proposed by Professor Dubé in *Blitz v. Monsanto Co.*, No. 3:17-cv-00473 (W.D. Wis. June 20, 2017) ("*Blitz*"), would require both significant time and extensive work by his team of researchers.

1

5.    Plaintiffs and Defendant in the above-captioned case have reached an agreement that provides Class Members with as much as $1.87 to $53.15 recovery per unit purchased, nationwide, amounting to 50 percent of the weighted average retail prices of the products purchased.

6.    The benefit of this Settlement to Class Members far outweighs the prospects and risks of prolonged recovery.

7.    At the time of mediation, when this agreement was reached, this Settlement was, to my knowledge, the largest ever in a consumer-packaged-goods case alleging marketing deception.

8.    The effort towards this Settlement encompasses investigating the case, including consultations with scientists working in the area of glyphosate and its effects on humans; developing a novel case theory to succeed where others have not, avoiding preemption and procedural roadblocks; coordinating putative class representatives nationwide, in their chosen fora, and two nonprofit organizations pursuing litigation in the District of Columbia; defending multiple motions to dismiss; working with leading economists to create a workable class damages model; countering Monsanto's expert reports and taking expert depositions; defending an individual Plaintiff at deposition (*Blitz*); briefing class certification (*Blitz*); reviewing, understanding, and cataloguing tens of thousands of pages of documents produced by Monsanto; and distilling all relevant facts and law into a single statement to apprise fully the mediator and his team.

9.    This successful Settlement effort was the result of the work mentioned in ¶ 8, cooperatively undertaken by multiple law firms.

10.    At the time Class Counsel were retained in this matter, significant doubt existed as to whether any path existed to address the Challenged Statement on behalf of a class of purchasers of Roundup® Products.

11.    The hours of manpower, as well as the almost four years, dedicated (so far) to bringing about this Settlement have limited the time class counsel could spend on other matters.

12.    In their attempt to win relief for everyday consumers not claiming personal injury, Class Counsel competed against a wider national and even international litigation picture.

2

13. Both RLP and Baum Hedlund are staffed by graduates of top-tier law schools and have been appointed lead counsel in multiple class actions.

14. RLP has represented nonprofit organizations fighting for consumers regarding glyphosate disclosure and Baum Hedlund serves as co-lead counsel in the omnibus multi-district personal-injury litigation against Monsanto.

15. RLP additionally represents nonprofit organizations that litigated against Monsanto Company on behalf of consumers in the District of Columbia.

16. Following denial of class certification in the *Blitz* action, Class Counsel agreed to continue Plaintiff Blitz's litigation on an individual basis while simultaneously fighting in this Court on behalf of the remaining named plaintiffs to win relief for consumers nationwide.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 25th day of February 2021 in Irvington, New York.

RICHMAN LAW & POLICY

_____
Kim E. Richman
1 Bridge St. Ste 83
Irvington, NY 10533

3

# EXHIBIT 1

<u>**UPDATED CLASS ACTION SETTLEMENT AGREEMENT**</u>

   This Settlement Agreement and Release (the "Agreement"), effective upon the date of the signatories below, is made by and between Monsanto Company and the Class (defined below) (collectively, the "Parties"), in the matter *Lisa Jones et al. v. Monsanto Company*, case No. 4:19-cv-00102-BP (W.D. Mo.) ("the Action").

   **WHEREAS**, Class Representatives Lisa Jones, Horacio Torres Bonilla, and Kristoffer Yee commenced the Action for breach of warranty, unjust enrichment, and violations of Missouri, New York, and California laws of unfair competition and false advertising against Monsanto and Scotts Miracle-Gro Products, Inc. in the United States District Court for the Western District of Missouri on February 13, 2019;

   **WHEREAS**, the Parties disagree on the merits and viability of the claims set forth in the Action's complaint, Monsanto denies any and all liability or wrongdoing, and Plaintiffs believe that all claims are viable and subject to class certification;

   **WHEREAS**, the Parties have engaged in discovery but have not yet briefed class certification;

   **WHEREAS**, while discovery has continued, the Parties engaged in a mediation session before Professor Eric D. Green to determine whether a settlement of the Action could be reached, and at the end of the mediation session, the Parties reached an agreement in principle;

   **WHEREAS**, Plaintiffs have concluded that it is in the best interest of the Class to settle the Action on the terms set forth in this Agreement in order to avoid further expense, inconvenience, and delay, and based on other factors bearing on the merits of settlement;

   **WHEREAS**, Monsanto enters into this Agreement in order to avoid further expense, inconvenience, delay, and interference with business operations, and to dispose of the Action and to put to rest all controversy concerning the claims that have been or could have been asserted;

   **WHEREAS**, the Class (as defined below) and Monsanto wish to resolve, on a nationwide basis, any and all past, present, and future claims the Class has or may have against the Released Persons of any nature whatsoever, as they relate to the allegations in the Action, and to that end, the Class and Monsanto intend that the United States District Court for the Western District of Missouri conditionally certify a Class for settlement, and that this Agreement will encompass and end all related pending, threatened, or possible litigation and/or claims by any Party against the Released Persons;

   **WHEREAS**, this Agreement amends and supersedes those certain Settlement Agreements and Releases signed by the Parties on March 23, 2020, March 31, 2020, and May 12, 2020.

   **NOW, THEREFORE**, the Parties, for good and valuable consideration, the sufficiency of which is hereby acknowledged, understand and agree to the following terms and conditions:

**A. Definitions**

As used in this Agreement, the following terms enclosed within quotation marks have the meanings specified below:

1.     "Action" means the matter *Lisa Jones et al. v. Monsanto Company*, case No. 4:19-cv-00102-BP (W.D. Mo.).

2.     "Agreement" means this Settlement Agreement and Release.

3.     "Approved Claim" means a claim approved by the Claims Administrator, according to the terms of this Agreement.

4.     "Authorized Claimant" means any Claimant who has timely and completely submitted a Claim Form that has been reviewed and validated by the Claims Administrator.

5.     "Claim" means a request for relief submitted by or on behalf of a Class Member on a Claim Form filed with the Claims Administrator in accordance with the terms of this Agreement.

6.     "Claimant" means any Class Member who submits a Claim for benefits as described in Section J of this Agreement.

7.     "Claims Deadline" means the date by which all Claim Forms must be postmarked or received by the Claims Administrator to be considered timely.  The Claims Deadline shall end 120 days after the Preliminary Approval Date.

8.     "Claim Form" means the document to be submitted by Claimants seeking benefits pursuant to this Agreement.

9.     "Claims Administrator" means the independent company agreed by the Parties and approved by the Court to provide the Class Notice and to administer the claims process.

10.     "Claims Administration Expenses" means the fees charged and expenses incurred by the Claims Administrator in completing the claims administration process set forth in this Agreement.

