UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| LISA JONES, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> MONSANTO COMPANY, <br><br> Defendant. | Case No. 19-0102-CV-W-BP <br><br> Hon. Beth Phillips |

**MONSANTO'S RESPONSE TO OBJECTION OF ANNA ST. JOHN**

The proposed settlement provides significant benefits to Class Members. Class Members who made claims—a process that was easy to complete and did not require proof of purchase for Class Members claiming normal purchase patterns—will receive payments amounting to half of the average retail price of the products they bought. That is more than three times the *high end* of the best-case damages scenario put forward by Plaintiffs. Extensive efforts have been made to notify class members of their right to make claims. Class notice led to hundreds of *millions* of impressions, with notice via print publication, direct email notice, digital banner ads, television, streaming radio, FM radio, sponsored keywords, digital newsletters, public service announcements, and more. Class Members have submitted hundreds of thousands of claims, and the average claimant will receive around fifty dollars.

Exactly one objection has been lodged, by a single Class Member, Anna St. John—a professional objector[1] and attorney whose only documented purchase of the products at issue occurred *after* the settlement was announced, and who thus cannot seriously claim to have been misled by the statement at issue in this litigation.[2] St. John works for an activist organization, the Center For Class Action Fairness ("CCAF") at the Hamilton Lincoln Law Institute, whose mission is to "upend[] settlements."[3] St. John does not assert that the settlement fund is insufficient or unfair, nor that the proposed payments to St. John or other Class Members are unfair or unreasonable in themselves. She does not contest that those payments more than fully compensate Class Members for any possible damages. She does not contest that, without the proposed settlement, Class Members faced a long road to any recovery—a road which may well have been a dead end.

Instead, St. John argues that this Court is legally prohibited from approving the settlement because it provides that, after a large, upward *pro rata* adjustment for Class Members who

---

[1] CCAF's founder, Mr. Frank, submitted a 14-page declaration concurrent with St. John's objection, nine pages of which were dedicating to "pre-empting" anticipated "*ad hominem*" attacks on CCAF and assertions that is a professional objector. ECF 71-2. To be clear, CCAF is, by definition, a professional objector. Indeed, Mr. Frank's declaration describes the organization's mission as litigating against what CCAF views as "unfair class action procedures and settlements." *Id.* ¶ 5. CCAF is not a traditional rent-seeker or a bandit. But nor is it an organization solely seeking to protect consumers or class members in individual cases. It is an activist organization with policy goals. And it is funded in part by the fees it collects for pursuing its objections. *See id.* ¶¶ 9-10 (noting that CCAF is funded "entirely through charitable donations and court-awarded attorneys' fees"). None of this is meant to "tar" Mr. Frank or CCAF. The Court may make its own judgments about the merits of using the objection process to pursue broader policy goals. But the Court should understand the reality here: setting aside St. John's objection—an objection meant to pursue broader policy goals—not one Class Member has objected.

[2] Stated another way, it is unclear how St. John has either standing or injury.

[3] Ashby Jones, *A Litigator Fights Class-Action Suits*, Wall St. Journal, Oct. 31, 2011, https://www.wsj.com/articles/SB10001424052970203554104577002190221107960.

2

Case 4:19-cv-00102-BP   Document 72   Filed 03/11/21   Page 2 of 12

submitted valid claims, remaining funds are to be distributed *cy pres*. Those funds, St. John argues, must instead be remitted to Class Members—even if it will result in an unjustified windfall. And even if a *cy pres* distribution were appropriate, St. John argues, the proposed *cy pres* recipients (or, if St. John's argument is followed through to its logical end, *any* recipient) are constitutionally deficient because St. John disagrees with certain positions policy positions they have advocated.[4]

St. John's position is wrong, and it does not serve the interests of the Class Members, who stand to lose meaningful benefits if this settlement is not approved. The Eighth Circuit does not, as St. John suggests, limit *cy pres* remedies to cases with liquidated damages provisions, and it does not mandate a windfall to Class Members who filed claims. Nor does the First Amendment (or any other law) require that every Class Member be fully aligned with the policy positions of a *cy pres* recipient. The Court should thus reject St. John's objection.