11.     "Class" or "Class Member(s)" means all Persons in the United States, who, during the Class Period, purchased in the United States, for personal or household use and not for resale or distribution, Roundup® Products in packaging with a label that contained the statement "targets an enzyme found in plants but not in people or pets" or a substantially similar statement.  Any Person who received a full refund is excluded from the Class definition.

12.     "Class Counsel" means the following attorneys of record in the Action:

Kim Richman
Richman Law Group
8 W. 126th Street
New York, NY 10027

Telephone: (718) 705-4579
Facsimile: (212) 687-8292
krichman@richmanlawgroup.com

Michael L. Baum
Baum, Hedlund, Aristei & Goldman, P.C.
10940 Wilshire Blvd., 17th Floor
Los Angeles, CA 90024
Telephone: (310) 207-3233
mbaum@baumhedlundlaw.com

and any attorneys at those firms assisting in the representation of the Class in this Action.

13.     "Class Counsel's Fees" means the amount awarded as attorneys' fees to Class Counsel by the Court for prosecuting the Action and implementing this Agreement.

14.     "Class Notice" means collectively, the "Notice of Class Action Settlement" and the "Publication Notice," substantially in the forms to be agreed upon by the Parties, including both the Class Notice run prior to the date of this Agreement as previously preliminarily approved by the Court on May 14, 2020, and all additional forms of notice agreed to by the Parties that will be submitted to the Court in connection with the Motion for Preliminary Approval of Updated Class Action Settlement and Approval of Updated Form and Manner of Notice.

15.     "Class Period" shall mean and refer to a time period not to exceed the applicable statute of limitations for false advertising/consumer protection or breach of warranty claims (whichever is longer) in the state where each Class Member purchased the Products, triggered by the date the Complaint was filed in the Action (February 13, 2019). A full list of the applicable periods for each state, district, or territory included in this Agreement is appended hereto as Exhibit B.

16.     "Class Released Claims" means the claims released by the Class Members via this Agreement.

17.     "Class Representatives" means named plaintiffs in the Action, Lisa Jones, Horacio Torres Bonilla, and Kristoffer Yee, and any other individuals who may be added as plaintiffs to any amended pleading.

18.     "Common Fund" means the 39.55 million dollars ($39,550,000) set aside as part of the Settlement Consideration.

19.     "Court" means the United States District Court for the Western District of Missouri.

20.     "Effective Date" means the date on which the judgment approving this Agreement becomes final. For purposes of this definition, the Final Settlement Approval Order and Judgment shall become final at the latest date of the following options: (i) if no appeal from the Final Settlement Approval Order and Judgment is filed, the date of expiration of the time for filing or noticing any appeal from the Final Settlement Approval Order and Judgment; or (ii) if an appeal from the Final Settlement Approval Order and Judgment is filed, and the Final Settlement

Approval Order and Judgment is affirmed or the appeal dismissed, and the deadline to file a petition for certiorari has passed, the date of such affirmance or dismissal; or (iii) if a petition for certiorari seeking review of the appellate judgment is filed and denied, the date the petition is denied; or (iv) if a petition for writ of certiorari is filed and granted, the date of final affirmance or final dismissal of the review proceeding initiated by the petition for a writ of certiorari.

21.     "Final Settlement Hearing" or "Final Approval Hearing" means the hearing to be conducted by the Court to determine whether to enter the Final Settlement Approval Order and Judgment.

22.     "Jones" means the plaintiff in the Action, Lisa Jones.

23.     "Final Settlement Approval Order and Judgment" or "Judgment" means the Court's final order approving the Agreement; entering judgment; dismissing the Action with prejudice; discharging the Released Persons of and from all further liability for the Released Claims; and permanently barring and enjoining the Releasing Persons from instituting, filing, commencing, prosecuting, maintaining, continuing to prosecute, directly or indirectly, as an individual or collectively, representatively, derivatively, or on behalf of them, or in any other capacity of any kind whatsoever, any action in any state court, any federal court, before any regulatory body or authority, or in any other tribunal, forum, or proceeding of any kind, against the Released Persons that asserts any Released Claims.

24.     "Labeling" means the display of written, printed, or graphic matter upon the Products' packaging or at the point of sale, as well as written, printed, or graphic matter for use in the distribution, marketing, manufacturing, or sale of the Products, including information found on Monsanto's, Scotts's, or any other Released Person's websites supplementing, describing, explaining, and/or promoting the Products.

25.     "Monsanto" means Monsanto Company and its current or future parent companies (including intermediate parents and ultimate parents) and subsidiaries, affiliates, predecessors, successors, and assigns, and each of their respective officers, directors, employees, agents, attorneys, insurers, stockholders, representatives, heirs, administrators, executors, successors and assigns, and any other Person acting on their behalf.

26.     "Notice Period" means the notice period to potential Class Members. Class Notice shall run for a period of 90 days, and shall commence within 14 days after the Preliminary Approval Date.

27.     "Notice Plan" means the plan for dissemination of the Class Notice to be agreed upon by the Parties, including both the Notice Plan run prior to the date of this Agreement as previously preliminary approved by the Court on May 14, 2020, and all additional plans for dissemination of the Class Notice to be agreed to by the Parties that will be submitted to the Court in connection with the Motion for Preliminary Approval of Updated Class Action Settlement and Approval of Updated Form and Manner of Notice.

28.     "Objection Deadline" means the first business day on or after ten (10) calendar days from the filing of the Motion for Final Approval of the Settlement and Application for Fees, or such other date as the Court may order in its Preliminary Approval Order. It is the date by which

the Class Members must file with the Court and serve on all Parties (i) a written statement objecting to any terms of the Settlement or to Class Counsel's Fees, and (ii) a written notice of intention to appear if they expect to present in person at the Final Approval Hearing objections to any terms of the Settlement or to Class Counsel's Fees.

29.    "Opt-Out Deadline" means 120 days after the Preliminary Approval Date (to be concurrent with the Claims Deadline), or such other date as the Court may order in its Preliminary Approval Order.

30.    "Other Counsel" means any other attorney(s), representing any Class Member, who is not Class Counsel.

31.    "Party" or "Parties" means Plaintiffs, to include the Class Members, and Monsanto.

32.    "Person" means any individual, corporation, partnership, association, or any other type of legal entity.

33.    "Plaintiffs" means Lisa Jones, Horacio Torres Bonilla, Kristoffer Yee, and the other Class Members.

34.    "Preliminary Approval Date" means the date of entry of the Court's order granting preliminary approval of the Agreement substantially in the form of the Preliminary Approval Order that will be submitted in connection with the Motion for Preliminary Approval of Updated Class Action Settlement and Approval of Updated Form and Manner of Notice.

35.    "Products" means Roundup® Weed & Grass Killer products that include the statement "targets an enzyme found in plants but not in people or pets" or a substantially similar statement.  A full list of Products is appended hereto as Exhibit A.