I. *CY PRES* REMEDIES ARE PERMITTED WHEN FURTHER DISTRIBUTIONS TO CLASS MEMBERS WOULD CONSTITUTE A WINDFALL

  A. *Cy Pres* Distributions are Preferable to a Windfall.

St. John argues that funds designated for *cy pres* must instead be distributed to Class Members who have made claims. But the parties have already undertaken extraordinary efforts to attract claimants and to distribute as much of the fund as reasonably possible to Class Members. And while the law typically favors direct class benefit over indirect *cy pres* benefit, *cy pres* is appropriate where it is infeasible or *unfair* to make further distributions to claimants. *Rawa v. Monsanto Co.*, 2018 WL 2389040, at *9-11 (E.D. Mo. May 25, 2018), *aff'd*, 934 F.3d 862 (8th Cir. 2019).

---

[4] St. John also argues that the Court should not award Class Counsel's requested attorney's fees. That issue is not addressed here.

3

That is the case here. Not all Class Members submitted claims, but those that did will be more than fully compensated for their alleged injuries—receiving more than *three times* even Class Counsel's best-case damages figure and nearly twenty-five times the highest possible damages figure suggested by Monsanto's expert. ECF 50-1 ¶ 7; ECF 50-4 ¶ 12[5]  The best way to benefit Class Members who did not make claims is indirectly through *cy pres*, not through a windfall to those Class Members who are already being more than fully compensated. *See Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) ("A *cy pres* distribution puts settlement funds to their next-best use by providing an indirect benefit to the class.").

This approach conforms with Eighth Circuit law and broader principles. The Eighth Circuit follows the American Law Institute's ("ALI") Principles of the Law of Aggregate Litigation, which include guidance on when a *cy pres* award is appropriate. *In re BankAmerica Corp. Secs. Litig.*, 775 F.3d 1060, 1064 (8th Cir. 2015). The ALI Principles include a presumption that further distributions should be made to "participating class members," but they then note that *cy pres* is appropriate if "specific reasons exist that would make such further distributions impossible or unfair." *Id.* (quoting ALI, Principles of the Law of Aggregate Litig. § 3.07).

Courts, both within and outside the Eighth Circuit, have repeatedly held that such further distributions are unfair—and the use of *cy pres* is appropriate—when further distributions to claimants would result in a windfall. *See, e.g., In re Lupron Mktg. & Sales Practices Litig.*, 677 F.3d 21, 35 (1st Cir. 2012) ("Commentators have agreed that distributing residual funds to claimants who have already recovered their losses 'necessarily results in an undeserved windfall for those plaintiffs, who have already been compensated for the harm they have suffered.'") (citing

---

[5] In fact, Monsanto's expert determined that there was *no* statistically significant price premium. The 2.5 percent figure in Monsanto's expert's analysis was *not* statistically significant. ECF 50-4 ¶ 12.

4

Marin H. Redish, et al., *Cy Pres Relief & The Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 Fla. L. Rev. 617, 639 (2010)); *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 435 (11th Cir. 2012) (in false advertising case related to baby formula, district court appropriately approved *cy pres* distribution when each class member would receive the "full compensation" provided by the settlement before a *cy pres* distribution occurred); *In re Easysaver Rewards Litig.*, 906 F.3d 747, 760-61 (9th Cir. 2018) (approving *cy pres* in UCL and CLRA action and noting that "the district court was under no obligation to adopt a distribution approach that might overcompensate claimants, all of whom will already be fully reimbursed for the money they lost through the rewards program"); Gerson H. Smoger, *The Importance of* Cy Pres *in Modern Class Action Jurisprudence and Myths Concerning its Use*, 24 Lewis & Clark L. Rev. 595, 605 n.36 (2020) ("[V]irtually all circuits have concluded that a distribution to class members should not result in a windfall to members who have submitted claims and already been fully compensated."); McLaughlin on Class Actions § 8:15 ("Cy pres distribution ordinarily emerges as the preferred method, as courts disfavor either class members, defendant or the government receiving a windfall.").

Most analogous here is *Rawa*, which also involved a settlement in which Monsanto refunded valid claimants 50% of their purchase price and distributed remaining funds through *cy pres*. The district court approved the *cy pres* award because, among other things, "[r]ather than a nominal or nonexistent return to claimants—the source of much of the criticism of *cy pres* awards—claimants are receiving . . . at least 100% of their damage amounts." *Id.* at 11.[6] The court explained that there had been adequate notice and opportunities for class members to make

---

[6] As in this case, the 50% refund offered in *Rawa* "exceed[ed] the amount of recovery in Plaintiffs' expert damages report." *Rawa,* 2018 WL 2389040, at *6.