36.    "Related Actions" include the following cases:

   a.   *Thomas Blitz v. Monsanto Company*, Case No. 3:17-cv-00473 (W.D. Wis.) (the "*Blitz* Action");

   b.   *Beyond Pesticides and Organic Consumers Association v. Monsanto Company*, Case No. 1:17-cv-00941 (D.D.C.).

The term "Related Actions" is meant only as a shorthand to refer to these cases in the course of this Agreement and is not intended, and shall not be construed, to limit in any way the scope of the releases provided by the Agreement or the effect of this Agreement in actions other than the Related Actions.

37.    "Released Claims" means all individual, class, representative, group or collective claims, demands, rights, suits, liabilities, damages, losses, injunctive and/or declaratory relief, and causes of action released pursuant to this Agreement.

38.    "Released Persons" mean, respectively, Monsanto; Scotts; any distributors and/or retailers of the Products; any Persons that are currently, or have in the past been, marketing,

advertising, distributing, selling, or reselling the Products and any current or future parent companies (including intermediate parents and ultimate parents) and subsidiaries, affiliates, predecessors, successors, and assigns, and each of their respective officers, directors, employees, agents, attorneys, insurers, stockholders, representatives, heirs, administrators, executors, successors and assigns; and any other Person acting on behalf of Monsanto, Scotts, or any other Released Person.

39.     "Releasing Persons" means Jones, Torres Bonilla, Yee, and each Class Member and any Person claiming by or through each Class member, including but not limited to spouses, children, wards, heirs, devisees, legatees, invitees, employees, associates, co-owners, attorneys, agents, administrators, predecessors, successors, assignees, representatives of any kind, shareholders, partners, directors, or affiliates.

40.     "Scotts" means The Scotts Company LLC, Monsanto's exclusive marketing and distribution agent for Roundup consumer products, and its current or future parent companies (including intermediate parents and ultimate parents) and subsidiaries, affiliates, predecessors, successors, and assigns, and each of their respective officers, directors, employees, agents, attorneys, insurers, stockholders, representatives, heirs, administrators, executors, successors and assigns, and any other Person acting on their behalf.

41.     "Settlement Payment" means the amount to be paid to Authorized Claimants as described in Section F.

42.     "Settlement Website" means a website maintained by the Claims Administrator to provide the Class with information relating to the Settlement.

43.     "Torres Bonilla" means the plaintiff in the Action, Horacio Torres Bonilla.

44.     "Yee" means the plaintiff in the Action, Kristoffer Yee.

## B. Conditional Class Certification for Settlement Purposes Only

1.     This Agreement is for settlement purposes only, and neither the fact of, nor any provision contained in this Agreement, nor any action taken hereunder, shall constitute, be construed as, or be admissible in evidence as an admission of (1) the validity of any claim or allegation by Jones, Torres Bonilla, Yee, the plaintiff(s) in any Related Action, or any Class Member, or of any defense asserted by Monsanto in these or any other actions or proceedings; (2) any wrongdoing, fault, violation of law, or liability of any kind on the part of any Party, Released Person, Class Member or their respective counsel; or (3) the propriety of class certification in the Action, Related Actions, or any other action or proceeding.

2.     For the sole and limited purpose of settlement only, the Parties stipulate to and request that the Court conditionally certify the Class under Rule 23(b)(3), which stipulation is contingent upon the occurrence of the Effective Date.  Should the Effective Date not occur, this Agreement shall be void and will not constitute, be construed as, or be admissible in evidence as, an admission of any kind or be used for any purpose in the Action, Related Actions, or in any other pending or future action.  In the event that the Agreement is terminated pursuant to its terms or the

Final Settlement Hearing does not occur for any reason, the certification of the Class shall be vacated, and the Action shall proceed as it existed prior to execution of this Agreement.

3.  The Court's certification of the Class shall not be deemed to be an adjudication of any fact or issue for any purpose other than the accomplishment of the provisions of this Agreement, and shall not be considered the law of the case, res judicata, or collateral estoppel in the Action, Related Actions, or any other proceeding unless and until the Court enters a Judgment. Regardless of whether the Effective Date occurs, the Parties' agreement to class certification for settlement purposes only (and any statements or submissions made by the Parties in connection with seeking the Court's approval of this Agreement) shall not be deemed to be a stipulation as to the propriety of class certification, or any admission of fact or law regarding any request for class certification, in any other action or proceeding, whether or not involving the same or similar claims.

4.  In the event the Court does not enter a Judgment, or the Effective Date does not occur, or the Agreement is otherwise terminated or rendered null and void, the Parties' agreement to certification of the Class for settlement purposes shall be null and void and the Court's certification order (if any is ordered) shall be vacated, and thereafter no new class or classes will remain certified.

5.  Nothing in this Agreement shall be argued as support for, or admissible in, an effort to certify any new class in this Court or any other court if the Court does not enter a Judgment, or the Effective Date does not occur, nor shall anything herein be admissible in any proceeding to certify this or any other classes in any other court under any circumstances.

6.  Subject to the Court's approval, and for settlement purposes only, Monsanto consents to the appointment of Jones, Torres Bonilla, and Yee as Class Representatives of the Class, and the appointment of Kim Richman, Michael L. Baum, and any attorneys at their firms assisting in the representation of the Class in this Action as Class Counsel.

7.  The Preliminary Approval Order shall contain a provision enjoining Class Members who have not opted-out of the Agreement from proceeding with any competing claims against the Released Persons related or similar to those claims that are asserted in this Action.

8.  Upon final approval of the Agreement by the Court, a Judgment substantially in the form agreed by the Parties, and conforming with the definition of Final Settlement Approval Order and Judgment above, will be entered by the Court.

## C.  Benefits of the Agreement

Class Counsel and Class Representatives believe the Agreement confers substantial benefits upon the Class, particularly as weighed against the risk associated with the inherent uncertain nature of a litigated outcome; the complex nature of the Action, and Related Actions, in which the Parties have produced large amounts of discovery, taken and defended depositions, served and pursued third-party subpoenas for documents, and disclosed and produced expert reports, including in the *Blitz* Action as set forth *infra*; and the length and expense of continued proceedings through fact depositions, expert depositions, third-party document productions and depositions, class certification briefing, summary judgment briefing, trial, and appeals. Based on

their evaluation of such factors, Class Counsel and Class Representatives have determined that the Settlement, based on the following terms, is in the best interests of the Class.

### D. Changes to the Label

1.    Monsanto will undertake to remove the representation that glyphosate "targets an enzyme found in plants but not in people or pets" on the label of the Products, in favor of a statement to be selected by Monsanto akin to "Glyphosate works by targeting an enzyme that is essential for plant growth." The final statement is subject to Monsanto's exclusive discretion and approval by the Environmental Protection Agency.