5

claims and that, while further distributions were "mechanically feasible," "additional distributions to class members who filed valid claims would provide a windfall" to claimants who were "already getting the full amount of their out-of-pocket damages by the proposed distribution." *Id*. This, the court found, "would only serve to encourage fraudulent claims." *Id*. And, in any case, "the large settlement fund negotiated by Plaintiffs serve[d] to deter like conduct in the future, which confers an indirect but significant benefit to the class members." *Id.*

The same is true here. The parties effected the best notice practical under the circumstances[7] and designed an easy claims process that, assuming the proposed settlement is

---

[7] St. John argues that Plaintiff could have subpoenaed sales records from retailers as an additional way to provide notice and cites cases in which this was done. Obj. at 7. But the parties need not exhaust *all* conceivable avenues of notice. Instead, what is required is "the best notice that is *practical under the circumstances*, including individual notice to all members who can be identified through *reasonable* effort." Rule 23(c)(2)(B) (emphases added); *see Pollard v. Remington Arms Co.,* 896 F.3d 900, 906 (8th Cir. 2018) (rejecting argument that direct notice should have been provided where "court took great care to ensure the best notice that was practical was provided to class members" through supplemental notice plan). As in *Pollard*, the parties have carried out several extensive notice programs since May 28, 2020. Those programs included indirect notice through print media, online display, social media, streaming radio, online video, search advertising, national press release, a toll-free settlement hotline, and a settlement website, and *direct* email notice to *over 3.8 million* potential class members. *See* Dkt. No. 65 at 19-20; Dkt. No. 50-5 ¶ 12; Dkt. No. 58-2 ¶¶ 7-8, 12-22; Dkt. No. 65-2 ¶ 8. Those efforts resulted in an estimated reach of at least 80% (Dkt. No. 65-2 ¶ 27), which far exceeds the direct notice to roughly "one million potential class members" with a reach of between 49% and 73.7% found reasonable in *Pollard*. *See* 320 F.R.D. at 212.

As in *Pollard*, St. John puts forth no cogent argument for why those extensive efforts were unreasonable under the circumstances of this case, and courts routinely approve similar notice programs in cases involving consumer products. *Schneider v. Chipotle Mexican Grill, Inc.* 336 F.R.D. 588, 535-96(N.D. Cal. 2020); *Johns v. Bayer Corp.*, 2013 WL 435201, at *1 (S.D. Cal. Feb. 1, 2013); *Johnson v. Gen. Mills, Inc.*, 2013 WL 3213232, at *4 (C.D. Cal. 2013); *In re Toys R Us Antitrust Litig.*, 191 F.R.D. 347 (E.D.N.Y. 2000).

6

approved, will provide claimants with full compensation[8] (indeed, more than full compensation) for their alleged injuries. *Cy pres* is now the best way to confer additional benefit on the class.

### B. St. John Misreads *BankAmerica*.

Citing *BankAmerica*, St. John argues that the rule against windfalls applies only when Class Members would be fully compensated for *liquidated* damages. *See BankAmerica*, 775 F.3d at 1064 (quoting *Klier*, 658 F.3d at 475). But while Monsanto acknowledges this reference to "liquidated" damages in *BankAmerica*, St. John overreads that passage. This is evident for several reasons.

First, *BankAmerica* favorably cites several cases that permit *cy pres* distributions outside the context of a true liquidated-damages award. *Id.* at 1063-64 (citing *In re Pharm. Ind. Average Wholesale Price Litig.* ("*AWP*"), 588 F.3d 24, 35 (1st Cir. 2009) (approving *cy pres* provision in antitrust settlement when class members received an amount equal to three times their non-liquidated damages claims)) (citing *In re Lupron*, 677 F.3d at 29-33 (in a case not involving liquidated damages, noting that it is "well accepted that protesting class members are not entitled to windfalls in preference to cy pres distributions")) (citing *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 176 (3d Cir. 2013) ("Courts of appeals have approved cy pres distributions where all class members submitting claims have already been fully compensated for their damages by prior distributions.")). Likewise, the Fifth Circuit in *Klier*—the case from which the "liquidated

---

[8] St. John argues that those claimants who did not provide proof of purchase are subject to the Maximum Allowance and therefore may not be fully compensated for every product they bought. But "requiring proofs of purchase is a valid technique for preventing fraudulent claims" in consumer class-action settlements. *Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017). Allowing claimants to assert additional purchases without proof of purchase would only encourage fraudulent claims and defeat the purpose of the Maximum Allowance as a negotiated antifraud provision, which would make such distributions *particularly* unfair to Monsanto.