2.    After the label change, Monsanto will have a reasonable period of time, consistent with EPA guidance and requirements, to exhaust existing inventories and remove Products with the current representation that glyphosate "targets an enzyme found in plants but not in people or pets" on the label from the marketplace. Any Products sold from Monsanto's inventory with the representation that glyphosate "targets an enzyme found in plants but not in people or pets" on the label, through the date Notice is first effected, are included in the Full Release described in this Agreement, and any consumer who purchases such products during the inventory removal period and prior to the date Class Notice is first effected shall be entitled to make a Claim under the structure set forth herein.

### E. Common Fund

1.    Within seven (7) calendar days following the Court's Final Approval Order, Monsanto shall pay $39.55 million into a "Qualified Settlement Fund" created and maintained by the Claims Administrator, with a separate tax identification number for purposes of this Agreement only (the "Common Fund").

2.    The Common Fund shall cover all expenses associated with the Agreement as approved by the Court, including without limitation, Class Notice, Claims Administration Expenses, Class Member Claims, the Settlement Payment, Class Representative incentive awards, and Class Counsel's Fees. Interest on the Settlement Fund shall inure to the benefit of the Class.

3.    All taxes on the income of the Settlement Fund, and any costs or expenses incurred in connection with the taxation of the Settlement Fund, shall be paid out of the Settlement Fund, shall be considered to be a cost of administration, and shall be timely paid by the Claims Administrator without prior order of the Court. The Parties shall have no liability or responsibility for the payment of any such taxes.

4.    In the event that the total value of claims submitted exceeds or falls short of the amounts available in the Common Fund after deducting all other expenses, incentive awards, and attorney's fees, then the payment per unit (as set forth herein) shall be reduced or increased on a pro rata basis. In no instance shall the payment per unit exceed 50% of the weighted average retail price as set forth in Section F below.

5.    In no case shall Monsanto be required to contribute or pay additional funds to the Common Fund and/or the Settlement set forth herein, beyond the payments agreed hereto,

including but not limited to any payments for attorneys' fees or fees associated with notice and/or administration.

## F.  Class Member Claims

1.      If the Common Fund is sufficient to allow such payments (and subject to the further limitations and requirements set forth below), considering the number of Claims made, for each unit of the Products purchased during the Class Period, Authorized Claimants will receive a standardized payment of 10% the weighted average retail price (after rounding).  The weighted average retail price per unit and the payment per unit are set forth below:

| Roundup® Product | Weighted Average Retail Price | Payment Per Unit | Potential Maximum Payment Per Unit After Pro Rata Adjustment |
|---|---|---|---|
| 24 oz. Roundup® Ready-to-Use Weed and Grass Killer | $5.01 | $0.50 | $2.51 |
| 30 oz. Roundup® Ready-to-Use Weed and Grass Killer | $3.73 | $0.37 | $1.87 |
| 0.5 gal. Roundup® Ready-to-Use Weed and Grass Killer | $5.29 | $0.53 | $2.65 |
| 1 gal. Roundup® Ready-to-Use Weed and Grass Killer (all non-refill varieties) | $10.17 | $1.02 | $5.09 |
| 1 gal. Roundup® Ready-to-Use Weed and Grass Killer Refill | $5.78 | $0.58 | $2.89 |

| | | | |
|---|---|---|---|
| 1.1 gal. Roundup® Ready-to-Use Weed and Grass Killer | $15.96 | $1.60 | $7.98 |
| 1.25 gal. Roundup® Ready-to-Use Weed and Grass Killer Refill | $12.15 | $1.22 | $6.08 |
| 1.33 gal. Roundup® Ready-to-Use Weed and Grass Killer | $18.78 | $1.88 | $9.39 |
| 16 oz. Roundup® Weed and Grass Killer Concentrate Plus | $13.24 | $1.32 | $6.62 |
| 32 oz. Roundup® Weed and Grass Killer Concentrate Plus | $19.54 | $1.95 | $9.77 |
| 35.2 oz. Roundup® Weed and Grass Killer Concentrate Plus | $20.54 | $2.05 | $10.27 |
| 36.8 oz. Roundup® Weed and Grass Killer Concentrate Plus | $18.38 | $1.84 | $9.19 |
| 40 oz. Roundup® Weed and Grass Killer Concentrate Plus | $18.83 | $1.88 | $9.42 |

| | | | |
|---|---|---|---|
| 64 oz. Roundup® Weed and Grass Killer Concentrate Plus | $38.52 | $3.85 | $19.26 |
| 80 oz. Roundup® Weed and Grass Killer Concentrate Plus | $46.34 | $4.63 | $23.17 |
| 3-pack 6 oz. Roundup® Weed and Grass Killer Concentrate Plus | $19.51 | $1.95 | $9.76 |
| 32 oz. Roundup® Weed and Grass Killer Super Concentrate | $22.44 | $2.24 | $11.22 |
| 35.2 oz. Roundup® Weed and Grass Killer Super Concentrate | $43.03 | $4.30 | $21.52 |
| 0.42 gal. Roundup® Weed and Grass Killer Super Concentrate | $46.73 | $4.67 | $23.37 |
| 0.5 gal. Roundup® Weed and Grass Killer Super Concentrate | $74.15 | $7.42 | $37.08 |
| 1 gal. Roundup® Weed and Grass Killer Super Concentrate | $106.29 | $10.63 | $53.15 |

| | | | |
|---|---|---|---|
| Combination Pack - 1 gal. Roundup® Ready-to-Use Weed and Grass Killer with 22 oz. Roundup® Weed & Grass Killer Sure Shot Foam Spray | $10.36 | $1.04 | $5.18 |
| Combination Pack - 1.33 gal. Roundup® Ready-to-Use Weed and Grass Killer Plus with Pump 'N Go Sprayer and two 6.5 oz. Roundup® Weed and Grass Killer Super Concentrate | $39.53 | $3.95 | $19.77 |
| Combination Pack – 1.33 gal. Roundup® Ready-to-Use Weed and Grass Killer and two 7 oz. Roundup® Weed and Grass Killer Concentrate Plus | $36.84 | $3.68 | $18.42 |

2.      Any Person who received a refund directly from Monsanto and/or Scotts with respect to purchases of units of Products shall not be eligible for a payment as to those units.

**G. Attorneys' Fees, Expenses, and Costs**

1.      Class Counsel and Class Representatives shall request attorneys' fees and costs, including Class Counsel's Fees, and incentive awards, to be paid from the Common Fund. Monsanto will not contest a request for Class Counsel's Fees that does not exceed 25% of the full amount available to the class.  Monsanto will not oppose reasonable incentive payments of $2,500 for each of the Class Representatives.