7

damages" language in *BankAmerica* originated[9]—plainly did not intend to limit the rule against windfalls to liquidated damages, because it relied on cases that did *not* involve liquidated-damages claims. *Klier*, 658 F.3d at 475 & n.17 (citing *Wilson v. Sw. Airlines, Inc.*, 880 F.2d 807, 812-13 (5th Cir. 1989); *AWP*, 588 F.3d at 34-35)).

Second, *BankAmerica* cannot be read to limit *cy pres* awards to circumstances in which class members have received 100 percent of a true "liquidated damages" award because that would conflict with prior Eighth Circuit precedent. In *Powell v. Georgia-Pacific Corp.*, 119 F.3d 703, 706-07 (8th Cir. 1997), the court approved a *cy pres* distribution of unclaimed funds to a scholarship program (rather than a pro rata distribution to class members). But *Powell* did not involve a liquidated-damages provision—it was a race-discrimination case. *Id.* at 704. Likewise, in *In re Airline Ticket Commission Antitrust Litigation*, 268 F.3d 619, 626 (8th Cir. 2001), the court approved the use of *cy pres* distributions (although it required modification to the recipients) in an antitrust case, with no indication that the case involved liquidated damages.

Finally, if there were lingering doubt about this issue, *Rawa* resolved it. There, the objector argued on appeal before the Eighth Circuit, like St. John here, that the district court's approval of *cy pres* distributions was improper in part because *BankAmerica* supposedly limited *cy pres* to instances of a fully-paid *liquidated* damages provision. Brief for Objector-Appellant, *Rawa v. Monsanto Co.*, No. 18-2346, ECF 20, at 30-32 (8th Cir.). The Eighth Circuit panel raised this

---

[9] St. John suggests that the ALI Principles themselves limit *cy pres* to liquidated-damages cases. Obj. at 4. Not so. Nothing in the ALI Principles refers to or suggests such a limitation. To the contrary, a comment to the ALI Principles notes that the presumption that excess funds should be distributed to class members arises from the fact that "few settlements award 100 percent of a class member's losses and thus it is unlikely in *most cases* that further distributions to class members would result in more than 100 percent recovery for those class members." ALI Principles, § 3.07 cmt. b, *Circumstances in which the cy pres remedy is appropriate* (emphasis added).

8

issue at oral argument, yet it ultimately *affirmed* the district court's final approval decision, including the distribution of excess funds via *cy pres*. 934 F.3d at 871. Indeed, in so doing, it cited *Klier*—the source of the very same language that St. John now claims bars a *cy pres* remedy in analogous circumstances. *Id.* (citing *Klier*, 658 F.3d at 475-76).

## II. THE PROPOSED *CY PRES* DISTRIBUTIONS DO NOT IMPLICATE FIRST AMENDMENT CONCERNS

Assuming that a *cy pres* distribution is otherwise appropriate, the Eighth Circuit's requirements for determining whether the proposed recipients are appropriate is straightforward: "[F]unds should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated." *Rawa*, 934 F.3d at 866 n.2; *see also BankAmerica*, 775 F.3d at 1067 ("[A] distribution must be 'for the next best use ... for indirect class benefit,' and 'for uses consistent with the nature of the underlying action and with the judicial function.'") (citations omitted); ALI, Principles of the Law of Aggregate Litig. § 3.07(c) ("The court, when feasible, should require the parties to identify a recipient whose interests reasonably approximate those being pursued by the class."). St. John does not even *argue* that the proposed *cy pres* recipients fail to meet these requirements.

Instead, St. John argues—**citing no support in precedent**—that *cy pres* distributions violate Class Members' First Amendment rights because St. John and CCAF disagree with certain policy positions taken by two of the proposed *cy pres* recipients. According to St. John, both she and *every absent Class Member* must "affirmatively consent" before a *cy pres* distribution is permissible. Obj. 9-10 (citing *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2464 (2018) for the proposition that absent class member must "clearly and affirmatively consent before any money is taken from them.").

9

St. John's argument—surely by design—would effectively preclude the use of *cy pres* altogether. *Cy pres* remedies are typically used when the funds that would otherwise go to claimants are not distributed. Thus, they almost invariably involve class members who cannot provide the "affirmative consent" that St. John insists upon.[10] If such consent is required, then *cy pres* remedies are all but categorically impermissible.[11] That is not the law.