2.      The Parties recognize that Class Counsel's Fees reflect the novel and complex nature of this matter, as well as the risk assumed by Class Counsel in investing months of labor into gaining relief for the Class without guarantee of return. The Parties recognize also that litigation pursued in the *Blitz* Action contributed significantly to bringing about the mediation in this matter and this Agreement and is appropriately considered by the Court in assessing the reasonableness of Class Counsel's Fees.

3.    The Claims Administrator shall pay to Class Counsel from the Common Fund the amount of Class Counsel's Fees and costs awarded by the Court within seven (7) calendar days after the Effective Date.

4.    Costs for settlement, notice, claims administration, incentive awards, and any other fees, including attorneys' fees, will be paid from the Common Fund.

**H. Retention of Claims Administrator**

The Parties agree to retain Postlethwaite & Netterville as Claims Administrator to effect Class Notice and administration.   The Claims Administrator shall assist with various administrative tasks, including, without limitation:

    a.  Arranging for the dissemination of the Class Notice pursuant to the Notice Plan agreed to by the Parties and approved by the Court;

    b.  Answering written inquiries from Class Members and/or forwarding such inquires to Class Counsel;

    c.  Receiving and maintaining forms of Class Members who wish to opt out of and be excluded from the Agreement;

    d.  Establishing a Settlement Website;

    e.  Establishing and staffing a toll-free informational telephone number for Class Members;

    f.  Receiving and processing Claims and distributing payments to Authorized Claimants; and

    g.  Otherwise assisting with administration of the Agreement.

**I. Timing**

All Claim Forms must be postmarked or received by the Claims Administrator by the Claims Deadline to be considered timely. The Claims Deadline shall be clearly set forth in the Preliminary Approval Order, the Class Notice, on the Settlement Website, and on the front of the Claim Form.

**J. Procedure**

1.    Class Notice will include print and nationwide digital publication.

2.    All Claims must be submitted with a Claim Form and received by the Claims Administrator.

3.    The Claim Form will be available on the Settlement Website.  The Claim Form will be available to fill out and submit online, for download, or will be mailed to Class Members upon request by calling or writing to the Claims Administrator.  Class Members may submit their

completed and signed Claim Forms to the Claims Administrator by mail or online, postmarked or submitted online, on or before the Claims Deadline.

4.      The Claim Form must include a reasonable proof of purchase, or must include a declaration, under penalty of perjury, of the identity and quantity of the type of Products that were purchased.  All Claim Forms must include:

a. Class Member name, address, and telephone number;

b. Identification of the quantity and type of Product(s) that were purchased;

c. The retailer and location (city and state) of the retailer from which the Products were purchased; and

d. The approximate date(s) or date ranges on or during which the Products were purchased.

5.      The Claims Administrator shall retain sole discretion in accepting or rejecting the Claim Form.

6.      Claims that are based only upon a declaration signed under penalty of perjury (*i.e.*, do not include reasonable proof of purchase) shall be limited to a Maximum Allowance of one (1) Product for each year of the Class Period (the number of years for each Class Member being determined by that state of that Class Member's purchases as set forth in the definition of Class Period above) with the exception of Claims for 1 Gal. Roundup® Weed and Grass Killer Super Concentrate.  For 1 Gal. Roundup® Weed and Grass Killer Super Concentrate, Claims that are based only upon a declaration signed under penalty of perjury shall be limited to a Maximum Allowance of one (1) for every two (2) years of the Class Period.  For example, if the applicable Class Period for a Class Member is five (5) years, that Class Member may make a Claim based upon a declaration for any one of the following combinations of products:

    i.      up to five (5) Products other than 1 Gal. Roundup® Weed and Grass Killer Super Concentrate;

    ii.     up to three (3) 1 Gal. Roundup® Weed and Grass Killer Super Concentrates;

    iii.    up to two (2) 1 Gal. Roundup® Weed and Grass Killer Super Concentrates and one (1) Product other than a 1 Gal. Roundup® Weed and Grass Killer Super Concentrate; or

    iv.     one (1) 1 Gal. Roundup® Weed and Grass Killer Super Concentrate and up to three (3) Products other than 1 Gal. Roundup® Ready-to-Use Weed and Grass Killer Super Concentrate).

7.      Claims based on a reasonable proof of purchase are not subject to the Maximum Allowance, but for such Claims, the Claims Administrator may at its discretion require a declaration signed under penalty of perjury that provides additional information, including that the purchases were for personal use at a specific location.

8.     The Claims Administrator shall pay out Approved Claims in accordance with the terms of this Agreement commencing ten (10) days after the Effective Date or as otherwise ordered by the Court.

9.     Class Members who do not submit a Claim or opt out (*i.e.*, do nothing) will be subject to this Agreement and all of its terms, including but not limited to the releases, and will receive no payment from the Common Fund.

## K. Opt-Out Procedure

1.     Class Members who wish to opt out of and be excluded from the Agreement must download from the Settlement Website an Opt-Out Form, to be created by the Claims Administrator, and Class Members must print, complete, and mail the form to the Claims Administrator, at the mailing address stated on the Opt-Out Form, postmarked no later than ten (10) days after the filing of the Motion for Final Approval of the Settlement and the Application For Fees or as otherwise ordered by the Court in its Preliminary Approval Order (the "Opt-Out Deadline").

2.     The Opt-Out Form must be personally completed and submitted by the Class Member, and multiple-Class-Member "mass" or "class" opt-outs shall not be permitted.

3.     The Claims Administrator shall be responsible for processing opt-outs and objections, if any, including to promptly provide Class Counsel and counsel for Monsanto with copies of same.

## L. Procedures for Objecting to the Settlement

Class Members have the right to appear and show cause why the Agreement should not be granted final approval, subject to each of the provisions of this paragraph:

1.     *Written Objection Required*.  Any objection to the Agreement must be in writing, filed with the Court, with a copy served on Class Counsel and counsel for Monsanto at the addresses set forth in the Class Notice and in Miscellaneous Provision ¶ 2 below, by the Objection Deadline.

2.     *Form of Written Objection*.  Any objection regarding or related to the Agreement shall contain (i) a caption or title that clearly identifies the Action and that the document is an objection, (ii) information sufficient to identify and contact the objecting Class Member or his or her attorney, and (iii) a clear and concise statement of the Class Member's objection, as well as any facts and law supporting the objection (the "Objection").

3.     *Authorization of Objections Filed by Attorneys Representing Objectors*.  Class Members may object either on their own or through an attorney hired at their own expense, but a Class Member represented by an attorney must sign either the Objection itself or execute a separate declaration stating that the Class Member authorizes the filing of the Objection.

4.     *Effect of Both Opt-Out and Objection*.  If a Class Member submits an Opt-Out Form, the Class Member will be deemed to have opted out of the Agreement, and thus to be

ineligible to object. However, any objecting Class Member who has not timely submitted a completed Opt-Out Form for exclusion from the Agreement will be bound by the terms of the Agreement upon the Court's final approval of the Agreement.