As St. John acknowledges in a footnote, the Tenth Circuit has held that the approval of a class-action settlement does not constitute state action sufficient to invoke First Amendment scrutiny. *In re Motor Fuel Temp. Sales Pracs. Litig.*, 872 F.3d 1094, 1113-14 (10th Cir. 2017). That holding is well-grounded in a large body of precedent, in the analogous context of judicial enforcement of private arbitration agreements and awards, holding that judicial enforcement of private contracts is not state action. *See, e.g.*, *Davis v. Prudential Secs., Inc.*, 59 F.3d 1186, 1191-92 (11th Cir. 1995) (collecting authorities). That is precisely the situation here—this Court is not being asked to itself decide who the *cy pres* recipients will be, but rather to approve a proposal put forward by the parties as fair and reasonable. *See Rawa*, 934 F.3d at 871 ("[T]he [district] court did not order the *cy pres* distribution of the difference in fees—the terms of the settlement agreement did."); *see also Baby Prods.*, 708 F.3d at 174 (courts should assess the fairness of *cy pres* proposals with "the same framework developed for assessing other aspects of class action

---

[10] St. John's suggestion that affirmative consent is required also conflicts with the clear approval of opt-out classes in Rule 23.

[11] Indeed, even if the claim form were to provide each claimant with the ability to select their preferred *cy pres* recipient (and putting aside the inefficiencies inherent in such an approach), that would only account for the preferences of those class members who made claims—making it impossible to obtain the "affirmative consent" of the *entire class* that St. John claims is required. Nor would there be any assurance that individual class members would select *cy pres* recipients that would advance the interests of the class as whole, as Eighth Circuit law requires.

10

settlements"). And, of course, without state action, St. John's First Amendment arguments cannot prevail.

Even if the Court's approval of the proposed settlement (and its *cy pres* provisions) were state action sufficient to invoke First Amendment scrutiny, it would not constitute "compelled speech" as St. John claims. Neither St. John nor any other class member has been *compelled* to consent to this settlement or, as St. John frames the issue, to make a "donation" to any *cy pres* recipient.[12] Rather, consistent with Rule 23, St. John (and every other Class Member) has been notified of the proposed settlement, including its *cy pres* provisions, and afforded a chance to opt out. If St. John was unhappy with the proposed *cy pres* recipients—or any other aspect of the proposed settlement agreement—she had a "well-established remedy," namely opting out. *Keil*, 862 F.3d at 700.[13] Having failed to do so, presumably so that she could use these proceedings as a forum to pursue CCAF's preferred policy positions, she should not now be heard to complain that she has been "compelled" to do anything.

## CONCLUSION

For all these reasons, this Court should overrule St. John's objection and grant final approval of the proposed settlement.

---

[12] Even if the distribution of *cy pres* funds were a "donation" of money, it would not be a donation of *St. John's* money. As noted above, St. John will be *more* than fully compensated for any claimed injury associated with her purchases when her claim is paid, and paid every cent she is owed under the proposed settlement agreement. She thus has no legal or equitable claim to any money remaining in the fund.

[13] *See also* Smoger, *The Importance of* Cy Pres, 24 Lewis & Clark L. Rev. at 600 ("In having failed to opt out of the class, absent class members have consented to . . . entering into a settlement and subsequently, if necessary, the designation of *cy pres* recipients. Thus, unlike the required participation at issue in the 'compelled speech' cases, an 'opt-out' right for class members has been expressly provided for by Congress.").

11

DATED March 11, 2021				Respectfully submitted,

**WINSTON & STRAWN LLP**

/s/ John J. Rosenthal
John J. Rosenthal
(admitted *pro hac vice*)
Jeff Wilkerson
(admitted *pro hac vice*)
Patrick E. Hogan
(admitted *pro hac vice*)

1901 L Street, N.W.
Washington, D.C. 20006
Phone: (202) 282-5000
Fax: (202) 282-5100
jrosenthal@winston.com
jwilkerson@winston.com
phogan@winston.com

SHOOK HARDY & BACON L.L.P.

Amy Crouch
Douglas B. Maddock, Jr.

2555 Grand Blvd.
Kansas City, MO 64108
Telephone (816) 474-6550
Facsimile (816) 421-5547
jmuehlberger@shb.com
dmaddock@shb.com


*Attorneys for Defendant Monsanto Company*