**M. Failure to Exhaust Funds**

After payments have been made to Authorized Claimants, to Class Counsel for Class Counsel Fees, to Class Representatives for incentive awards, and all other costs associated with the administration of this settlement have been paid or placed in appropriate escrow, any remaining funds will be exhausted through a *cy pres* distribution to the National Consumer Law Center, the National Advertising Division of the Better Business Bureau (including the possibility of a custom-designed *cy pres* program), and the Center for Consumer Law & Economic Justice at the University of California, Berkeley.

Approval by the Court, both of the designation of the National Consumer Law Center, the National Advertising Division, and the Center for Consumer Law & Economic Justice as the *cy pres* beneficiaries, and of the distribution(s) to be made to the National Consumer Law Center, the National Advertising Division, and the Center for Consumer Law & Economic Justice in accordance with this Agreement, will be required before any distribution shall be made. If required by the Court, the Parties agree that any distribution(s) may be announced publicly before they occur. If and to the extent required by the Court, and notwithstanding any other provision of this Agreement, the Parties further agree that they may allow for additional or different *cy pres* beneficiaries via a written addendum to this Agreement.

**N. Release of Monsanto, Scotts, and Related Persons**

Upon the Effective Date, each of the Class Members will be deemed to have, and by operation of the Judgment will have, fully, finally, and forever released, relinquished, and discharged the Released Persons from any and all individual, class, representative, group or collective claims, demands, rights, suits, liabilities, damages, losses, injunctive and/or declaratory relief, and causes of action of every nature and description whatsoever (with the exception of personal injury claims), including costs, expenses, penalties, and attorneys' fees, whether known or unknown, matured or unmatured, asserted or unasserted, latent or patent, at law or in equity, existing under federal or state law, regardless of legal theory or relief claimed, that any Class Member has or may in the future have against the Released Persons arising out of or related in any way to:

      a. Labeling, sales, marketing, advertising, or any other communications, regardless of medium, of or regarding glyphosate or any of the Products using the statement "targets an enzyme found in plants but not in people or pets";

      b. Labeling, sales, marketing, or advertising, or any other communications, regardless of medium, of or regarding glyphosate or any of the Products using any variations of the statement at issue in the Action, including but not limited to:

            ▪ ". . . stopping the function of an essential enzyme found in plants"

            ▪ ". . . stopping the function of an essential enzyme found in plants, but not in humans or animals"

- "... stopping the production of an essential enzyme found in plants (but not in humans or animals)"
- "... stopping the function of a substance found in plants (but not humans or animals)"

   c.   Any allegedly false or misleading statement or omission in or on the Labeling of glyphosate or any of the Products regarding the alleged impact of the Products or glyphosate on bacteria, or other microorganisms in or around humans and/or animals;

which have been, or which could in the past or future have been, asserted in the Action, and in connection with the conduct of the Action, that have been brought, could in the past or future have been brought, or are currently pending in any forum in the United States. This release does not release any alleged personal injury claims. To be clear, to the extent that any action or proceeding includes both claims for personal injury and claims that would otherwise fall within the scope of this release, the personal injury claims will not be deemed released, but the other claims will be released. Similarly, to the extent that any Class member asserts a cause of action or other claim that would otherwise fall within the scope of this release but asserts the right to recover both damages caused by personal injury and some other type of damages (for example, but not limited to, economic or statutory damages), that cause of action or claim will survive this release only to the extent of damages caused by personal injury.

## O. Release of Plaintiffs

Upon the Effective Date, Monsanto will be deemed to have, and by operation of the Judgment will have, fully, finally, and forever released, relinquished, and discharged Plaintiffs, the Class, and Class Counsel from any and all claims, demands, rights, suits, liabilities, and causes of action of every nature and description whatsoever, whether known or unknown, matured or unmatured, at law or in equity, existing under federal or state law, that Monsanto has or may have against any of them arising out of or related in any way to the transactions, occurrences, events, behaviors, conduct, practices, and policies alleged in the Action, and in connection with the filing and conduct of the Action, that have been brought, could have been brought, or are currently pending in any forum in the United States.

## P. Section 1542 Waiver

ALL PARTIES ACKNOWLEDGE SECTION 1542 OF THE CALIFORNIA CIVIL CODE. YEE AND CALIFORNIA MEMBERS OF THE CLASS EXPRESSLY WAIVE AND RELINQUISH ANY RIGHTS OR BENEFITS AVAILABLE TO THEM UNDER THIS STATUTE. CAL. CIV. CODE § 1542 PROVIDES: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR." NOTWITHSTANDING CAL. CIV. CODE § 1542 OR ANY OTHER FEDERAL OR STATE STATUTE OR RULE OF LAW OF SIMILAR EFFECT, THIS AGREEMENT SHALL BE GIVEN FULL FORCE AND EFFECT ACCORDING TO EACH AND ALL OF ITS EXPRESSED TERMS AND PROVISIONS, INCLUDING THOSE

RELATED TO ANY UNKNOWN OR UNSUSPECTED CLAIMS, LIABILITIES, DEMANDS, OR CAUSES OF ACTION WHICH ARE BASED ON, ARISE FROM, OR ARE IN ANY WAY CONNECTED WITH THE ACTION.

### Q. Class Action Fairness Act

1.      The Class Action Fairness Act of 2005 ("CAFA") requires Monsanto to inform certain federal and state officials about this Agreement.  See 28 U.S.C. § 1715.

2.      Under the provisions of CAFA, the Claims Administrator, on behalf of Monsanto, will serve notice upon the appropriate officials within ten (10) calendar days after the Parties file the proposed Agreement with the Court.  See 28 U.S.C. § 1715(b).

3.      The Parties agree that either the Claims Administrator or Monsanto is permitted to provide CAFA notice as required by law and that any such notice shall be done to effectuate the Agreement and shall not be considered a breach of this Agreement or any other agreement of the Parties.

4.      If any of the notified federal or state officials takes any action adversely affecting the validity or enforceability of the Agreement or seek to impose additional terms or liability on Monsanto for the matters resolved by the Class Released Claims, Monsanto may, at its option, suspend the implementation of the Agreement pending the outcome of the action initiated by the notified federal or state official, or provided that the Court has not yet entered the Final Settlement Approval Order and Judgment, may elect to void the Agreement by written notice to Class Counsel.

### R. Court Approval

1.      Promptly after executing this Agreement, the Parties will submit to the Court the Agreement, together with its exhibits, and will request that the Court grant preliminary approval of the proposed Agreement, issue a Preliminary Approval Order, and schedule a Final Approval Hearing to determine whether the Agreement should be granted final approval, whether an application for attorneys' fees and costs should be granted, and whether an application for incentive awards should be granted.  As part of the preliminary approval motion, the Parties will request the Court to certify the Class provisionally for settlement purposes, and formally to appoint Class Counsel.  The Parties intend and acknowledge that any such certification and appointment would be for purposes of the Agreement only, and not effective in continuing litigation between the Parties, if any.

2.      A Final Settlement Hearing to determine final approval of the Agreement shall be scheduled as soon as practicable, subject to the calendar of the Court, but no sooner than 120 days after the Preliminary Approval Date.  Upon final approval of the Agreement by the Court at or after the Final Settlement Hearing, the Parties shall seek and obtain from the Court the Final Settlement Approval Order and Judgment.

3.      Objecting Class Members may appear at the Final Approval Hearing and be heard. The Parties shall have the right, but not the obligation, either jointly or individually, to respond to any objection.

4.      If this Agreement is not given final approval by the Court, the Parties will seek in good faith to revise the Agreement as needed to obtain Court approval. Failing this, the Parties will be restored to their respective places in the litigation. In such event, the terms and provisions of this Agreement will have no further force and effect with respect to the Parties and will not be used in this or in any other proceeding for any purposes, and any judgment or order entered by the Court in accordance with the terms of this Agreement will be treated as vacated.

## S.  No Public Statements and Media or Public Inquiry Plan

1.      The Parties will refrain (directly, or through counsel or third parties) from making any affirmative public statements regarding the fact of or the terms of this Agreement, except for statements by Monsanto substantially the same in substance to those public statements approved by Plaintiffs' counsel on April 21, 2020, absent written agreement by both Parties.

2.      The Parties and their counsel agree that, absent written agreement by both Parties, in responding to any inquiries, stories, or potential stories from the public media concerning the Agreement, the Parties and their counsel will limit their comments to the effect that "the matter has been settled to the satisfaction of all Parties subject to Court approval," except for (1) statements by Monsanto substantially the same in substance to those public statements approved by Plaintiffs' counsel on April 21, 2020 and (2) accurate statements regarding the nature of the changes between this Agreement and prior versions of this Agreement submitted to the Court. Nothing in this paragraph shall limit Class Counsel's ability to communicate privately with a Class Member concerning this Action or the Agreement. Monsanto or the Claims Administrator may make such public disclosures about the Action and Agreement as any applicable laws require.

## T.  Miscellaneous Provision

1.      *Entire Agreement*. This Agreement shall constitute the entire Agreement among the Parties with regard to the subject matter of this Agreement and shall supersede any previous agreements, representations, communications, and understandings among the Parties with respect to the subject matter of this Agreement. The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or undertaking concerning any part or all of the subject matter of the Agreement has been made or relied upon except as expressly set forth herein. This Agreement supersedes any prior agreement between the parties, including the Term Sheet executed by the Parties.

2.      *Notices Under This Agreement*. All notices or mailings required by this Agreement to be provided to or approved by Class Counsel and Monsanto, or otherwise made pursuant to this agreement, shall be provided as follows:

| Class Counsel | Monsanto |
|---|---|
| Kim Richman<br>Richman Law Group<br>8 W. 126th Street<br>New York, NY 10027<br>Telephone: (718) 705-4579 | John J. Rosenthal<br>Winston & Strawn LLP<br>1901 L St. N.W.<br>Washington, D.C. 20036<br>Telephone: (202) 282-5785 |

| | |
|---|---|
| Facsimile: (212) 687-8292<br>krichman@richmanlawgroup.com<br><br>Michael L. Baum<br>Baum, Hedlund, Aristei & Goldman, P.C.<br>12100 Wilshire Blvd., Suite 950<br>Los Angeles, CA 90025<br>Telephone: (310) 207-3233<br>mbaum@baumhedlund.com | jrosenthal@winston.com<br><br>Jeff Wilkerson<br>Winston & Strawn LLP<br>300 S. Tryon St., 16th Floor<br>Charlotte, NC 28202<br>Telephone: (704) 350-7714<br>jwilkerson@winston.com |

3.     *Good Faith*.   The Parties acknowledge that each intends to implement the Agreement.   The Parties have at all times acted in good faith and shall continue to, in good faith, cooperate and assist with and undertake all reasonable actions and steps in order to accomplish all required events on the schedule set by the Court, and shall use reasonable efforts to implement all terms and conditions of this Agreement.

4.     *Binding on Successors*.   This Agreement shall be binding upon and inure to the benefit of the heirs, successors, assigns, executors, and legal representatives of the Parties to the Agreement and the Released Persons.

5.     *Arms-Length Negotiations*.   The Agreement compromises claims that are contested, and the Parties agree that the consideration provided to the Class and other terms of the Agreement were negotiated in good faith and at arms' length by the Parties, and reflect an Agreement that was reached voluntarily, after consultation with competent legal counsel, and guided in part by the Parties' earlier private mediation session with Professor Eric D. Green, an experienced mediator. The determination of the terms of, and the drafting of, this Agreement, has been by mutual agreement after negotiation, with consideration by and participation of all Parties hereto and their counsel.   Accordingly, the rule of construction that any ambiguities are to be construed against the drafter shall have no application.   All Parties agree that this Agreement was drafted by Class Counsel and Monsanto's Counsel at arms' length, and that no parol or other evidence may be offered to explain, construe, contradict, or clarify its terms, the intent of the Parties or their attorneys, or the circumstances under which the Agreement was negotiated, made, or executed.

6.     *Waiver*.   The waiver by one Party of any provision or breach of this Agreement shall not be deemed a waiver of any other provision or breach of this Agreement.

7.     *Modification in Writing Only*.   This Agreement and any and all parts of it may be amended, modified, changed, or waived only by an express instrument in writing signed by the Parties.

8.     *Headings*.   The descriptive headings of any paragraph or sections of this Agreement are inserted for convenience of reference only and do not constitute a part of this Agreement.

9.     *Governing Law*.   This Agreement shall be interpreted, construed, and enforced according to the laws of the State of Missouri, without regard to conflicts of law.

10. *Continuing Jurisdiction*. After entry of the Judgment, the Court shall have continuing jurisdiction over the Action solely for purposes of (i) enforcing this Agreement, (ii) addressing settlement administration matters, and (iii) addressing such post-Judgment matters as may be appropriate under court rules or applicable law, including under the All Writs Act.

11. *Agreement Constitutes a Complete Defense*. To the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement.

12. *Execution*. This Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument. Photocopies and electronic copies (*e.g.*, PDF copies) shall be given the same force and effect as original signed documents.

**IN WITNESS WHEREOF**, each of the undersigned, being duly authorized, have caused this Agreement to be executed on the dates shown below and agree that it shall take effect on that date upon which it has been executed by all of the undersigned.

ON BEHALF OF Lisa Jones, Horacio Torres Bonilla,
Kristoffer Yee, and the Proposed Settlement Class:

_____ Date: October 14, 2020

ON BEHALF OF Monsanto Company:

_____ Date: October 14, 2020
John J. Rosenthal

## **EXHIBIT A**

Products

Roundup® Ready-to-Use Weed & Grass Killer III (all sizes, applicators, and varieties)
Roundup® Ready-to-Use Weed & Grass Killer Plus (all sizes, applicators, and varieties)
Roundup® Weed & Grass Killer Concentrate Plus (all sizes and varieties)
Roundup® Weed & Grass Killer Super Concentrate (all sizes and varieties)

**EXHIBIT B**

Applicable Statutes of Limitation

| State or Territory | Citation | Time Period |
|---|---|---|
| Puerto Rico | *Marquez v. Campos*, 111 D.P.R. 854 (1982) | 6 months |
| American Samoa | A.S.C.A. § 43.0120(2) | 3 years |
| Colorado | C.R.S. § 13-80-101(1)(a) | 3 years |
| Alabama | Ala. Code § 8–19–14 | 4 years |
| Alaska | Alaska Stat. § 45.50.531(f) | 4 years |
| Arizona | Ariz. Rev. Stat. Ann. § 12–541(5); *Schellenbach v. GoDaddy.com LLC*, 2017 WL 192920, at *3 (D. Ariz. Jan. 18, 2017) | 4 years |
| California | Cal. Bus. & Prof. Code § 17208; *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1134, 1140 (C.D. Cal. 2010) | 4 years |
| Connecticut | C.G.S.A. 42-a-2-725 | 4 years |
| Delaware | 6 Del. C. § 2-725 | 4 years |
| District of Columbia | D.C. Code § 28:2-725 | 4 years |
| Florida | Fla. Stat. Ann. § 95.11(3)(f); *Matthews v. Am. Honda Motor Co.*, 2012 WL 2520675, at *4 (S.D. Fla. June 6, 2012) | 4 years |
| Georgia | Ga. Code Ann. § 9-3- 31; *Kason Indus., Inc. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, | 4 years |

| State or Territory | Citation | Time Period |
|---|---|---|
| | 1204 (11th Cir. 1997) | |
| Guam | 7 GCA § 11303(a) | 4 years |
| Hawaii | HRS § 490:2-725 | 4 years |
| Idaho | I.C. § 28-2-725 | 4 years |
| Illinois | 810 ILCS 5/2-725 | 4 years |
| Indiana | IC 26-1-2-725 | 4 years |
| Kansas | K.S.A. § 84-2-725 | 4 years |
| Kentucky | K.R.S. § 355.2-725 | 4 years |
| Louisiana | L.S.A.-C.C. Art. § 2534 | 4 years |
| Maryland | Md. Com. Law Code § 2-725 | 4 years |
| Massachusetts | M.G.L.A. 106 § 2-725 | 4 years |
| Montana | MCA § 30-2-725 | 4 years |
| Nebraska | Neb.Rev.St. U.C.C. § 2-725 | 4 years |
| Nevada | Nev. Rev. Stat. Ann. § 104.2725; *Freas v. BMW of N. Am., LLC*, 320 F. Supp. 3d 1126, 1135 (S.D. Cal. 2018) | 4 years |
| New Hampshire | N.H. Rev. Stat. Ann. § 382-A:2-725 | 4 years |
| New Mexico | N. M. S. A. 1978, § 55-2-725 | 4 years |
| New York | NY UCC § 2-725(1) | 4 years |
| North Carolina | N.C.G.S.A. § 25-2-725 | 4 years |
| Ohio | R.C. § 1302.98 | 4 years |
| Oregon | O.R.S. § 72.7250(1) | 4 years |
| Rhode Island | *Kennedy v. Acura*, 2002 WL 31331373, at *6 (R.I. Super. Aug. 28, 2002) | 4 years |
| South Dakota | SDCL § 57A-2-725 | 4 years |
| Tennessee | T. C. A. § 47-2-725 | 4 years |
| Texas | Tex. Bus. & Com. Code Ann. § 2.725 | 4 years |
| Virginia | VA Code Ann. § 8.2-725 | 4 years |
| Washington | RCWA 62A.2-725 | 4 years |

| State or Territory | Citation | Time Period |
|---|---|---|
| West Virginia | W. Va. Code, § 46-2-725 | 4 years |
| Wyoming | W.S.1977 § 34.1-2-725 | 4 years |
| Arkansas | Ark. Code Ann. § 4-88-115 | 5 years |
| Missouri | Mo. Ann. Stat. § 516.120(2); *Snelling v. HSBC Card Servs., Inc.*, 2015 WL 3621091, at *8 (E.D. Mo. June 9, 2015) | 5 years |
| Oklahoma | 12A Okl. Stat.Ann. § 2-725 | 5 years |
| Utah | Utah Code Ann. § 13-2-6 (b) | 5 years |
| Maine | Me. Rev. Stat. tit. 14, § 752; *State v. Bob Chambers Ford, Inc.*, 522 A.2d 362, 364 (Me. 1987) | 6 years |
| Michigan | Me. Rev. Stat. tit. 14, § 752; *State v. Bob Chambers Ford, Inc.*, 522 A.2d 362, 364 (Me. 1987) | 6 years |
| Minnesota | Minn. Stat. Ann. § 541.05(1); *Drobnak v. Andersen Corp.*, 2008 WL 80632, at *4 (D. Minn. Jan. 8, 2008) | 6 years |
| Mississippi | Miss. Code Ann. § 75-2-725 | 6 years |
| New Jersey | N.J. Stat. Ann. § 2A:14-1; *Marchi v. Hudson City Sav. Bank*, 2017 WL 628476, at *4 (D.N.J. Feb. 15, 2017) | 6 years |
| North Dakota | N.D. Cent. Code Ann. § 28-01-16(2); | 6 years |

| State or Territory | Citation | Time Period |
|---|---|---|
| | *Bostow v. Lundell Mfg. Co.*, 376 N.W.2d 20, 22 (N.D. 1985) | |
| Northern Mariana Islands | 7 CMC § 2505; *Flores v. First Hawaiian Bank*, 642 Fed. Appx. 696, 698 (9th Cir. 2016) | 6 years |
| Pennsylvania | 42 Pa. Stat. and Cons. Stat. Ann. § 5527(b); *Jacobs v. Halper*, 116 F. Supp. 3d 469, 480 (E.D. Pa. 2015) | 6 years |
| South Carolina | SC ST § 36-2-725 | 6 years |
| Vermont | Vt. Stat. Ann. tit. 12, § 511; *In re Monty*, 2013 WL 2481531, at *4 (Bankr. D. Vt. June 10, 2013) | 6 years |
| Virgin Islands | 5 V.I.C. § 31(3)(A) | 6 years |
| Wisconsin | W.S.A. 402.725 | 6 years |
| Iowa | IA Stat. § 614.1; I.C.A. § 554.2725 | 10 years |

Page **26** of **26**